**Objection Deadline: March 15, 2022**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------

In re:                                              : Chapter 11
                                                    :
ORION HEALTHCORP, INC.[1]                           : Case No. 18-71748 (AST)
                                                    :
                                Debtors.            : (Jointly Administered)
                                                    :
------------------------------------------          :
                                                    :
HOWARD M. EHRENBERG IN HIS CAPACITY                 : Adv. Pro. No. 20-08052 (AST)
AS LIQUIDATING TRUSTEE OF ORION                     :
HEALTHCORP, INC., ET AL.,                           :
                                                    :
                                Plaintiff,          :
                                                    :
v.                                                  :
                                                    :
ABRUZZI INVESTMENTS, LLC; JOHN                      :
PETROZZA,                                           :
                                                    :
                                Defendants.         :
                                                    :
------------------------------------------

### NOTICE OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION AS AGAINST <u>DEFENDANTS ABRUZZI INVESTMENTS, LLC AND JOHN PETROZZA</u>

**PLEASE TAKE NOTICE THAT** Plaintiff, Howard M. Ehrenberg in his capacity as

Liquidating Trustee of Orion Healthcorp, Inc., *et al.*, (the "<u>Plaintiff</u>" or the "<u>Liquidating</u>

<u>Trustee</u>"), for the estates of the above-captioned debtors ("<u>Plaintiff</u>"), by and through his

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Orion Healthcorp, Inc. (7246); Constellation Healthcare Technologies, Inc. (0135); NEMS Acquisition, LLC (7378); Northeast Medical Solutions, LLC (2703); NEMS West Virginia, LLC (unknown); Physicians Practice Plus Holdings, LLC (6100); Physicians Practice Plus, LLC (4122); Medical Billing Services, Inc. (2971); Rand Medical Billing, Inc. (7887); RMI Physician Services Corporation (7239); Western Skies Practice Management, Inc. (1904); Integrated Physician Solutions, Inc. (0543); NYNM Acquisition, LLC (unknown) Northstar FHA, LLC (unknown); Northstar First Health, LLC (unknown); Vachette Business Services, Ltd. (4672); Phoenix Health, LLC (0856); MDRX Medical Billing, LLC (5410); VEGA Medical Professionals, LLC (1055); Allegiance Consulting Associates, LLC (7291); Allegiance Billing & Consulting, LLC (7141); New York Network Management, LLC (7168). The corporate headquarters and the mailing address for the Debtors listed above is 1715 Route 35 North, Suite 303, Middletown, NJ 07748.

attorneys, Pachulski Stang Ziehl & Jones LLP, hereby files *Plaintiff's Motion For Summary Judgment, or in the Alternative, Summary Adjudication as Against Defendants Abruzzi Investments, LLC and John Petrozza*.

**PLEASE TAKE FURTHER NOTICE THAT** that any responses or objections ("Objections") to the relief requested in the Motion, if any, must conform with the Bankruptcy Code and the Bankruptcy Rules, shall be in writing, shall set forth the nature of the objector's interest in the Debtors' Estates and the reasons and legal basis for the objection, and be served upon counsel for the Plaintiff, Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 34th Floor, New York, New York 10017-2024 (Attn.: Jeffrey P. Nolan, Esq.), no later than **March 15, 2022** (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE THAT IF NO RESPONSES TO THE MOTION ARE TIMELY FILED, SERVED AND RECEIVED IN ACCORDANCE WITH THIS NOTICE, THE BANKRUPTCY COURT MAY ENTER THE RELIEF REQUESTED BY THE MOTION WITHOUT FURTHER NOTICE OR HEARING.**

Dated: February 22, 2022

PACHULSKI STANG ZIEHL & JONES LLP

By:    */s/ Jeffrey P. Nolan*
        Ilan D. Scharf, Esq.
        Jeffrey P. Nolan, Esq. (admitted *pro hac vice*)
        780 Third Avenue, 34th Floor
        New York, New York 10017
        Telephone:    (212) 561-7700
        Facsimile:     (212) 561-7777

        Counsel for the Plaintiff,
        Howard M. Ehrenberg in his capacity as
        Liquidating Trustee of Orion Healthcorp, Inc.,
        *et al*.

**Objection Deadline: March 15, 2022**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
————————————————————————

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| ORION HEALTHCORP, INC.[1] | : | Case No. 18-71748 (AST) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| ————————————————— | : | |
| | : | |
| HOWARD M. EHRENBERG IN HIS CAPACITY | : | Adv. Pro. No. 20-08052 (AST) |
| AS LIQUIDATING TRUSTEE OF ORION | : | |
| HEALTHCORP, INC., ET AL., | : | [Joint Separate Statement of |
| | : | Uncontroverted Facts; Plaintiff's |
| Plaintiff, | : | Separate Statement of Additional |
| | : | Facts; Affidavits of Edith Wong, |
| v. | : | Frank Lazarra, and Jeffrey Nolan; and |
| | : | Request For Judicial Notice Filed |
| ABRUZZI INVESTMENTS, LLC; JOHN | : | Concurrently Herewith] |
| PETROZZA, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| ————————————————— | : | |

### BRIEF IN SUPPORT OF PLAINTIFF'S
### MOTION FOR SUMMARY JUDGMENT, OR IN THE
### ALTERNATIVE, SUMMARY ADJUDICATION AS AGAINST
### DEFENDANTS ABRUZZI INVESTMENTS, LLC AND JOHN PETROZZA

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Orion Healthcorp, Inc. (7246); Constellation Healthcare Technologies, Inc. (0135); NEMS Acquisition, LLC (7378); Northeast Medical Solutions, LLC (2703); NEMS West Virginia, LLC (unknown); Physicians Practice Plus Holdings, LLC (6100); Physicians Practice Plus, LLC (4122); Medical Billing Services, Inc. (2971); Rand Medical Billing, Inc. (7887); RMI Physician Services Corporation (7239); Western Skies Practice Management, Inc. (1904); Integrated Physician Solutions, Inc. (0543); NYNM Acquisition, LLC (unknown) Northstar FHA, LLC (unknown); Northstar First Health, LLC (unknown); Vachette Business Services, Ltd. (4672); Phoenix Health, LLC (0856); MDRX Medical Billing, LLC (5410); VEGA Medical Professionals, LLC (1055); Allegiance Consulting Associates, LLC (7291); Allegiance Billing & Consulting, LLC (7141); New York Network Management, LLC (7168). The corporate headquarters and the mailing address for the Debtors listed above is 1715 Route 35 North, Suite 303, Middletown, NJ 07748.

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT ..................................................................................................1

STANDING .........................................................................................................................3

PROCEDURAL STATEMENT ..............................................................................................4

STATEMENT OF FACTS .....................................................................................................5

    A.    Defendant Abruzzi Was a Major Shareholder of The Debtors; and Its Principal, Defendant Petrozza, a Friend of Paul Parmar ..............................5

    B.    Millions of Dollars from The Debtors' Bank Accounts Were Directly Moved into The Debtors' IOLA Account At Robinson Brog And Reflected On The Debtors' Books And Records As Property of the Debtor ...........................6

    C.    Parmar Fabricated Acquisitions In The Amount Of $60 Million Through The Synthetic Acquisitions Of Northstar Acquisition, LLC, Phoenix Health, LLC, And MDRX Medical Billing, LLC ....................................................7

    D.    In January 2017 Defendant Petrozza Approved The Go-Private Transaction Which Included Bank of America Advancing $130,000,000 Guaranteed by All the Debtors;  Of Which $46,000,000 was Diverted By Parmar Into the Robinson Brog IOLA Account ...........................................................8

    E.    On May 25, 2017, $250,000 Was Transferred To Defendants Petrozza And Abruzzi from the IOLA Account ........................................................10

    F.    At The Time Petrozza Received the $250,000 Transfer Lawsuits and Judgment Creditors Existed Against the Debtors ...................................................11

LEGAL STANDARD ON SUMMARY JUDGMENT OR ADJUDICATION .............................12

    A.    The Robinson Brog IOLA Account Were Funds of the Debtors Or Property In Which The Debtors Had An Interest ............................................13

           i.    At All Pertinent Times, The Monies in the IOLA Account Were Reflected in Communications, Financial Records and Audited Returns As An Asset and Debt of the Estate ...............................................15

           ii.    Debtors' Monies were Directly Deposited into IOLA Account To Pay Legitimate and Illegitimate Purposes ...........................................16

           iii.    In 2017, Proceeds From the Go-Private Transaction Were Funded in Part by the Debtors Borrowing $130,000,000 Which Were Deposited into IOLA Account .......................................................17

    B.    It Cannot Be Reasonably Disputed that the Transfer Was an Intentionally Fraudulent Transfer Under State and Federal Law .................................17

    C.    Pursuant To N.Y. DCL §276, The Transfer Was An Intentionally Fraudulent Transfer ..............................................................................21

           i.    The Lack Or Inadequacy Of Consideration .................................22

           ii.    The Family, Friendship Or Close Associate Relationship Between The Parties ......................................................................22

iii.    The Retention Of Possession, Benefit Or Use Of The Property In Question ..................................................................................................... 23

iv.    The Financial Condition Of The Party Sought To Be Charged Both Before And After The Transaction In Question ........................................... 23

v.    The Existence Or Cumulative Effect Of A Pattern Or Series Of Transactions Or Course Of Conduct After The Incurring Of Debt, Onset Of Financial Difficulties, Or Pendency Or Threat Of Suits By Creditors; And The General Chronology Of The Events And Transactions Under Inquiry...................................................................................................... 24

D.    The Transfer Violates NY Debt & Cred L § 273(a) As  A Constructively Fraudulent Transfer As Judgment Creditors Existed Before The Transfer And The Transfer Had The Effect Of Moving Monies Out Of The Estate For No Value ............................................................................................................ 24

E.    The Transfer Lacked Both Consideration And Good Faith..................................... 26

CONCLUSION........................................................................................................................ 29

# TABLE OF AUTHORITIES

## Cases

*Adelphia Recovery Trust v. Bank of Am., N.A.,*
  624 F. Supp. 2d 292, 308 (S.D.N.Y. 2009) ...............................................................20

*Adickes v. S.H. Kress & Co.,*
  398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970) ......................................12

*Am. Media, Inc. v. Bainbridge & Knight Labs., LLC,*
  135 A.D.3d 477, 478, 22 N.Y.S.3d 437 (1st Dept 2016) ............................................27

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ....................................13

*Bayou Accredited Fund, LLC v. Redwood Growth Partners, L.P. (In re Bayou Group, LLC),*
  396 B.R. 810, 826- 827 (Bankr. S.D.N.Y. 2008) .......................................................18

*Berman v. Pavano (In re Michael S. Goldberg, LLC),*
  2020 Bankr. LEXIS 2314, 22 (Bankr. Conn. 2020......................................................27

*Berner Trucking, Inc. v. Brown,*
  281 AD2d 924, 925, 722 N.Y.S.2d 656 (1st Dept 2001).............................................27

*Boyer v. Carlton, Fields, Ward, Emmanuel, Smith & Cuter, P.A. (In re USA Diversified Prods., Inc.),* 100 F.3d 53, 55 (7th Cir. 1996) ........................................................................16

*Brown v. Dellinger (In re Brown),*
  734 F.2d 119, 123 (2d Cir. 1984) ...............................................................................13

*Bruno Mach. Corp. v. Troy Die Cutting Co. (In re Bruno Mach. Corp.),*
  435 B.R. 819, 852-53 (N.D. NY, 2010)......................................................................19

*Dixie Yarns, Inc. v. Forman,*
  906 F. Supp. 929, 938 (S.D.N.Y. 1995) .....................................................................26

*EAC of N.Y., Inc. v. Capri 400, Inc.,*
  49 A.D.3d 1006, 1007, 853 N.Y.S.2d 419 (3d Dept 2008) .........................................27

*Employees' Ret. Sys. of Gov't of the Virgin Islands v. Blanford,*
  794 F.3d 297, 306 (2d Cir. 2015) ...............................................................................20

*Farm Stores, Inc. v. Sch. Feeding Corp.,*
  102 A.D.2d 249, 477 N.Y.S.2d 374 (2d Dep't 1984) .................................................28

*FBI Wind Down Inc. Liquidating Trust v. All Am. Poly Corp. (In re FBI Wind Down, Inc.),*
  581 B.R. 116, 130 (Bankr. DE, 2018) ........................................................................16

*Floyd v. Option Mortgage Corp. (In re Supplement Spot, LLC),*
  409 BR 187, 205 (Bankr. SD TX 2009) .....................................................................15

*Geron v. Schulman (In re Manshul Constr. Corp.),* 2000 U.S. Dist. LEXIS 12576, 2000 WL
  1228866, at *53 (S.D.N.Y. Aug. 20, 2000) ...............................................................26

*Grace v. BankLeumi Trust Co. of N.Y.,*
  443 F.3d 180, 188 (2d Cir. 2006) ...............................................................................25

*HBE Leasing Corp. v. Frank*,
48 F.3d 623, 634 (2d Cir. 1995) ................................................................................28

*In re Actrade Fin. Techs. Ltd.*,
337 B.R. 791, 809 2005 Bankr. LEXIS 2816 (Bankr. S.D.N.Y. 2005)........................22

*In re MarketXT. Holdings Corp.*,
376 B.R. 390 (Bankr. S.D.N.Y. 2007)........................................................................21

*In re Sec. Investor Prot. Corp. v. Bernard L. Madoff
 Inv. Sec. LLC*, 2017 Bankr. LEXIS 4145.................................................................14

*Korea Deposit Ins. Corp. v. Mina Jung*,
59 Misc. 3d 442, 449 (Sup Ct, New York County, 2017) ...........................................21

*Kramer v. Mahia (In re Khan)*,
2014 Bankr. LEXIS 4205, 41 (Bkrtcy E.D.N.Y, 2016)...............................................26

*Lyman Commerce Solutions, Inc. v. Lung*,
2015 U.S. Dist. LEXIS 51447, (S.D.N.Y, 2015)....................................................25, 27

*Machado v A. Canterpass*, LLC,
 115 A.D.3d 652, 654, 981 N.Y.S.2d 758 (2d Dept 2014) .....................................23, 24

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).....................................12

*McColley v. Rosenberg (In re Candor [\*445] Diamond Corp.)*,
76 B.R. 342, 349 n. 4 (Bankr. S.D.N.Y. 1987)...........................................................18

*Mellon Bank v. Official Comm. of Unsecured Creditors (In re R.M.L., Inc.)*,
92 F.3d 139, 149 (3d Cir. 1996) ................................................................................22

*Mendelsohn v. Jacobowitz (In re Jacobs)*,
394 B.R. 646, 658 (Bankr. E.D.N.Y. 2008).................................................................21

*Mitchell v. Garrison Protective Servs., Inc.*,
579 F. App'x 18 (2d Cir. 2014).................................................................................26

*Mitchell v. Lyons Prof'l Servs., Inc.*,
No. 09 CIV. 1587 BMC, 2013 U.S. Dist. LEXIS 124937, 2013 WL 4710431, at \*3
(E.D.N.Y. Sept. 1, 2013)...........................................................................................25

*Nisselson v. Salim (In re Big Apple Volswagen, LLC)*,
 2016 Bankr. LEXIS 834, \*29 (Bankr. S.D.N.Y, 2016) .........................................13, 16

*Orr v. Kinderhill Corp.*,
991 F.2d 31, 35 (2d Cir. 1993) ..................................................................................18

*Priestley v. Panmedix Inc.*,
18 F. Supp. 3d 486, 497 (S.D.N.Y. 2014) ..................................................................25

*Rubin Bros. Footwear, Inc. v. Chemical Bank (In re Rubin Bros. Footwear Inc.)*,
119 B.R. 416, 423 (Bankr. S.D.N.Y. 1990).................................................................18

*Salomon v. Kaiser (In re Kaiser)*,
722 F.2d 1574, 1582-83 (2d Cir. 1983). ....................................................................22

*Sardis v. Frankel*,
   113 A.D.3d 135, 142, 978 N.Y.S.2d 135 (1st Dept 2014)............................................................27

*Shapiro v. Wilgus*,
   287 U.S. 348, 354, 53 S. Ct. 142, 77 L. Ed. 355 (1932)..............................................................21

*Sharp Int'l Corp. v. State St. Bank & Trust Co.*,
   403 F.3d 43, 54 (2d Cir. 2005) ..................................................................................................28

*State Farm Mut. Auto Ins. Co. v. Grafman*,
   No. 04-cv-2609(NG) (SMG), 2017 US Dist. LEXIS 154290, 2017 WL 4217122
   (E.D. N.Y. Sept. 221, 2017)......................................................................................................14

*Tronox Inc. v. Kerr McGee Corp.*, (*In re Tronox Inc.*)
   503 B.R. 239, 282-283 (S.D.N.Y, 2013) ..................................................................................22

*Tronox v. Anadarko Petroleum (In re Tronox Inc.)*,
   429 B.R. 73, 95 (Bankr. S.D.N.Y. 2010)..................................................................................22

*United States v. Maciejewski*,
   70 F. Supp. 2d 129, 134 (Bankr. N.D.N.Y, 1999) ...................................................................20

*United States v. McCombs*,
   30 F.3d 310, 327-28 (2d Cir. 1994) ..........................................................................................21

**Statutes**

11 U.S.C. § 541..................................................................................................................................13

11 U.S.C. § 541(a)(1).........................................................................................................................13

11 U.S.C. § 541(a)(3).........................................................................................................................13

11 U.S.C. § 544..................................................................................................................................18

11 U.S.C. § 548....................................................................................................................18, 21, 29

11 U.S.C. § 548(a)(1)(A) .............................................................................................................18, 19

11 U.S.C. § 548(a)(1)(B) ..................................................................................................................18

11 U.S.C. § 550..................................................................................................................................18

11 U.S.C. § 551..................................................................................................................................18

N.Y. Debt & Cred. Law § 272 ......................................................................................................26, 27

NY Debt & Cred Law § 273 ...................................................................................................26, 26, 29

N.Y. Debt & Cred. Law § 273-a ............................................................................................24, 25, 26

NY Debt & Cred Law § 276 .........................................................................................18, 21, 24, 29

**Other Authorities**

H.R. Rep. No. 595, 95th Cong., 1st Sess. 367 (1977) ......................................................................13

NY Jud. Law § 497(1) ......................................................................................................................14

U.S. Code Cong. & Ad. News 5963, 6323 ......................................................................................14

**Rules**

Fed R. Civ. Proc. 56...................................................................................................................1, 12

Fed. R. Bankr. P. 7056...............................................................................................................5, 12

This Brief is filed pursuant to Fed R. Civ. Proc. 56(a) and (d), by Plaintiff, Howard M. Ehrenberg in his capacity as Liquidating Trustee of Orion Healthcorp, Inc., et al., (the "Plaintiff" or the "Liquidating Trustee"), in support of Plaintiff's Motion For Summary Judgment, Or In The Alternative, Summary Adjudication (the "Motion"), with supporting documents filed concurrently herewith as against Defendants Abruzzi Investments, LLC and John Petrozza (the "Defendant").

## SUMMARY OF ARGUMENT

1.      Defendant John Petrozza, was among Paul Parmar's ("Parmar") inner circle and received a fraudulent conveyance/transfer within one year of the filing of the petition in bankruptcy.  The Motion seeks recovery of that fraudulent conveyance\transfer, which was one of a series of such inappropriate transfers of estate assets initiated by Parmar to a friend and insider for no consideration to the Debtors.  The fraud in this particular instance involves the misuse of an Interest On Lawyer Account ("IOLA Account") of the Debtors' law firm at Robinson, Brog, Leinwand, Greene, Genovese & Gluck, P.C. ("Robinson Brog") as utilized to obfuscate Parmar's diversion of Debtors' funds.  Parmar deposited funds from the Debtors' bank accounts as well as the proceeds of his entirely fraudulent Go-Private transaction into the IOLA Account.  The $250,000 at issue in the present adversary proceeding flowed out of the Debtors' IOLA Account with no corresponding benefit to the Debtors' estates.

2.      Between September 2015 and March 2016, Parmar and company falsified $60 million in fake acquisitions (the "Synthetic Transactions"). Ultimately,  on January 30, 2017, Parmar and Debtors entered into the "Go-Private transaction" (the "Go-Private Transaction")

wherein the falsified corporate records were presented to Bank of America ("BOFA") in connection with obtaining a loan of $130 million backed by the Debtors' assets (including the purported value of the companies acquired through Synthetic Transactions).[2]  With Defendant Petrozza's assistance, fictitious companies were created weeks prior to the Go-Private Transaction to receive the proceeds thereof.  One of these companies was Lexington Landmark Services, LLC. In addition to funds diverted directly from Debtors' bank accounts, Parmar diverted $60 million from the Go-Private Transaction to the Robinson Brog IOLA Account on February 3, 2017, under a book entry titled "Constellation Health/CHT Closing".[3]  There can be no reasonable dispute that these funds were assets of the Debtors as the account was reflected on the Debtors' financial records as property of the estate.

3.      Parmar also deceptively moved funds out of the IOLA Account solely for Parmar's personal benefit.  Notably, on May 24, 2017, at 8:39 pm, Parmar emailed Mitchell Greene at Robinson Brog to wire $250,000 from the Robinson Brog IOLA Account to Defendant (the "Transfer").  Parmar did not care which account the funds were taken from and flippantly directed Robinson Brog to take it from "any account".   One month later, Parmar directed Defendant to transfer the $250,000 to Sunshine Star, LLC, yet another entity Parmar created, this time to benefit Parmar's then girlfriend.  Parmar and Defendant Petrozza were friends at the time of these transfers and Defendant Abruzzi Investments LLC ("Abruzzi") was a shareholder of the Debtors under the Go-Private Transaction.  Defendant Petrozza is the principal of Abruzzi.

---

[2] BOFA is the single largest secured creditor in the bankruptcy estates with a scheduled secured claim (#545020140) in the amount of $158,200,710.89.

[3] On March 15, 2017, the FBI seized $20,100,356.70 of the Go-Private Transactions funds from the IOLA account, as one beneficiary thereof, PBPP Partners, LLC (Pav Bakshi Paul Parmar), was alleged to be a fraud.

4.      It is undisputed that Defendant performed <u>no</u> services for the Debtors, conducted <u>no</u> business with the Debtors, and <u>no</u> antecedent debt was satisfied as a result of the Transfer.  Since this was yet another personal transaction between Parmar and a friend, no reasonable dispute exists that the Transfer was made without consideration to the Debtors.  As Defendant was a major shareholder of the Debtors, the Transfer cannot be made in good faith as a matter of law.  In addition to being an intentionally fraudulent conveyance the Transfer, was at a minimum, a constructively fraudulent conveyance as well.

5.      Summary judgment is designed to pierce the pleadings and expose arguments not supported by the law or lacking evidentiary support.  Defendant's myriad of self-serving explanations are not a defense.  The Motion is ripe for determination, and the Court should grant the Motion.

### STANDING

6.      On March 16, 2018, each of the Debtors except New York Network Management, LLC ("<u>NYNM</u>") filed a voluntary petition with the United States Bankruptcy Court for the Eastern District of New York (the "<u>Bankruptcy Court</u>") under chapter 11 of the Bankruptcy Code (NYNM commenced its voluntary petition on July 5, 2018) (collectively, the "<u>Debtors</u>).  The Debtors' cases are jointly administered for administrative purposes only [Dkt. Nos. 34 and 381].

7.      On February 26, 2019, the Honorable Alan S. Trust, United States Bankruptcy Judge for the Eastern District of New York, entered an order (the "<u>Confirmation </u>

Order") [Dkt. No. 701] confirming the Debtors' Third Amended Joint Plan Of Liquidation (the "Plan").

8.      The Plan provides, among other things, for the formation of the Liquidating Trust and the appointment of the Liquidating Trustee on the Effective Date (as that term is defined in the Plan) to oversee distributions to holders of Allowed Claims and Allowed Interests and to pursue retained Causes of Action of the Debtors' Estates.  The Effective Date occurred on March 1, 2019.

9.      The Plan provides that the Liquidating Trustee shall have the authority and responsibility to, among other things, receive, manage, invest, supervise, and protect the Liquidating Trust Assets, including causes of action, of the Debtors as well as making distributions to creditors with Allowed claims.  (Plan, §6.3)

## PROCEDURAL STATEMENT

10.      Plaintiff filed the complaint (the "Complaint") in this action on March 14, 2020 [Dkt. No. 1].  The Complaint sought to recover alleged fraudulent transfers under applicable provisions of the Bankruptcy Code and New York Debt and Creditor Law ("N.Y. DCL").

11.      Defendants filed an Answer on May 15, 2020 [Dkt. No. 5].

12.      On June 16, 2021, the Court issued a Case Management and Discovery Plan ("Scheduling Order").  [Dkt No. 26]

13.      On or about August 21, 2020, counsel for Defendants' moved to withdraw as counsel. [Dkt No. 11]  On September 2, 2020, Plaintiff filed a Response and Limited

Opposition. [Dkt No. 12 & 13]  On October 20, 2020, Defendant retained new counsel. [Dkt

No. 18]  The Pretrial Conference was adjourned to January 21, 2021. [Dkt No. 20]  A Case

Management and Discovery Plan was filed on December 11, 2020 [Dkt No. 21], and amended on

June 16, 2021. [Dkt No. 26]    Fact and expert discovery is closed.

        14.    Pursuant to 7056-1(a) Plaintiff requested and received permission from the

Court to file a motion for summary judgment or summary adjudication. [Dkt No. 27]

## STATEMENT OF FACTS

        15.    Based upon the affidavits attached to the Motion, the documents submitted

herewith, the Request for Judicial Notice and the pleadings in this case, there is no genuine issue

concerning the following material facts:

**A.**    **Defendant Abruzzi Was a Major Shareholder of The Debtors; and Its Principal, Defendant Petrozza, a Friend of Paul Parmar**

        16.    The Debtors were a consolidated enterprise of several companies

aggregated through a series of acquisitions which operated in the healthcare sector primarily in

revenue and practice management for physician practices.  (*See* Joint Statement of

Uncontroverted Facts ("JSOF") #1)

        17.    Defendant Petrozza resides in the State of Florida and does business in

New York.  Defendant Abruzzi Investments, LLC is a Limited Liability Corporation that has no

employees, officers or directors but is managed by Defendant Petrozza for the sole purpose of

investing his monies.  (JSOF #2-3)

18.     Paul Parmar and Defendant Petrozza were close friends who socialized, exchanged credit cards, and paid one another's American Express bills.  ("JSOF #4)  Mr. Petrozza was a frequent guest at the Colts Neck, New Jersey residence of Mr. Parmar.  (JSOF #4)

19.     In June 2013, Defendant alleges he invested $4 million in Constellation Health Investment which had an ownership interest in Debtor Orion Healthcorp Inc. ("Orion").  (JSOF #5)  Defendant Abruzzi filed claim no. 10062 in the bankruptcy case, identifying itself as a shareholder (common stock) of Constellation Healthcare Technologies, Inc.  (JSOF #6)  Defendant Abruzzi filed a second claim (claim no. 10063), asserting it held a 49% membership interest in Constellation Healthcare Technologies, Inc.  (JSOF #7)

**B.    Millions of Dollars from The Debtors' Bank Accounts Were Directly Moved into The Debtors' IOLA Account At Robinson Brog And Reflected On The Debtors' Books And Records As Property of the Debtor**

20.     For fiscal year 2014, $23 million borrowed by Orion was deposited in the IOLA Account.  This debt was reflected in the audited Consolidated Financial Statements of the Debtors as "net proceeds from long term debt."  (*See* Plaintiff's Separate Statement of Additional Uncontroverted Facts ("ASOF"), ASOF #39.)

21.     Debtor Constellation Healthcare Technologies Inc. ("CHT") maintained a checking account at Manufacturer's Trust Bank, account #68132 and #25647(the "M&T Bank Accounts").  (ASOF ##36, 37)  Debtor Orion maintained an operating account at JP Morgan Chase Bank, NA; Account #66450 (the "Chase Bank Account").  (ASOF #38)

22.      On February 19, 2016, Parmar, instructed Sam Zaharis, the Debtors'

former CFO, to transfer $5,058,408.81 of the Debtor CHT's monies out of the M&T Bank

Accounts to the Debtors' IOLA Account at Robinson Brog.  (ASOF #36)  On August 10, 2016,

$12,740,000 was transferred out of the Debtor CHT's, bank account to the IOLA Account.

(ASOF #37)  On March 10, 2017, $5,590,000 was transferred out of the Debtor Orion's bank

account to the IOLA Account.  (ASOF #38)   The escrow account balance in the IOLA Account

for year ending 2016 of $7,280,279, was reflected in the CHT general ledger balance as

$7,255,363, which comprised nearly all of the cash balance reported on CHT's balance sheet in

its audited financials for the year ended December 31, 2016.  (ASOF #40)

**C.      Parmar Fabricated Acquisitions In The Amount Of $60 Million Through The
Synthetic Acquisitions Of Northstar Acquisition, LLC, Phoenix Health, LLC, And
MDRX Medical Billing, LLC**

23.      Beginning on September 29, 2017 Timothy J. Dragelin served as the

Debtors' CEO and CRO and through the filing of the Petition, restructuring, sale of the Debtors'

assets and confirmation of the Plan.  (JSOF #9)  FTI Consulting, Inc. ("FTI") was appointed in

September 2017 to conduct a forensic examination of the Debtors' business following questions

raised as to CHT's financial condition.  (JSOF #8)  Mr. Dragelin's appointment occurred shortly

after the resignation of executives Parmar, and termination of Sam Zaharis and Ravi Chivukula.

24.      On September, 16, 2015, Debtor CHT purportedly acquired Phoenix

Health, LLC ("Phoenix") and its businesses for $14 million.  However, Phoenix had no business,

assets or employees and was a fictitious entity.  (JSOF #10)

25.     On September, 18, 2015, Debtor CHT purportedly acquired Northstar Acquisition, LLC ("Northstar") and its businesses for $18 million. However, Northstar had no business, assets or employees and was a fictitious entity.  (JSOF #11)

26.     On February 10, 2016, CHT purportedly acquired MDRX Medical Billing, LLC ("MDRX") and its businesses for $28 million. MDRX had no assets, employees, conducted no business.  (JSOF #12-13)  The acquisitions of Phoenix, Northstar and MDRX were sham transactions designed to benefit Parmar and his friends to the detriment of the estates.

27.     Despite purporting to make a number of acquisitions in 2016, the Debtor was unable to generate additional revenue in fact generating less revenue than 2015, a fact that illustrates the fictitious nature of the purported acquisitions of Phoenix, Northstar and MDRX. (ASOF #43)

**D.     In January 2017 Defendant Petrozza Approved The Go-Private Transaction Which Included Bank of America Advancing $130,000,000 Guaranteed by All the Debtors; Of Which $46,000,000 was Diverted By Parmar Into the Robinson Brog IOLA Account**

28.     In November 2016, as part of the Go-Private Transaction, Defendant Petrozza met with Parmar and Vardi and approved the Go-Private Transaction so they could all make a "gazillion dollars."  (JSOF #14)

29.     As part of an orchestrated fraud to divert funds from the Go-Private Transaction, a number of fictitious entities were created to represent ownership of fictitious equity of CHT. One of these fictitious entities was Lexington Landmark Services, LLC ("Lexington"), which was incorporated on November 17, 2016.  (JSOF ##16, 17; ASOF #44)

The Operating Agreement of Lexington identifies Defendant Petrozza as the 100% owner member.  (JSOF #15)  Lexington was not a legitimate business, Petrozza's signature was forged, and he never gave Robinson Brog authority to receive funds on behalf of such entity. (JSOF #16) The IRS was given false documents regarding Lexington.  (JSOF #17) Numerous other fictitious entities were also created and registered with the IRS in November 2016, all to receive the proceeds from the Go-Private Transaction.  Pulsar Advance Care ("Pulsar") was incorporated on November 17, 2016, by Parmar's brother in law, Salil Sharma.  (ASOF #45) Axis Medical Services, LLC ("Axis") was incorporated on November 17, 2016.  Lexington, Axis, and Pulsar, were all located at the same address in Hazlet, NJ and were assigned Employer identification numbers by the IRS on the same day, December 5, 2016.  (ASOF #48) Vega Advanced Care, LLC ("Vega"), located at the same address in Hazlet, NJ, was assigned Employer identification number by the IRS on December 12, 2016.  (ASOF #50)  Axis and Vega were companies established with Mr. Vardi as principle in order to receive funds from the Go-Private Transaction.  (ASOF #49)  Robinson Brog was designated to receive the funds for each entity in order to deprive the Debtors' estates of funds from the Go-Private Transaction. (ASOF ##46, 47)

        30.     To fund the Go-Private Transaction, a Credit Agreement was entered into with BOFA wherein BOFA advanced $130 million to the Debtors.  (ASOF #51) The Credit Agreement with BOFA was executed by all the Debtors and was secured by substantially all the Debtors' assets.  (ASOF #52)  On January 30, 2017, approximately $46 million that resulted from the Go-Private Transaction was transferred into the Debtors' IOLA account at Robinson

Brog and listed under a line item that states "Constellation Health/CHT Closing".  (JSOF #18)

BOFA is the Debtors' largest creditor with an outstanding secured claim in the amount of

$158,200,710.89.  (JSOF #19)

**E.      On May 25, 2017, $250,000 Was Transferred To Defendants Petrozza And Abruzzi from the IOLA Account**

31.      In accordance with the Bankruptcy Court's Order dated June 26, 2018,

Robinson Brog was ordered to turn over the IOLA Account statement for escrow funds held on

behalf of the Debtors and the non-debtor entities listed on Exhibit A to the Order.  (JSOF #20)

The IOLA Statement memorializes $46,620,987 deposited into the IOLA Account on

February 3, 2017, from Capita Registrars in tranches of funds attributable to Axis, Vega,

Lexington and Pulsar; however, no entries for outflows correspond to the alleged entities.  (*See*

Affidavit of F. Lazarra, ¶ 10; JSOF #21; ASOF #38) Each of these was an entity formed for the

sole purpose of improperly diverting the Debtors' funds received from the Go-Private

Transaction.  Such funds should have been used to pay creditors and, if appropriate, any

legitimate shareholders.  These entities were neither creditors nor shareholders of the Debtors or

their predecessors in interest.

32.      On May 24, 2017, Parmar directed Mitchell Greene at Robinson Brog to

wire $250,000 from the Robinson Brog IOLA Account to Defendant Abruzzi. (ASOF #53)

Parmar did not care which escrow account it came from.  (ASOF #54)  The reason for the funds

transfer was that Defendant Petrozza and/or Abruzzi needed $200,000 or $250,000 to lease a

house.  (JSOF #22)  On May 25, 2017, Robinson Brog confirmed to Paul Parmar and Sam

Zaharis that the wire of $250,000 was sent from the IOLA Account to Defendant Abruzzi. (ASOF #55)

33.     Defendant Petrozza contends he repaid the Parmar one month later.  On June 28, 2017, $250,000 was liquidated from an investment account of Defendant Abruzzi and forwarded to Defendant Petrozza's checking account.  (JSOF #24)  On June 29, 2017, Defendant Abruzzi wired $250,000 to Sunshine Star, LLC ("Sunshine").  (JSOF #25)  Sunshine was created weeks earlier by Parmar and Parmar's then girlfriend, Elena Sartison.  (ASOF#56)  Sunshine's account at M&T Bank was closed on October 16, 2017.  (ASOF #59)  Parmar and Petrozza exchanged funds between one another before the Transfer which Defendant could not explain. (JSOP #23)

34.     The Debtors' records evidence no antecedent debt satisfied concurrently with the diversion of the $250,000.  (ASOF #60)  The Debtors' books and records evidence no antecedent debt owed to Sunshine Star, LLC or satisfied as a result of the June 29, 2017 transaction.  (ASOF ##57, 60)  The Debtors' books and records evidence no antecedent debt owed to Petrozza and/or Abruzzi Investments, LLC between January 1, 2017 and December 31, 2017.  (ASOF #58) Defendant admits the Transfer to Sunshine Star, LLC did not benefit the debtors.  (JSOF #28)  Defendant performed no service for the Debtors.  (JSOF #26)

**F.     At The Time Petrozza Received the $250,000 Transfer Lawsuits and Judgment Creditors Existed Against the Debtors**

35.     On December 16, 2015, the United States District Court for the Southern District of Texas issued a Judgment in the amount of $194,185 against Debtor Orion in favor of

former employees Jack McBride and Alan Nottingham for unpaid deferred compensation.  The

Judgment was filed as a proof of claim in Case 8-18-71748, and assigned claim no. 10001.  The

filed claim remains unsatisfied.  (JSOF #31)

36.    On March 9, 2016, a lawsuit was initiated in the Supreme Court of the

State of New York by Criterions, LLC, against Debtors Physician Practice Plus, LLC and

Constellation Healthcare Technologies, Inc.  (JSOF #32)  Judgment was entered on

November 30, 2017, against Debtors Physician Practice Plus, LLC and Constellation Healthcare

Technologies, Inc. in the amount of $77,767.26.  (JSOF #33)  On March 23, 2018, a Suggestion

of Bankruptcy was filed by the Debtors to stay the proceedings in state court.  (JSOF #34)

**LEGAL STANDARD ON SUMMARY JUDGMENT OR ADJUDICATION**

37.    Pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure,

Rule 56 of the Federal Rules of Civil Procedure is applicable to this adversary proceeding.

Under Rule 56, summary judgment shall be granted "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The moving party bears the burden of demonstrating the absence of any genuine issue of

material fact, and all inferences to be drawn from the underlying facts must be viewed in the

light most favorable to the party opposing the motion". *Adickes v. S.H. Kress & Co.,* 398 U.S.

144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970).  However, once there is a showing of the

absence of an issue of fact, the opposing party must produce specific evidence that raises a

genuine issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586, 106

S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  A fact is "material" if it might affect the outcome of the

suit under the governing substantive law, and "summary judgment will not lie if the dispute

about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248,

106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

A.    **The Robinson Brog IOLA Account Were Funds of the Debtors Or Property In Which The Debtors Had An Interest**

38.    Section 541(a)(1) of the Bankruptcy Code's broad definition of "[p]roperty

of the estate" includes "all legal and equitable interests of the debtor in property *wherever*

*located or by whomever held*." [Emphasis added] 11 U.S.C. § 541(a)(1); *Nisselson v. Salim (In*

*re Big Apple Volswagen, LLC)*, 2016 Bankr. LEXIS 834, *29 (Bankr. S.D.N.Y, 2016).  "The

phrase 'all legal or equitable interests of the debtor in property' has been given the broadest

possible interpretation and the term equitable interest has generally not been interpreted as

limited to a debtor's equity in property."  See *Brown v. Dellinger (In re Brown)*, 734 F.2d 119,

123 (2d Cir. 1984).  Further, the "legal or equitable interests" of a debtor have been held to

encompass an interest even though such interest is contingent. Id.  Section 541(a)(3) of the Code

includes within its definition of "property of the estate" any property of the debtor, or the

proceeds thereof, recovered from a "custodian" of the debtor's property.  Id. These *broad*

*interpretations* of "equitable interest" find strong support in the legislative history of the

Bankruptcy Code.  "In describing § 541, the reports of the Senate and House of Representatives,

Committees on the Judiciary observed that "the scope of this paragraph is broad. It includes all

kinds of property, including tangible or intangible property [and] causes of action . . . ."  H.R.

Rep. No. 595, 95th Cong., 1st Sess. 367 (1977), reprinted in 1978 U.S. Code Cong. & Ad. News

5963, 6323; S. Rep. No. 989, 95th Cong., 2d Sess. 82 (1978), reprinted in 1978 U.S. Code Cong. & Ad. News 5787, 5868." *Id.*

39.    An Interest on Lawyers Account is an unsegregated interest-bearing deposit account… for the deposit by an attorney of "qualified funds".  NY Jud. Law § 497(1). "Qualified funds" are monies received by an attorney in a fiduciary capacity from a client or beneficial owner. The debtors' funds sitting in an IOLA account are the funds of the debtor as they are not property of the law firm who has no dominion or control over them.  See *State Farm Mut. Auto Ins. Co. v. Grafman*, No. 04-cv-2609(NG) (SMG), 2017 US Dist. LEXIS 154290, 2017 WL 4217122 (E.D. N.Y. Sept. 221, 2017).  See *In re Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 2017 Bankr. LEXIS 4145, pg. 11 [law firm was not free to use the client's funds in escrow for its own benefit, and had it done so, the guilty attorneys undoubtedly would have been disciplined and possibly prosecuted for stealing client funds. Hence, the law firm was not a transferee].

40.    The Bankruptcy Court's Order dated June 26, 2018, ordered Robinson Brog to turn over the IOLA Account statement for escrow funds held on behalf of the Debtors and the non-debtor entities listed on exhibit A to the Order.  An assertion by Parmar's lawyer that Parmar makes a claim on the IOLA Account is not evidence.  An unsubstantiated claim does not alter the basic facts before this Court: (1) Debtor funds were directly deposited into the IOLA Account, (2) the IOLA Account was reflected on the Debtors' books and records as an asset of the Debtors, and (3) the Go-Private Transaction which resulted in BOFA advancing $130 million, and which liability was placed on the Debtors books and records, were deposited

directly into the IOLA Account.   The facts clearly establish the IOLA Account in the present case represent an interest of the Debtor in property.

> **i.    At All Pertinent Times, The Monies in the IOLA Account Were Reflected in Communications, Financial Records and Audited Returns As An Asset and Debt of the Estate**

41.    For the fiscal year 2014, $23 million borrowed by Orion was deposited and appeared in the IOLA Account. (ASOF #39) The $23 million debt was reflected in the audited Consolidated Financial Statements of the Debtors as "net proceeds from long term debt". (ASOF #39)  The Escrow Account reported in CHT's general ledger shows that for the year-end December 31, 2016, the IOLA Escrow Account balance was nearly equal to the amount recorded in the Debtors' balance sheet.  (ASOF #40) This Escrow Account balance comprised of nearly all of the cash balance reported on CHT's balance sheet in its audited financials for the year ended December 31, 2016, meaning the IOLA Account balance again was reported in the Debtors financials and tax returns.  See *Floyd v. Option Mortgage Corp. (In re Supplement Spot, LLC)*, 409 BR 187, 205 (Bankr. SD TX 2009) (significance that account was listed in the debtor's schedules in finding asset was property of the estate).

42.    Escrow statements found as attachments to email communications from April 2016 to September 2017 indicate that the IOLA Account was reported to the Debtors as a single file on a consolidated basis.  (ASOF #41)   The historical treatment of the IOLA Account in reporting it to the Debtor, and Robinson Brog seeking direction from the Debtors, was consistent with it being reflected as an interest in the property of the Debtors.

ii.    **Debtors' Monies were Directly Deposited into IOLA Account To Pay Legitimate and Illegitimate Purposes**

43.    Money in a bank account in the name of a debtor is presumed to be property of the bankruptcy estate. *Nisselson v. Salim (In re Big Apple Volkswagen, LLC)*, 2016 Bankr. LEXIS 834, *30 (Bankr. S.D.N.Y. 2016); *Boyer v. Carlton, Fields, Ward, Emmanuel, Smith & Cuter, P.A. (In re USA Diversified Prods., Inc.)*, 100 F.3d 53, 55 (7th Cir. 1996) ("Property of the debtor . . . includes the interest that a depositor the debtor has in the money in his account . . .")  Millions of dollars from the Debtors' bank accounts were directly moved into the IOLA Account at Robinson Brog in 2016-2017, where the Debtor directed how they be utilized. The Funds were deposited from bank accounts of both Debtors, CHT and Orion. The deposits exceeded $10 million.  Once a trustee establishes that a transfer was made from a debtor-owned account over which the debtor normally exercises control, the trustee "makes a preliminary showing of an avoidable transfer 'of an interest of the debtor'.  *FBI Wind Down Inc. Liquidating Trust v. All Am. Poly Corp. (In re FBI Wind Down, Inc.),* 581 B.R. 116, 130 (Bankr. DE, 2018).  This presumption holds even in cases where the account contains commingled funds. Id.  In reviewing whether the presumption should not apply to a specific case, courts have looked to evidence demonstrating other indicia of control. Control refers not merely to the physical means of exerting control, but the legal right to do so. Thus, the transferor's right to use funds to pay its own creditors or for an alternative purpose is dispositive over actual ownership.  *Id.*

44.    The Debtors' executives diverted monies from the Debtors' bank accounts and on account of alleged business dealings of the Debtors.  (ASOF ##36-38)  Monies were used to pay legitimate debts of the Debtors, as well as make questionable transactions by executives;

at the end of 2016, the IOLA Account funds were used to pay Robinson Brog legal fees for

Debtor including the Go-Private Transaction.  (ASOF #42) The Debtors had not only the legal

and the equitable right to use the funds in the IOLA Account, but in fact used the account to pay

debts of the Debtors.

> ### iii.    In 2017, Proceeds From the Go-Private Transaction Were Funded in Part by the Debtors Borrowing $130,000,000 Which Were Deposited into IOLA Account

45.    Pursuant to the Credit Agreement, BOFA advanced $130 million upon

pledge of all the Debtors' assets to fund the Go-Private Transaction. (ASOF ##51, 52)  On

January 30, 2017, approximately $46 million that resulted from the Go-Private Transaction was

transferred into the Robinson Brog IOLA Account under a caption titled "Constellation

Health/CHT Closing."  (ASOF #18)  The funds at this time were property of the Debtor and

under the control of the Debtor through its executives, including Paul Parmar.  The Credit

Agreement with BOFA was executed by all of the Debtors and was secured by all of the

Debtors' assets. (ASOF #52) BOFA is the largest creditor in the bankruptcy case with an unpaid

secured claim in the amount of $158,200,710.89. (JSOF #19)

46.    The overwhelming evidence demonstrates the IOLA Account, where the

Transfer at issue was disbursed, was an account which held an interest of the Debtors' in

property.  Plaintiff can establish his prima facie case.

## B.    It Cannot Be Reasonably Disputed that the Transfer Was an Intentionally Fraudulent Transfer Under State and Federal Law

47.    In its First Claim for Relief, the Plaintiff properly seeks: to avoid the

intentionally fraudulent transfer of the Debtors' funds to Defendants totaling not less than

$250,000, pursuant to 11 U.S.C. §§ 544, 548 and 550 and NY Debt & Cred L §276, *et seq.*, or recover the value thereof, and preserve the Transfer for the benefit of the Debtors' estate pursuant to 11 U.S.C. § 551.   (*See* Affidavit of J. Nolan ¶2, Complaint, ¶¶21-27)  Section 548(a)(1)(B) of the Bankruptcy Code permits a trustee to avoid, inter alia, "any transfer . . . of an interest of the debtor in property . . . that was made within 2 years before the date of filing of the Petition.  § 548(a)(1)(B). Fraudulent conveyance claims under New York State law generally are subject to a six year statute of limitations. *Orr v. Kinderhill Corp.*, 991 F.2d 31, 35 (2d Cir. 1993) (citations omitted).  The Transfer occurred less than one (1) year from the Petition Date and is timely under federal and state law.

48.    Under federal law, fraudulent intent for the purposes of finding liability under 11 USC § 548(a)(1)(A) of a debtor, focuses on the intent of the <u>transferor</u>.  The only inquiry concerning actual intent that matters is that of the debtor:  whether the debtor causing the transfer or incurring the obligation intended to hinder, delay or defraud its creditor. See, e.g., *Rubin Bros. Footwear, Inc. v. Chemical Bank (In re Rubin Bros. Footwear Inc.)*, 119 B.R. 416, 423. (Bankr. S.D.N.Y. 1990) ("For the purposes of [§ 548(a)(1)(A)], plaintiff must show fraudulent intent on the part of the transferor, rather than on the part of the transferee."); *McColley v. Rosenberg (In re Candor  [\*445]  Diamond Corp.)*, 76 B.R. 342, 349 n. 4 (Bankr. S.D.N.Y. 1987) (referring to transferee's intent as irrelevant).  Section §548 is not a punitive provision designed to punish the transferee, but is instead an equitable provision that places the transferee in the same position as other similarly situated creditors who did not receive fraudulent conveyances.  *See Bayou Accredited Fund, LLC v. Redwood Growth Partners, L.P.*

*(In re Bayou Group, LLC)*, 396 B.R. 810, 826- 827 (Bankr. S.D.N.Y. 2008).  Pursuant to

§ 548(a)(1)(A), a transfer may be avoided as actually fraudulent if (1) the debtor had an interest

in the property transferred; (2) the transfer occurred within two years of the petition date; and

(3) the transfer was made with actual intent to hinder, delay or defraud a creditor. See 11 U.S.C.

§ 548(a)(1)(A) (2004).  *Bruno Mach. Corp. v. Troy Die Cutting Co. (In re Bruno Mach. Corp.),*

435 B.R. 819, 852-53(N.D. NY, 2010) with the first two elements established, Plaintiff can

establish the third element since the Transfer was made for no legitimate business purpose,

grounded in misrepresentations and fake documents for no consideration.

      49.    The genesis of the Transfer to Defendants was an elaborate fraud

orchestrated by Parmar.  In 2015 and 2016, the numerous fake acquisitions took place by the

Debtor acquiring shell companies which had no business, employees or assets and no new

revenue generated. (JSOF ##11-13; ASOF #43)  In November 2016, Defendant Petrozza met

with Parmar and other managers of the board to approve the corporate documents associated

with the Go-Private Transaction. (JSOF #14) The Go-Private Transaction involved the merger

and acquisition of shares of the Debtors and the sale of the controlling interest to CC Capital

(referred to as CHT Holdco, LLC).  To finance the merger, the Debtor took on massive debt by

obtaining financing from BOFA for $130 million (with a total commitment of up to

$150 million).  (ASOF #51)  In November and December 2016, Parmar, with the assistance of

Robinson Brog, created fake companies to receive the fabricated equity from the Synthetic

Transactions.  (JSOF #16; ASOF ##44-50)  One of the fictitious entities created on November

17, 2016, to receive monies was Lexington Landmark Services, LLC as owned by the Defendant

Petrozza.[4]  (JSOF #15)  Neither Lexington, Axis Medical Services, LLC, nor Pulsar Advanced

Care, LLC, were legitimate businesses.  (JSOF ##16, 17; ASOF 45, 49)  Other entities created at

the time to receive the fabricated equity were located at the same address in Hazlet, NJ, and were

assigned employer identification numbers by the IRS on the same day, December 5, 2016.

(ASOF #48)  Since the various entities did not possess bank accounts, Robinson Brog was

utilized to receive proceeds from the privatization transaction on their behalf.  (ASOF #46, 47).

On January 30, 2017, approximately $46 million that resulted from the Go-Private Transaction

was transferred into the Debtors' IOLA Account of which $250,000 was paid by Parmar to

Defendants.

        50.    The intent to defraud legitimate creditors of the Debtor is clear.

Fabrication of companies, falsification of operating documents, complete with falsified

signatures in an effort to deceive and defraud creditors of the estate, namely BOFA, is evidence

of an intent to defraud.  See *United States v. Maciejewski*, 70 F. Supp. 2d 129, 134 (Bankr.

N.D.N.Y, 1999) (False statements, misrepresentations and backdating memorandum is evidence

of intent to defraud as an effort to make a transaction appear legitimate). A "strong inference" of

fraud may be established by alleging facts showing either (1) a "motive and opportunity to

commit the fraud"; or (2) "strong circumstantial evidence of conscious misbehavior or

recklessness."  *Employees' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*, 794 F.3d 297, 306

(2d Cir. 2015) (securities law); *see also Adelphia Recovery Trust v. Bank of Am., N.A.*, 624 F.

---

[4] Another entity fabricated to receive the monies was Pulsar Adance [sic] Care, LLC created on November 17, 2016, and which identifies Salil Sharma as the 100% owner member. Salil Sharma was Mr. Parmar's brother-in-law. (ASOF #45)

Supp. 2d 292, 308 (S.D.N.Y. 2009) (applying "motive and opportunity" test to the pleading of a

§ 548 claim). Parmar and Zaharis, as its executives, controlled the Debtor creating fictitious

companies with no assets, operations, or bank accounts and falsifying records of ownership. On

the backend, Parmar made the Transfer to Defendant for his personal benefit, or at a minimum,

for no legitimate business purpose.  Monies flowed out of the estate to an insider of Parmar, his

girlfriend, and yet another corporation with no legitimate business purpose.  The Transfer was

concealed in this manner to move money away from existing intentionally creditors of the estate.

**C.      Pursuant To N.Y. DCL §276, The Transfer Was An Intentionally Fraudulent Transfer**

51.      N.Y. DCL § 276 provides that "[e]very conveyance made and every

obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder,

delay, or defraud either present or future creditors, is fraudulent as to both present and future

creditors." N.Y. DCL § 276;  *Mendelsohn v. Jacobowitz (In re Jacobs)*, 394 B.R. 646, 658

(Bankr. E.D.N.Y. 2008) (It is well accepted that intent to hinder or delay creditors is sufficient,

and intent to defraud need not be proven. Id. citing to *In re MarketXT. Holdings Corp*., 376 B.R.

390 (Bankr. S.D.N.Y. 2007) at 403 (citing *Shapiro v. Wilgus*, 287 U.S. 348, 354, 53 S. Ct. 142,

77 L. Ed. 355 (1932). Intent to evade creditors amounts to a fraudulent conveyance regardless of

insolvency.  *Korea Deposit Ins. Corp. v. Mina Jung*, 59 Misc. 3d 442, 449 (Sup Ct, New York

County, 2017); See *United States v. McCombs*, 30 F.3d 310, 327-28 (2d Cir. 1994).  As the

Second Circuit explained:

> "Due to the difficulty of proving actual intent to hinder, delay, or defraud
> creditors, the pleader is allowed to rely on 'badges of fraud' to support his case,
> i.e., circumstances so commonly associated with fraudulent transfers that their
> presence gives rise to an inference of intent."

Courts in New York look to the badges of fraud commonly associated with fraudulent transfers that raise an inference of fraudulent intent *Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582-83 (2d Cir. 1983). *See Tronox v. Anadarko Petroleum (In re Tronox Inc.)*, 429 B.R. 73, 95 (Bankr. S.D.N.Y. 2010) ("The existence of several badges of fraud can constitute clear and convincing evidence of actual intent." (quoting *In re Actrade Fin. Techs. Ltd.*, 337 B.R. 791 at 809)).

52.     Badges of fraud are not conclusive, but they help to focus the inquiry on the circumstances that suggest a conveyance was made with fraudulent intent, viz., with the purpose of placing a debtor's assets out of the reach of creditors.  See *Tronox Inc. v. Kerr McGee Corp.*, (*In re Tronox Inc.*), 503 B.R. 239, 282-283 (S.D.N.Y, 2013)  In the present case, the events from January 2017 to the date of the Transfer on May 25, 2017, are direct evidence of a fraud committed against creditors of the Debtors to enable Parmar to move monies to the IOLA Account where it was secreted to friends and companions.

### i.     The Lack Or Inadequacy Of Consideration

53.     Before determining whether the value was 'reasonably equivalent' to what the debtor gave up, the court must make an express factual determination as to whether the debtor received any value at all. *Mellon Bank v. Official Comm. of Unsecured Creditors (In re R.M.L., Inc.)*, 92 F.3d 139, 149 (3d Cir. 1996)   It is not disputed by Defendants that the $250,000 Transfer was made without consideration to the Debtor.  (JSOF #26, 28)  The Debtors' books and records evidence no antecedent debt satisfied concurrently by the Transfer. (ASOF ##57, 58, 60)   This factor is established.

### ii.     The Family, Friendship Or Close Associate Relationship Between The Parties

54.     Paul Parmar and Defendant Petrozza were close friends who socialized at Mr. Parmar's residence from 2013, exchanged credit cards, and paid one another's American

Express bills. (JSOF #4) The two gentlemen were on the board together for Constellation Health, LLC involved in the suspect transactions and in the Transfer.  (SSOF #22)  See *Machado v. A. Canterpass, LLC*, 115 A.D.3d 652, 654, 981 N.Y.S 2d 758 (2014) (indicia of fraud where principals of the transferor are also principals of the transferees).   They had made loans to one another in the past based on nothing other than a handshake.  (JSOF #27)  The facts establish their close relationship and involvement on both sides of the transactions.

### iii.   The Retention Of Possession, Benefit Or Use Of The Property In Question

55.    Defendant retained and utilized the funds as he saw fit.  Eventually, the funds were placed in an investment account of Defendant (JSOF #24) If the Defendant is to be believed, one month later he transferred the $250,000 at Parmar's direction to Sunshine Star, LLC.  There can be no reasonable dispute that Sunshine Star, LLC was established by Parmar for the express purpose to receive the $250,000. (ASOF #56) Shortly following the receipt of the funds, the account was closed at Mr. Parmar's direction in October 2017.  (ASOF #59)  Parmar and Petrozza had a history of sending one another monies which could not be explained.  (JSOF #23).  The bottom line, Defendant received and used the Transfer as he saw fit and the law does not demand moving party establish an accounting between friends.  The Motion establishes Defendant and Parmar's use of the funds.

### iv.   The Financial Condition Of The Party Sought To Be Charged Both Before And After The Transaction In Question

56.    Defendant was having liquidity issues at the time of the Transfer. (JSOF #30)   Further, Defendant knew Parmar was having financial issues in January 2017.  (JSOF #29) The motive was present to take monies from the Debtor, as Parmar had done in paying off his

personal debt to his neighbor Howard Schoor, and to secrete those funds for Parmar's debts or obligations.

     **v.**    **The Existence Or Cumulative Effect Of A Pattern Or Series Of Transactions Or Course Of Conduct After The Incurring Of Debt, Onset Of Financial Difficulties, Or Pendency Or Threat Of Suits By Creditors; And The General Chronology Of The Events And Transactions Under Inquiry.**

57.    District court judgments and state court lawsuits were pending against the Debtors in 2015 and 2016.  At the same time, the Debtor expended tens of millions of dollars on the Synthetic Transactions which did not increase the Debtors' revenue.  (ASOF #43)  The Go-Private Transaction in January 2017, resulted in a $158 million liability to the Debtors' books which remained outstanding at the time of the filing of the Petition.  The payment of $250,000 to Defendant could have paid legitimate debts of creditors, but instead went to Parmar's friend since both men admittedly did not have money available to pay their own personal obligations.  Defendants' "failure to proffer any legitimate explanation for the conveyance" allows the defendants' actual fraudulent intent to be readily inferable on the facts, and the plaintiff is entitled to a judgment setting those conveyances aside under N.Y. DCL § 276." *Machado v. A. Canterpass*, LLC, 115 A.D.3d 652, 654, 981 N.Y.S.2d 758 (2d Dept 2014).

**D.**    **The Transfer Violates NY Debt & Cred L § 273(a) As  A Constructively Fraudulent Transfer As Judgment Creditors Existed Before The Transfer And The Transfer Had The Effect Of Moving Monies Out Of The Estate For No Value**

58.    N.Y. Debt & Cred Law § 273-a provides: "Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment

for the plaintiff, the defendant fails to satisfy the judgment." N.Y. DCL § 273-a (McKinney 2002).  Thus, to prevail on a claim under § 273-a, a plaintiff must establish that: (1) the conveyance was made without fair consideration; (2) at the time of transfer, the transferor was a defendant in an action for money damages or a judgment in such action had been docketed against him; and (3) a final judgment has been rendered against the transferor that remains unsatisfied.  *Priestley v. Panmedix Inc.*, 18 F. Supp. 3d 486, 497 (S.D.N.Y. 2014); *Grace v. BankLeumi Trust Co. of N.Y.*, 443 F.3d 180, 188 (2d Cir. 2006).  The Court need not address a determination of solvency if the Court finds a lawsuit was pending, or, a judgment existed against the Debtors at the time of the Transfer and the judgment was left unsatisfied.  Under such circumstances the transfer per se violates §273-a, is fraudulent and the solvency or insolvency of the Debtor is irrelevant.  *Lyman Commerce Solutions, Inc. v. Lung*, 2015 U.S. Dist. LEXIS 51447,   2015 WL 1808693, at *5 (S.D.N.Y. Apr. 20, 2015). *Lyman Commerce Solutions, Inc. v. Lung*, 2015 U.S. Dist. LEXIS 51447, 17 (S.D.N.Y, 2015) citing to N.Y. DCL § 273-a (McKinney 2002).  As noted by the court in *Lyman,* "Sections 273 and 273-a thus provide alternate theories of fraud: § 273 "applies to transfers that render a debtor insolvent, and the existence of an action or judgment is irrelevant," while § 273-a "applies where there is an action pending or a judgment already docketed, but there is no requirement that the transfer rendered the debtor insolvent."  *Cadle Co. v. Newhouse*, No. 01 CIV. 1777 (DC), 2002 U.S. Dist. LEXIS 15173, 2002 WL 1888716, at *5-6 (S.D.N.Y. Aug. 16, 2002), aff'd, 74 F. App'x 152 (2d Cir. 2003) (emphasis added). In effect, § 273-a "substitutes the requirement of an unpaid judgment (or a pending action) for the requirement of insolvency."  *Mitchell v. Lyons Prof'l Servs., Inc.*,

No. 09 CIV. 1587 BMC, 2013 U.S. Dist. LEXIS 124937, 2013 WL 4710431, at *3 (E.D.N.Y.

Sept. 1, 2013) vacated and remanded on other grounds, *Mitchell v. Garrison Protective Servs.,*

*Inc.*, 579 F. App'x 18 (2d Cir. 2014); see also *Dixie Yarns, Inc. v. Forman*, 906 F. Supp. 929, 938

(S.D.N.Y. 1995) ("a claimant under § 273-a need not demonstrate the insolvency of the

judgment debtor.[5]  It is sufficient to support the claim that the judgment has not been satisfied;

and if, as here, it has not, the question of insolvency is irrelevant to the considerations at hand.")

59.     Here, there is no dispute that the second and third elements for liability

under § 273-a are met.  The Transfer in question occurred on May 25, 2017.  (ASOF #55)  The

Southern District Court of Texas issued a judgment in the amount of $194,185, against the

Debtor Orion Healthcorp, Inc. on December 16, 2015.  (JSOF #31)  On March 9, 2016, a lawsuit

was initiated in the Supreme Court of the State of New York, against the Debtors Physician

Practice Plus, LLC and Constellation Healthcare Technologies, Inc, and judgment issued on

November 30, 2017.  (JSOF ##32-33)  The Debtors failed to satisfy the judgments as of the

Petition date.  (JSOF ##31, 34) The Transfer violates N.Y. DCL § 273-a.

E.     **The Transfer Lacked Both Consideration And Good Faith**

60.     N.Y. Debt. & Cred. Law § 272 defines "fair consideration" for purposes of

§ 273-a, and provides that:

Fair consideration is given for property, or obligation,

---

[5] Under N.Y. Debt. & Cred. Law § 273, there is a long-recognized presumption of insolvency where the debtor makes a conveyance without fair consideration. See *Kramer v. Mahia (In re Khan)*, 2014 Bankr. LEXIS 4205, citing to *Geron v. Schulman (In re Manshul Constr. Corp.)*, 2000 U.S. Dist. LEXIS 12576, 2000 WL 1228866, at *53 (S.D.N.Y. Aug. 20, 2000); *Kramer v. Mahia (In re Khan)*, 2014 Bankr. LEXIS 4205, 41 (Bkrtcy. E.D.N,Y, 2016) (trustee has met his burden on summary judgment and there is no genuine issue of fact where Debtor transferred property for less than fair consideration or reasonably equivalent value, not on account of antecedent debt, and for intra-family transfer)

a.    When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

b.    When such property, or obligation, is *received in good faith* to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

*Lyman Commerce Solutions, Inc. v. Lung*, 2015 U.S. Dist. LEXIS 51447, 21(S.D.N.Y, 2015)[6]

61.    Even if there is fair consideration, a transfer is still constructively fraudulent in the absence of good faith on the part "of both the transferor and the transferee." at 303 (emphasis added), quoting *Berner Trucking, Inc. v. Brown*, 281 AD2d 924, 925, 722 N.Y.S.2d 656 (1st Dept 2001); see *Sardis v. Frankel*, 113 A.D.3d 135, 142, 978 N.Y.S.2d 135 (1st Dept 2014) ("Fair consideration' ... is not only a matter of whether the amount  given for the transferred property was a 'fair equivalent' or 'not disproportionately small,' but whether the transaction is made 'in good faith,' an obligation that is imposed on both the transferor and the transferee."). Importantly, as pertinent here, "[a]n insider payment is not in good faith, regardless of whether or not it was paid on account of an antecedent debt."  *Am. Media, Inc. v. Bainbridge & Knight Labs., LLC*, 135 A.D.3d 477, 478, 22 N.Y.S.3d 437 (1st Dept 2016), citing *EAC of N.Y, Inc. v. Capri 400, Inc.*, 49 A.D.3d 1006, 1007, 853 N.Y.S.2d 419 (3d Dept 2008) Defendants fail both tests for Fair Consideration under N.Y. Debt. & Cred. Law § 272.

62.    First, no genuine dispute of fact exists that (1) the Debtor received nothing, zero, in exchange for the Transfer of $250,000 on May 25, 2017.   Defendant testified "he needed the money" and did not provide any product or service to the Debtor.  (JSOF ##26, 29)  There was no promissory note or paperwork to memorialize the Transfer and the

---

[6] Section 548(c) requires both value and good faith and in the absence of either, the defense fails. *Berman v. Pavano (In re Michael S. Goldberg, LLC)*, 2020 Bankr. LEXIS 2314, 22 (Bankr. Conn. 2020).

subsequent passage of funds to Sunshine Star did not benefit the Debtors.  (JSOF #28)   Second,

no antecedent debt was satisfied by the transfer of $250,000 to Defendants.  (ASOF ##57, 58,

60)  The Debtors' books and records corroborate no corporate debt owed or satisfied to

Defendant Petrozza or Abruzzi Investments, LLC as a result of the Transfer. (ASOF #60)

63.    Lastly, New York courts have recognized that where the transferee is an

officer, director, or major shareholder of the transferor, good faith is lacking as a matter of law.

*Id.*; see *also Sharp Int'l Corp. v. State St. Bank & Trust Co.*, 403 F.3d 43, 54 (2d Cir. 2005);

*Farm Stores, Inc. v. Sch. Feeding Corp.,* 102 A.D.2d 249, 477 N.Y.S.2d 374 (2d Dep't 1984).

When preferences are given to a debtor corporation's shareholders, officers, or directors, such

transfers are generally deemed not to be for fair consideration and per se violations of the good

faith requirement. *Id.* (citing *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 634 (2d Cir. 1995)).

Defendant Petrozza asserts he is a shareholder and/or controlling member of the Debtors.  (JSOF

##7, 35).  The Transfer was a per se violation of the good faith requirement enumerated under

the *Farm Stores, Inc.,* decision.

Numerous undisputed facts demonstrate Defendants gave no value to the Debtors and

were without good faith in accepting the monies. The Transfer was constructively fraudulent to

legitimate creditors of the Debtors' estate.

## CONCLUSION

**WHEREFORE**, the Liquidating Trustee requests that this Court enter an order substantially in the form as attached to the Affidavit of Jeffrey Nolan, as **Exhibit 6**:

(1)    Avoiding the Transfer as an intentionally fraudulent transfer pursuant to the Bankruptcy Code 11 USC § 548 and NY Debt & Cred. Law § 276;

(2)    Avoiding the Transfer as a constructively fraudulent transfer pursuant to the Bankruptcy Code 11 USC § 548 and NY Debt & Cred. Law § 273; and

(3)    Awarding costs and/or fees by motion and according to proof.

Dated:  February 22, 2022                    Respectfully submitted,

PACHULSKI STANG ZIEHL & JONES LLP

   _/s/ Jeffrey P. Nolan_____
Ilan D. Scharf, Esq.
Jeffrey P. Nolan, Esq. *(admitted pro hac vice)*
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, New York 10017
Telephone:     (212) 561-7700
Facsimile:     (212) 561-7777

Counsel For Plaintiff,
Howard M. Ehrenberg in his capacity as
Liquidating Trustee of Orion Healthcorp, Inc., *et al*.