# EXHIBIT E

OPERATING AGREEMENT

OF

**LEXINGTON LANDMARK SERVICES LLC**

This Operating Agreement (this "**Agreement**") of Lexington Landmark Services LLC (the "**Company**"), a Delaware limited liability company is entered into as of the 17th day of November, 2016 by and among the Company and the sole Member whose name is set forth on <u>Exhibit A</u> attached to this Agreement and incorporated by reference in this Agreement.

**WHEREAS,** the Company was organized as a limited liability company pursuant to the Delaware Limited Liability Company Act (the "**LLC Law**"), as amended from time to time, under the name Lexington Landmark Services LLC, and, for that purpose, a Certificate of Formation was filed with the Delaware Secretary of State on November 17, 2016; and

**WHEREAS,** the Company and the sole Member desire to operate the Company in accordance with the terms and subject to the conditions set forth in this Agreement.

**NOW, THEREFORE,** it is agreed as follows:

**Article I        Formation and Name: Office; Purpose; Term**

    **a)    Organization.**  The Company was organized as a limited liability company pursuant to the LLC Law, and a Certificate of Formation was filed with the Delaware Secretary of State on November 17, 2016.

    **b)    Name of the Company.**  The name of the Company is Lexington Landmark Services LLC. The Company may do business under that name and under any other name or names upon which the Member decides.

    **c)    Purpose.**  The Company is organized for any lawful purpose and to do any and all things necessary, convenient, or incidental to that purpose.

    **d)    Term.**  The term of the Company began upon the filing of the Certificate of Formation with the Delaware Secretary of State and shall have a perpetual existence, unless its existence is sooner terminated pursuant to Article VII of this Agreement.

    **e)    Member.**  The name, present mailing address and membership interest of the sole Member is set forth on <u>Exhibit A</u>.

1

**Exhibit**
PET 0008

EHREN-ABRUZZI 000004

**Article II      Member; Capital; Capital Account and Interests**

    1)    **Initial Capital Contribution.** The Member contributed to the Company cash or other assets in the amount set forth in <u>Exhibit B</u> for its interest in the Company (the "**Interest**"). The Interests shall be uncertificated and recorded in the books and records of the Company.

    a)    **No Additional Capital Contributions Required.** The Member shall not be required to contribute any additional capital to the Company. The Member shall not have any personal liability for any debt, obligation or liability of the Company.

    b)    **No Interest on Capital Contributions.** The Member shall not be paid interest on its capital contribution.

    c)    **Return of Capital Contributions.** Except as otherwise provided in this Agreement, the Member shall not have the right to receive any return of its capital contribution.

    d)    **Form of Return of Capital.** If the Member is entitled to receive a return of its capital contribution, the Company may distribute cash, notes, property, or a combination thereof to the Member in return of the capital contribution.

    e)    **Loans.** The Member may, at any time, make or cause a loan to be made to the Company in any amount and on those terms as determined by the Member.

**Article III      Profit, Loss, and Distributions**

    Cash flow for the Company may be distributed to the Member at such times and in such amounts as determined by the Manager. For each Fiscal Year, Net Profits and Net Losses shall be allocated as follows: Net Profits shall be allocated in proportion to a Member's respective interest in the Company. Net Losses shall be allocated in proportion to a Member's interests in the Company. "Net Profits" and "Net Losses" shall mean the net taxable income or net taxable loss of the Company, respectively, as determined for federal income tax purposes, for each fiscal year of the Company, plus any income that is exempt from federal income tax and minus expenditures that are not deductible in computing federal taxable income and not properly chargeable to capital accounts, in each case to the extent such items are not otherwise taken into account in computing Net Profits or Net Losses.

**Article IV      Management: Rights, Powers, and Duties**

    a)    **Management.**

        i)    The Company shall be managed by the Member (the "**Manager**"). Until a different Manager is designated by the Member, the Manager shall be Sotirios Zaharis. The Manager shall have the full and exclusive right and power to act for and bind the Company.

        ii)    The Manager may cause the Company to employ and retain such other persons as may be necessary or appropriate for the conduct of the Company's business, on such terms as the Manager shall determine, including persons who may be designated as officers. The

EHREN-ABRUZZI 000005

officers of the Company shall have the titles, powers, and duties delegated to them by the Manager. Any number of titles may be held by the same officer.

   iii)  The Manager shall have the power and authority to delegate his right and power to manage and control the business and affairs of the Company to one or more other persons (including one or more committees, managers and agents, employees and/or affiliates of a manager), including delegation by management agreement or other arrangement.

  b)  **Liability and Indemnification.**

   i)  Except as otherwise provided by law, the Manager, or any delegate of the Manager, shall not be liable, responsible or accountable in any way for damages or otherwise to the Company for any act or failure to act pursuant to this Agreement or otherwise unless there is a judicial determination that (i) such person acted in bad faith, (ii) the conduct of such person constituted intentional misconduct or a knowing violation of law, (iii) such person gained a financial benefit to which he was not legally entitled or (iv) such person failed to perform his duties, in good faith and with that degree of care that an ordinarily prudent person in a like position would use under similar circumstances.

   ii)  The Company shall indemnify, defend and hold harmless the Manager, or any delegate of the Manager, from and against any claims, losses, liabilities, damages, fines, penalties, costs and expenses (including, without limitation, reasonable fees and disbursements of counsel and other professionals) arising out of or in connection with any act or failure to act by such person pursuant to this Agreement, or the business and affairs of the Company, to the fullest extent permitted by law; provided, however, that the Manager, or any delegate of the Manager, shall not be entitled to indemnification hereunder if there is a judicial determination that (a) such person's actions or omissions to act were made in bad faith or were the result of active and deliberate dishonesty and were material to the cause of action so adjudicated, or (b) such person personally gained a financial benefit to which he or she was not legally entitled.

**Article V  Transfers of Interest**

  The Member may transfer, in whole or in part, its interest in the Company.

**Article VI  Admission of Additional Members**

  The Member may admit one or more additional members to the Company.

**Article VII  Dissolution, Liquidation, and Termination of the Company**

  The Company shall be dissolved upon the happening of any of the following events:

   i)  upon the consent of the Member;

3

EHREN-ABRUZZI 000006

      ii)     upon the death, retirement, resignation or bankruptcy of the Member or the occurrence of any other event which terminates the continued membership of the Member in the Company; or

      iii)     upon the entry of a decree of judicial dissolution under Section 18-802 of the LLC Law.

## Article VIII   General Provisions

    a)    **Applicable Law.** All questions concerning the construction, validity, and interpretation of this Agreement and the performance of obligations imposed by this Agreement shall be governed by the internal law, not the law of conflicts, of the State of Delaware.

    b)    **Article and Section Titles.** The headings herein are inserted as a matter of convenience only and do not define, limit, or describe the scope of this Agreement or the intent of the provisions hereof.

    c)    **Separability of Provisions.** Each provision of this Agreement shall be considered separable; and if, for any reason, any provision or provisions herein are determined to be invalid and contrary to any existing or future law, such invalidity shall not impair the operation of or affect those portions of this Agreement which are valid.

    d)    **Amendments.** Amendments to this Agreement may be adopted by the affirmative vote of those Members holding 100% of the membership interest in the Company.

    IN WITNESS WHEREOF, the Member has executed, or caused this Agreement to be executed, as of the date set forth hereinabove.

MEMBER:

By: _____
    John Petrozza

Manager

By: _____
    Sotirios Zaharis

4

EHREN-ABRUZZI 000007

EXHIBIT A

<u>MEMBER</u>

| <u>NAME</u> | <u>INTEREST</u> |
|---|---|
| John Petrozza | 100% |

5

EXHIBIT B

INITIAL CAPITAL CONTRIBUTION

Ten ($10.00) Dollars.

EHREN-ABRUZZI 000009