Wealth Management Banking

§ Merrill Lynch | Bank of America

P.O. Box 15284
Wilmington, DE 19850

**Client service information**

📞 1.800.MERRILL (1.800.637.7455)

TDD/TTY users only: 1.800.288.4408

En Español: 1.800.688.6086

💻 bankofamerica.com

✉ Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

ABRUZZI INVESTMENTS LLC



 - Advantage Relationship

for May 22, 2014 to June 20, 2014          Account number:

ABRUZZI INVESTMENTS LLC

## Account summary

| | |
|---|---|
| Beginning balance on May 22, 2014 | |
| Deposits and other additions | |
| Withdrawals and other subtractions | |
| Checks | |
| Service fees | |
| Ending balance on June 20, 2014 | |

Important disclosure information listed on the "Important Information for Bank Deposit Accounts" page

PULL: B   CYCLE: 14   SPEC: E   DELIVERY: E   TYPE:   IMAGE: I   BO: NJ          

EHREN-ABRUZZI 000116



Exhibit PET 0013

ABRUZZI INVESTMENTS LLC  |  Account   |  May 22, 2014 to June 20, 2014

# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

Change of address - Please call us at the telephone number listed on the front of this statement to tell us about a change of address.

Deposit agreement - When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our banking centers.

Electronic transfers: In case of errors or questions about your electronic transfers - If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number.
- Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts client) (20 business days if you are a new client, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

Reporting other problems - You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you for, and you agree to not make a claim against us for the problems or unauthorized transactions.

Direct deposits - If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us at the telephone number listed on the front of this statement to find out if the deposit was made as scheduled. You may also review your activity online or visit a banking center for information.

Merrill Lynch makes available products and services offered by Merrill Lynch, Pierce, Fenner & Smith Incorporated, a registered broker-dealer and member SIPC, and other subsidiaries of Bank of America Corporation.

Banking products are provided by Bank of America, N.A., and affiliated banks, Members FDIC and wholly owned subsidiaries of Bank of America Corporation.

© 2013 Bank of America Corporation



Bank of America, N.A. Member FDIC and  Equal Housing Lender

EHREN-ABRUZZI 000117

**Merrill Lynch | Bank of America**

ABRUZZI INVESTMENTS LLC |  | May 22, 2014 to June 20, 2014

# Your checking account

## Withdrawals and other subtractions

| Date | Description | Amount |
|---|---|---|
| 06/20/14 | MTB    DES:CH-PUH CAPITAL CALL    ID:0688202899 | -9,000,000.00 |

**Total withdrawals and other subtractions**

✍ To help you BALANCE YOUR CHECKING ACCOUNT, visit bankofamerica.com/statementbalance or the Statements and Documents tab in Online Banking for a printable version of the How to Balance Your Account Worksheet.



ABRUZZI INVESTMENTS LLC   |   Account # 0038 1780 7574   |   May 22, 2014 to June 20, 2014





EHREN-ABRUZZI 000119

Page 138

1  Q  -- from Paul Parmar. And it says, "John,
2  Tomer."
3  A  Yes. I'm looking at it.
4  Q  And it's confirming a $4 million
5  investment.
6  A  Yes.
7  Q  That pretty much matches your
8  recollection of how much you invested; is that
9  correct?
10  A  That's correct.
11  Q  And Mr. Parmar states you're investing
12  into CHI, Constellation Health Investment. Do you
13  see that?
14  A  Correct.
15  Q  And it states further, "which would own
16  mine and your interest in the acquisition of
17  Orion."
18     Do you know what that means? Was your --
19  A  Yes.
20  Q  Was that a joint investment that you made
21  for Mr. Parmar as well?

Page 139

1  A  Yes. There's two people in Constellation
2  Health Investment, my Abruzzi and Paul's company.
3  My $4 million investment got me 60 percent of
4  Constellation Health Investments. He got 40
5  percent. Paul is the manager. And that was used
6  to build Orion/Constellation Healthcare.
7  Q  Did -- did Paul have a separate
8  investment vehicle in Constellation Health
9  Investment, like, such as First United Health?
10  A  That's correct. That was his vehicle,
11  yes.
12  Q  Okay. So Paul's vehicle was First United
13  Health?
14  A  Yes.
15  Q  At this time in June 2013, you're friends
16  with Mr. Parmar?
17  A  Yes.
18  Q  Okay. Did Mr. Vardi have any interest in
19  the investment?
20  A  Just like I said, I had a gentlemen's
21  agreement with Tomer that he would help and manage

Page 140

1  with me along this process.
2     MR. NOLAN: Okay. All right. La Asia,
3  would you go to the next exhibit. We're going to
4  mark the next exhibit as Exhibit 13. It's a Bank
5  of America statement from 2014. It's May --
6  May 22nd, 2014, to June 20th, 2014.
7     (Deposition Exhibit Number 13 was marked
8  for identification.)
9  BY MR. NOLAN:
10  Q  And while you're looking at that,
11  Mr. Petrozza, I'm just going to identify it --
12  A  Okay.
13  Q  -- for the record. Exhibit 13 is a Bank
14  of America -- pretends to be a Bank of America
15  statement which is Bates stamped in the lower
16  right corner Ehren-Abruzzi 116, and it goes to
17  119. So why don't you take a look at that. My
18  first question, whenever you are comfortable with
19  Exhibit 13, is, did Abruzzi Investments, LLC, have
20  a bank account at Bank of America in 2014?
21  A  Yeah. I'm pretty sure, yes.

Page 141

1  Q  And if you go to the second to last page,
2  it appears to show a $9 million withdrawal from
3  Abruzzi Investments that's marked as CH-FUH
4  capital call. Do you see that?
5  A  Yeah. What date is this?
6  Q  This is -- it says June 20th, 2014.
7  A  Yeah.
8  Q  Do you know what that was --
9  A  Now, why is it redacted?
10  Q  This is the document -- actually, if you
11  look at the lower corner, this document was
12  produced by our office, and the document we have
13  is redacted.
14  A  Yeah. So how come the address for
15  Abruzzi Investments is redacted?
16  Q  This was -- I can represent to you this
17  is the document we found in this form.
18  A  Okay. Well, I didn't have $9 million in
19  the bank in 2014. I did have Abruzzi Investments,
20  but, oddly enough -- because I just learned that I
21  have a company on Route 35 in Jersey that got

36 (Pages 138 - 141)

Page 142

1 money and the IRS thinks I got money.
2  So how do I know this is not Abruzzi
3 Investments to another bullshit address, that
4 somebody created a bank account using my company's
5 name? I need to see what's behind the ink.
6  Q Right. So let's just be clear on the
7 record, then. So you don't have any recollection,
8 as you sit here today, of Abruzzi Investments,
9 LLC, making any $9 million transfer to CH-FUH
10 capital call?
11  A No, Jeff, I do not.
12  Q Okay. I'm assuming FUH stands for First
13 United Health.
14  A Yes. That's right.
15  Q Did Mr. Parmar ever ask you to modify or
16 redact a document so that it was inaccurate so he
17 could use it to show anyone?
18  A No. Why -- why would he? He has no
19 trouble doing it himself or whoever is doing the
20 redacting. Whoever is doing any of this shit.
21  MR. NOLAN: Okay. Let's go to

Page 143

1 Exhibit 14. Exhibit 14, La Asia, is going to be
2 e-mails in February 14th, 2017 --
3  THE WITNESS: Hold on, Jeff. Hold on,
4 Jeff. You're telling me you do not have in your
5 big collection of documents, you don't have a
6 non-redacted version of that document?
7 BY MR. NOLAN:
8  Q That's correct. I located that -- I can
9 represent to you I located that document. And I
10 think there might be an e-mail that goes with it.
11 I just vaguely remember an e-mail, but I'll
12 certainly look for it to try to give you some
13 context of why it was redacted.
14  A Jeff, if you can, I need to see what's
15 underneath that ink. I need to see it. It's only
16 right. It's my company name, right?
17  Q Right. I -- all I can tell you,
18 Mr. Petrozza, is I think I can give you a context
19 of why and who redacted it. I just don't have the
20 redaction. So I don't want to be wrong. I
21 believe there's an e-mail that shows this document

Page 144

1 was redacted by Parmar and company. Maybe it's
2 Zaharis. Maybe one of these other guys. But I do
3 not believe I have an un-redacted copy of this or
4 I would have used it for the deposition.
5  A Well, how come the trustee or the lawyers
6 or the FBI didn't force Parmar to produce a
7 non-redacted version?
8  Q I did subpoena records -- the trustee did
9 subpoena records from Bank of America. I can go
10 back and try to cross-reference it to see if we
11 have a copy, but --
12  A I would be tremendously grateful.
13  Q I will work with your lawyer to be as
14 transparent as I can.
15  A Okay. Thank you.
16  MS. CANTY: Sorry, Jeff. Can you repeat
17 the exhibit?
18  MR. NOLAN: Yeah. Exhibit 14 is going to
19 be the February 14th, 2017, collection of
20 documents. It's an e-mail from Sam Zaharis to
21 Paul Parmar.

Page 145

1  THE WITNESS: What exhibit number?
2  MR. NOLAN: This next one is going to be
3 Exhibit 14.
4  (Deposition Exhibit Number 14 was marked
5 for identification.)
6 BY MR. NOLAN:
7  Q Okay, Mr. Petrozza. This document is not
8 short, but it is an e-mail that contains the
9 documents that are referenced in the e-mail, and
10 it is Bates stamped, the lower right corner,
11 Ehren-Abruzzi 251 and it goes to 269. So it's
12 approximately 18 pages. You can just kind of get
13 a flavor for it if you look at it, and then I'll
14 ask you a question.
15  A Okay. Now, this is because -- this is
16 their attempt to produce documents because they
17 were subpoenaed?
18  Q No. This is a document that I produced
19 to your lawyer.
20  A Okay. You have to walk me through it
21 because I -- I don't know.

37 (Pages 142 - 145)