Anthony F. Giuliano, Esq.
GIULIANO LAW, P.C.
Attorneys for Movants
445 Broadhollow Road, Ste. 25
Melville, New York 11747
afg@glpcny.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re:                                                                         Chapter 11

                                                                               Case No. 18-71748-67 (AST)
Orion HealthCorp, Inc., et al.,                                                Case No. 18-71789 (AST)
                                                                               Case No. 18-74545 (AST)

                                Debtors.                                       (Jointly Administered)

------------------------------------------------------------x

Howard M. Ehrenberg in his capacity as Liquidating :
Trustee of Orion Healthcorp, Inc., et al.,
CHT : Holdco, LLC, and CC Capital CHT Holdco LLC,

                                Plaintiffs,                                    Adv. Pro. No. 20-08053

                        v.

Parmjit Singh Parmar a/k/a Paul Parmar, et al.,

                                Defendants.

------------------------------------------------------------x

### DECLARATION IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT, DEFAULT JUDGMENT AND MOTION TO STRIKE

I, John Petrozza, declare, under penalty of perjury, pursuant to 28 U.S.C. § 1746 as follows:

1

1. I am the manager of Abruzzi Investments LLC and also one of the defendants in this action and as such am fully familiar with the facts and circumstances as set forth herein. I make this Declaration (the "Declaration") in opposition to Plaintiff's motion for summary judgment and in support of Defendant's cross-motion for summary judgment, default judgment and motion to strike.

2. Sometime in 2013, I was approached by Parmar to invest in an entity know as Constellation Health Investment, LLC ("CHI"). Parmar explained to me that CHI would in turn fund the acquisition, by Constellation Healthcare Technology, Inc. ("CHT"), of Orion HealthCorp, Inc. ("Orion").

3. Based on Parmar's representation that I would be a substantial owner of CHI, I agreed to invest over $4 million in CHI and, on or about June 13, 2013 I wired $4 million to a Robinson Brog escrow account as directed by Parmar and his counsel. Annexed hereto as Exhibit "A" is proof of the wire transfer.

4. In addition, I paid $300,000 to Orion directly to allegedly cover IPO related expenses. Annexed hereto as Exhibit "B" is a correspondence from Robinson Brog to myself regarding the payment to Orion and providing wiring instructions.

5. Based upon documentation produced by the Plaintiff, my $4 million investment in CHI was in fact transferred to the Robinson Brog IOLA account for Constellation Health, LLC. *See* Exhibit "E" to the Giuliano Declaration.

6. It is my understanding that my $4 million was then transferred along with other money to fund the purchase of Orion by CHT. *See* Exhibit "E" to the

Giuliano Declaration.

7. Several years later, in 2017 I wanted to lease property in Florida. Because I had invested so much money with Parmar already and was at a point where most of my money was locked in investments, I asked Parmar if he could help me giving me a short-term loan to assist me in obtaining the Florida lease. I explained to Parmar that I would only need it for a brief period and would repay the loan right away. He agreed and my assistant Lisa Basich ("Basich") sent wiring instruction to Parmar. Thereafter, the Funds were transferred to Abruzzi's bank account. The whole transaction is contained in text messages between myself and Paul Parmar which were saved to my phone. Annexed hereto as Exhibit "C" is a true and correct copy of the relevant text messages.

8. Unfortunately, the lease of the Florida property fell through but I was able to lease another property instead.

9. When the funds were no longer needed, I advised Basich to return the Funds Parmar had previously loaned to me.

10. Basich then emailed Parmar to request the wiring instructions to return the Funds which Parmar provided. *See* Exhibit "A" to the Basich Declaration

11. Basich then contacted my bank and asked that the Funds be immediately wired pursuant to Parmar's instructions. *See* Exhibit "B" to the Basich Declaration.

12. On June 29, 2017, the Funds were wired out of the Abruzzi bank account pursuant to Parmar's instruction. A true and correct copy of the Abruzzi

bank statement showing the transfer of the money is annexed hereto as Exhibit "C".

13. Flash forward three years later, and both I and Abruzzi are being sued for a "fraudulent conveyance" by the Plaintiff in this case. The problem with the Plaintiff's case is that I repaid all of the money exactly the way Parmar told me too. If Parmar told me I had to burn the money in the street to pay him back I would have done that too. It is preposterous to find me liable for a fraudulent conveyance when I merely transferred the Funds I was given by Parmar in the manner Parmar told me to do. If I didn't repay him like he said, then I am sure Parmar would have sued me for the Funds.

14. I had no idea that Parmar was doing anything but directing his own money as he saw fit as the CEO of the Debtors. I didn't know, and still do not know, whether Parmar or the Debtors were insolvent or whether there were judgments against them at the time of the Transfer.

15. Again, I did not keep the Funds but returned the Funds to Parmar just as I promised. It would be fundamentally unjust for me to have to pay the Plaintiff any money under these circumstances.

16. In addition to finding about during the course of these proceedings that the Plaintiff alleges that the Funds went to an entity set up by Parmar for the benefit of his girlfriend, but I also learned the several documents I was shown by the Plaintiff during my deposition contained forgeries of my signature as well as altered bank statements. A true and correct copy of the relevant portion of my deposition and the forged and altered documents are annexed hereto as Exhibit "D"

and "E" respectively.

17. I never intended to defraud anybody by borrowing the money from Parmar and I was good to word when I told him I would pay him back. The fact that Parmar went on to do something with the money that maybe he should not have done is not my fault. I certainly did not benefit at all in this situation and have been harmed by having to defend this lawsuit. Meanwhile, the true beneficiary of the transfer which according to the Plaintiff is Sunshine and Sartison get off scot free. How come the Plaintiff didn't sue the true beneficiary? What is the real motive for suing me and not Sartison?

18. In the end I believe this lawsuit is completely improper. I believe in the interests of fairness and justice this case should be dismissed with Prejudice. I also believe that I should be awarded legal fees for having to defend this action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 14th day of March 2022.

_____
John Petrozza