UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------

|  |  |
|---|---|
| In re: | **:** Chapter 11 |
|  | **:** |
| ORION HEALTHCORP, INC.[1] | **:** Case No. 18-71748 (AST) |
|  | **:** |
| Debtors. | **:** (Jointly Administered) |

----------------------------------------

|  |  |
|---|---|
| HOWARD M. EHRENBERG IN HIS CAPACITY | **:** Adv. Pro. No. 20-08052 (AST) |
| AS LIQUIDATING TRUSTEE OF ORION | **:** |
| HEALTHCORP, INC., ET AL., | **:** [Reply Affidavit of Jeffrey Nolan; |
|  | **:** Filed Concurrently Herewith] |
| Plaintiff, | **:** |
|  | **:** |
| v. | **:** |
|  | **:** |
| ABRUZZI INVESTMENTS, LLC; JOHN | **:** |
| PETROZZA, | **:** |
|  | **:** |
| Defendants. | **:** |
|  | **:** |

----------------------------------------

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, SUMMARY ADJUDICATION AS AGAINST
<u>DEFENDANTS ABRUZZI INVESTMENTS, LLC AND JOHN PETROZZA</u>**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Orion Healthcorp, Inc. (7246); Constellation Healthcare Technologies, Inc. (0135); NEMS Acquisition, LLC (7378); Northeast Medical Solutions, LLC (2703); NEMS West Virginia, LLC (unknown); Physicians Practice Plus Holdings, LLC (6100); Physicians Practice Plus, LLC (4122); Medical Billing Services, Inc. (2971); Rand Medical Billing, Inc. (7887); RMI Physician Services Corporation (7239); Western Skies Practice Management, Inc. (1904); Integrated Physician Solutions, Inc. (0543); NYNM Acquisition, LLC (unknown) Northstar FHA, LLC (unknown); Northstar First Health, LLC (unknown); Vachette Business Services, Ltd. (4672); Phoenix Health, LLC (0856); MDRX Medical Billing, LLC (5410); VEGA Medical Professionals, LLC (1055); Allegiance Consulting Associates, LLC (7291); Allegiance Billing & Consulting, LLC (7141); New York Network Management, LLC (7168). The corporate headquarters and the mailing address for the Debtors listed above is 1715 Route 35 North, Suite 303, Middletown, NJ 07748.

# TABLE OF CONTENTS

**Page**

I.    SUMMARY OF ARGUMENT ON REPLY ........................................................................ 1

    A.    The Motion Propery Identified A Predicate Creditor With A Claim In
        Excess of $100,000,000 as Against All Debtors In Existence Prior
        To The Transfer ............................................................................................................ 3

    B.    Defendants Make No Effort To Rebut The Undisputed Facts And Case
        Law Establishing The Funds In The IOLA Account Were The Debtor's
        Property, Or An Account Which The Debtor Maintained A Legal
        Or Equitable Interest ................................................................................................... 4

        i.    At All Pertinent Times, The Monies in the IOLA Account Were
            Reflected in Communications, Financial Records and Audited
            Returns As An Asset and Debt of the Estate. ................................................ 5

        ii.   Debtors' Monies were Directly Deposited into IOLA Account
            To Pay Legitimate and Illegitimate Purposes. ................................................ 5

        iii.  The 2017, Proceeds From the Go-Private Transaction Were Funded
            in Part by the Debtors Borrowing $130,000,000 Which Were
            Deposited into IOLA Account. ....................................................................... 6

    C.    The Opposition Desperately Attempts to Throw Out All Evidence
        Attached to the Affidavits of Sartison, Wong and Lazzara Without
        Identifying To The Court The Document and the Indicia of Unreliability ................ 7

        i.    Sartison Affidavit (Dkt. No. 41): .................................................................. 7

        ii.   Wong Affidavit (Dkt. No. 40): ...................................................................... 7

        iii.  Frank Lazzara Affidavit (Dkt. No. 42): ....................................................... 10

    D.    The Opposition Admits The Defendants Were the "Initial Transferee" ................... 12

    E.    The Claim That Defendants Were Intended to Be A "Mere Conduit"
        For the Second Payment To Sunshine Star, LLC Is A Poor Explanation,
        Not A Defense ........................................................................................................... 13

    F.    The Law Places The Burden On The Initial Transferee Who Has The Best
        Opportunity To Uncover The Irregularity In the Conveyance ................................ 16

G.    Even Under a Scenario As Defendants Claim Where They Are A
"Subsequent Transferee" under 11 USC §550(a)(2), Defendants Did Not
Take For Value and In Good Faith .......................................................................... 17

        i.      Good Faith ................................................................................................. 17

        ii.     Value ......................................................................................................... 20

H.    The Creation Of Fake Acquisitions, Corporations, And Corporate Documents
Designed To Misstate Assets And Divert Funds Of The Estate Away From
Legitimate Creditors Is A Text Book Case Of An Intentional Fraudulent
Conveyance ........................................................................................................... 21

        i.      Fraudulent Intent Established By Bad Acts ................................................. 21

        ii.     Fraudulent Intent Established Under Badges of Fraud ................................. 23

I.     NYDCL § 273-a, Expressly Prohibits the Transfer of Monies to Third
Parties For No Consideration To The Estate When Lawsuits and
Judgments Against the Debtors Are Pending ........................................................ 27

II.    CONCLUSION ................................................................................................................ 29

# TABLE OF AUTHORITIES

**Page**

**Cases**

*166 Mamaroneck Ave. Corp. v. 151 E. Post Rd. Corp.*
78 N.Y.2d 88, 575 N.E.2d 104, 571 N.Y.S.2d 686 (1991), aff'd sub nom. ...................................22

*9281 Shore Rd. Owners Corp. v. Seminole Realty Corp. (In re 9281 Shore Rd. Owners Corp.)*
187 B. R. 837 (Bankr. E.D.N.Y. 1995)...................................................................................3

*Adelphia Recovery Trust v. Bank of Am., N.A.*
624 F. Supp. 2d 292 (S.D.N.Y. 2009)...................................................................................23

*Am. Media, Inc. v. Bainbridge & Knight Labs., LLC*
135 AD3d 477, 22 N.Y.S.3d 437 (1st Dept 2016 ........................................................................19

*Am. Title Ins. Co. v. Lacelaw Corp.*
861 F.2d 224 (9th Cir. 1988) .............................................................................................13

*Babitt v. Schwartz (In re Lollipop, Inc.)*
205 B.R. 682 (Bankr. E.D.N.Y., 1997).................................................................................3, 4

*Banner v. Kassow*
104 F.3d 352 (2d Cir. 1996)...............................................................................................20

*Berezovskaya v. Deutsche Bank Nat'l Trust Co.*
2014 U.S. Dist. LEXIS 127532, Ft note 13 (EDNY, 2014............................................................9

*Berlenbach v. Bischoff*
137 Misc. 719, 244 N.Y.S. 369, 371 (N.Y.Sup.Ct. Spec. Term 1930)..........................................25

*Berman v. Pavano (In re Michael S. Goldberg, LLC)*
2020 Bankr. LEXIS 2314, 22 (Bankr. Conn. 2020 ....................................................................19

*Bonded Financial Services, Inc. v. European American Bank*
838 F.2d 890 (7th Cir. 1988) .......................................................................................14, 16

*Brown v. Dellinger (In re Brown)*
734 F.2d 119 (2d Cir. 1984)...............................................................................................5

*Bruno Mach. Corp. v. Troy Die Cutting Co. (In re Bruno Mach. Corp.)*
435 B.R. 819 ....................................................................................................................27

*Bryant v. Maffucci*
923 F.2d 979 (2d Cir.), cert. denied, 502 U.S. 849, 116 L. Ed. 2d 117, 112 S. Ct. ..........................4

*Candid Prods., Inc. v. Int'l Skating Union*
530 F. Supp. 1330 (S.D.N.Y. 1982)....................................................................................22

*Daly v. Radulesco (In re Carrozzella & Richardson)*
247 B.R. 595 (B.A.P. 2d Cir. 2000)......................................................................................5

*Dreyfuss v. eTelecare Global Solutions—US, Inc.*
No. 08 Civ. 1115 (RJS), 2008 U.S. Dist. LEXIS 96945, 2008 WL 4974864,
at *4 (S.D.N.Y. Nov. 19, 2008) ..........................................................................................22

*Employees' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*
794 F.3d 297 (2d Cir. 2015)...............................................................................................23

*Farm Stores, Inc. v. Sch. Feeding Corp.*
  102 A.D.2d 249, 477 N.Y.S.2d 374 (2d Dep't 1984) ...................................................................... 19

*FBI Wind Down Inc. Liquidating Trust v. All Am. Poly Corp. (In re FBI Wind Down, Inc.)*
  581 B.R. 116, 130 (Bankr. DE, 2018) ............................................................................ 6, 12, 30

*Floyd v. Option Mortgage Corp. (In re Supplement Spot, LLC)*
  409 BR 187, 205 (Bankr. SD TX 2009) ......................................................................................... 5

*Gafco, Inc. v. H. D. S. Mercantile Corp.*
  47 Misc. 2d 661, 263 N.Y.S. 2d 109 (NY Sup. Ct 1965) ........................................................... 26

*Geltzer v. Artists Mktg. Corp. (In re Cassandra Group),*
  338 B.R. 583 (Bankr. S.D.N.Y. 2006) .................................................................................. 25, 29

*Golden v. The Guardian (In re Lenox Healthcare, Inc.)*
  343 B.R. 96 (Bankr. D. Del. 2006) ............................................................................................. 15

*Grace v. Bank Leumi Trust Co.*
  443 F.3d 180 (2d Cir. 2006) ....................................................................................................... 29

*HBE Leasing Corp. v. Frank*
  48 F.3d 623 (2d Cir. 1995) .......................................................................................................... 19

*Hudson v. Martingale Invs., LLC (In re Hudson)*
  2014 Bankr. LEXIS 153, *12 (9th Cir. BAP 2014) ...................................................................... 9

*In re Adelphia Communs. Corp.*
  No. 02-41729, 2006 Bankr. LEXIS 223, 2006 WL 346418, at *1
  (Bankr. S.D.N.Y. Feb. 6, 2006) ............................................................................................. 8, 26

*In re Finley Kumble*
  130 F.3d 52 (2nd Cir. 1997) ................................................................................................ 14, 15

*In re M. Blackburn Mitchell, Inc.*
  164 B.R. 117 (Bankr. N.D. Cal. 1994) ...................................................................................... 14

*In re Refco Secs. Litig. v. Pf Saleco LLC*
  2010 U.S. Dist. LEXIS 164632, *65 (S.D.N.Y, 2010) ................................................................ 24

*In re Southmark*
  49 F.3d 1111 (5th Cir. 1995) ........................................................................................................ 5

*Jalbert v. Gryaznova (In re BICOM NY, LLC)*
  619 B.R. 795 (Bankr. S.D. NY, 2020) ........................................................................................ 17

*JPMorgan Chase Bank, N.A. v. Yuen*
  No. 11 CV 9192, 2013 U.S. Dist. LEXIS 81055, 2013 WL 2473013,
  at *5-6 (S.D.N.Y. June 3, 2013) .................................................................................................. 9

*Law v. Siegel*
  571 U.S. 415, 134 S. Ct. 1188, 188 L. Ed. 2d 146 (2014) ........................................................ 18

*Lyman Commerce Sols., Inc. v. Lung*
  2015 U.S. Dist. LEXIS 51447, 2015 WL 1808693, *31 (S.D.N.Y. Apr. 20, 2015) .................... 17

*Lyman Commerce Solutions, Inc. v. Lung,*
  2015 U.S. Dist. LEXIS 51447, 17 (S.D.N.Y, 2015) ................................................................... 29

*Malloy v. Citizens Bank (In re First Sec. Mortgage Co.)*
  33 F.3d 42 (10th Cir. 1994) ........................................................................................................ 14

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*
  475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) ........................................................ 4, 6

*Mellon Bank v. Official Comm. of Unsecured Creditors (In re R.M.L., Inc.)*,
 92 F.3d 139, 149 (3d Cir. 1996)..................................................................26

*Official Comm. Of Unsecured Creditors of Enron Corp. v. Martin (In re Enron
 Creditors Recovery Corp.)*
 376 B.R. 442 (Bankr. S.D.N.Y. 2007)..........................................................8

*Official Comm. of Unsecured Creditors v. Guardian Ins. 401 (In re Parcel
 Consultants, Inc.)*
 287 B.R. 41 (Bankr. D.N.J. 2002) ..............................................................15

*Official Comm. of Unsecured Creditors v. U.S. Relocation Servs. (In re 360Networks
 (USA) Inc.)*
 338 B.R. 194 (Bankr. S.D.N.Y. 2005).........................................................15

*Perez-Mejia v. Holder*
 641 F.3d 1143 (9th Cir. 2011) ....................................................................13

*Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Secs. LLC)*
 12 F.4th 171 (2d Cir. 2021) ..................................................................18, 20

*Ret. Plan of Unite Here Nat'l Ret. Fund v. Kombassan Holding A.S.*
 629 F.3d 282 (2d Cir. 2010).......................................................................10

*Richardson v. United States, I.R.S. (In re Anton Noll, Inc.)*
 277 B.R. 875 (B.A.P. 1st Cir. 2002).......................................................16, 18

*Saks International, Inc. v. M/V "Export Champion"*
 817 F.2d 1011 (2d Cir. 1987)......................................................................11

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*
 2021 U.S. Dist. LEXIS 55824,*22 ................................................................8

*Security First Nat'l Bank v. Brunson (In re Coutee)*
 984 F.2d 138 (5th Cir. 1993) ......................................................................14

*Sharp Int'l Corp. v. State St. Bank & Trust Co.*
 403 F.3d 43 (2d Cir. 2005)..........................................................................19

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs.)*
 379 B.R. 5 (Bankr. E.D.N.Y. 2007).............................................................25

*State Farm Mut. Auto. Ins. Co. v. Grafman*
 2017 U.S. Dist. LEXIS 154290, *17 (Bankr. EDNY 2017).........................17

*Togut v. RBC Dain Correspondent Servs. (In re S.W.Bach Co.,)*
 435 B.R. 866 (Bankr. S.D.N.Y. 2010).........................................................25

*Tronox Inc. v. Kerr McGee Corp. (In re Tronox Inc.)*
 503 B.R. 239 (S.D.N.Y, 2013).....................................................................26

*United States v. Kaiser*
 609 F.3d 556 (2d Cir. 2010)..........................................................................9

*United States v. Maciejewski*
 70 F. Supp. 2d 129 (Bankr. N.D.N.Y, 1999) ..............................................23

*United States v. One Heckler-Koch Rifle*
 629 F.2d 1250 (7th Cir. 1980) ....................................................................13

*United States v. Ray*
 930 F.2d 1368 (9th Cir. 1991) ......................................................................9

*United States v. Reyes*
   157 F.3d 949 (2d Cir. 1998) .......................................................................................8

*United States v. Williams*
   205 F.3d 23 (2d Cir. 2000)..........................................................................................9

*William Iselin & Co., Inc. v. Boardwalk Regency Corp.*
   703 F. Supp. 1084 (S.D.N.Y. 1989)...........................................................................26

*Young v. Paramount Communications. Inc. (In re Wingspread Corp.)*
   178 Bankr. 938 (Bankr. S.D.N.Y.), aff'd, 186 Bankr. 803 (S.D.N.Y. 1995) ...................3

## Statutes

11 U.S.C. § 101 ............................................................................................................19

11 U.S.C. § 101(31)(B)(iii)............................................................................................19

11 U.S.C. § 544(b) .........................................................................................................3

11 U.S.C. § 548.......................................................................................................23, 26

11 U.S.C. § 548(c) ........................................................................................................18

11 U.S.C. § 550(a) ........................................................................................................14

11 U.S.C. § 550(a)(1).....................................................................................................14

11 U.S.C. § 550(b)(1) .........................................................................................18, 20, 21

## Other Authorities

5 Collier on Bankruptcy P. 548.04(1) at 548-4 (Lawrence P. King, et al. eds.,
   15th ed. rev. vol. 2001) ...........................................................................................24

10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure*
   § 2723, pp. 64-66 (1983)..........................................................................................13

13 Romualdo P. Eclavea, Carmody-Wait 2d New York Practice with Forms
   §§ 85-29 & 85-30 (2002) ..........................................................................................25

N.Y. Debt & Cred. Law § 273-a.....................................................................................29

N.Y. Debt. & Cred. Law §276..................................................................................25, 28

N.Y. Debt & Cred. Law § 278(2) ...................................................................................25

## Rules

Fed. R. Evid. 803 ...................................................................................................8, 9, 12

Fed. R. Evid. 803(6)..................................................................................................9, 11

Fed. R. Evid. 804 ........................................................................................................12

COMES NOW, Plaintiff, Howard M. Ehrenberg in his capacity as Liquidating Trustee of Orion Healthcorp, Inc., et al. (the "Plaintiff" or the "Liquidating Trustee"), for the estates of the above-captioned debtors to the Opposition of Defendants (the "Opposition") filed by Defendants John Petrozza and Abruzzi Investments, LLC. (the "Defendants") and submits his Reply Brief in support of *Plaintiff's Motion For Summary Judgment Or In The Alternative, Summary Adjudication.*[2]

## I.

## <u>SUMMARY OF ARGUMENT ON REPLY</u>

1.      While the Trustee goes to great lengths to expose the dealings at the Debtors, the Opposition takes a different tactic seeking to throw out all exhibits to obfuscate what occurred. Federal Rule of Evidence § 803(6) favors the admission of probative evidence not its exclusion to allow the Court to draw an inference, or not.

2.      The Opposition concedes that between 2014 and 2017, Parmar and executives of the Debtors, transferred tens of millions of dollars directly from bank accounts of the Debtors Constellation Healthcare Technologies, Inc. ("CHT") and Orion Healthcorp., Inc. ("Orion") to the Robinson Brog IOLA Account.  Parmar and the Debtor manufactured the acquisitions of Northstar Acquisition, LLC, Phoenix Health, LLC*,* And MDRX Medical Billing, LLC, (the "Synthetic Transactions").  Fictitious companies were created such as Lexington, Pulsar, and Axis, with fake addresses and forged documents in order to divert proceeds from the Go-Private Transaction in January 2017.  The Opposition concedes the Robinson Brog IOLA Account was utilized to receive funds from the Go-Private Transaction on February 3, 2017.  Simply, the Opposition makes no effort to explain these bad acts and the fact they evidence an intentional

---

[2] Defined terms are given the same meaning as utilized in the Motion (Docket No. 37 (hereinafter "Dkt. No. _")).

misrepresentation of fact, known to be false when made, with the intention to move monies out of the estate away from legitimate creditors, i.e. an intentional fraud.

3.      Nor does the Opposition dispute Defendant John Petrozza's direct involvement in the Go-Private Transaction, as a controlling member of the Debtors and major shareholder, who approved the Go-Private Transaction so "they could all make a gazillion dollars", or, that the Transfer made to him was paid directly from the IOLA Account.  Three (3) Declarations are submitted in support of the Opposition[3] and interestingly not one of them addresses any of these disturbing facts, nor introduces a single document to rebut the fraud perpetrated.   Defendants were not vendors of the Debtor, had no right to be paid in the course of business of the Debtor, and gave no consideration to the Debtor. These facts are not in dispute. Legitimate claims of creditors forced to sue the Debtor and obtain judgments went unpaid while Parmar's buddy, with no colorable claim for receiving funds from the Debtor, was paid, i.e. a constructive fraud.

4.      The Opposition falls back to a novel concept:  even though the Transfer was designed and intended to benefit Defendants and did in fact benefit the Defendants as the "initial transferee", labelling the Transfer a "loan" and paying a third party downstream at Parmar's behest is a defense to a fraudulent transfer.  The explanation is not a legally cognizable defense nor does it meet the legal definition of a "mere conduit".

5.      Thirty-five (35) stipulated facts and the twenty-four (24) additional statements of fact are detailed and well supported by the record.  The extensive factual record establish that summary judgment in favor of the Trustee is proper at this time.

---

[3] Declarations in support of the Opposition include Giuliano, (Dkt. No. 46), Petrozza (Dkt. No. 47), and Basich (Dkt. No. 48).

**A.**   **The Motion Propery Identified A Predicate Creditor With A Claim In Excess of $100,000,000 as Against All Debtors In Existence Prior To The Transfer**

6.      As required by Code § 544(b), the Trustee may utilize state fraudulent conveyance law to avoid a transfer if there exists an actual unsecured creditor who could void the transfer under applicable law. *Babitt v. Schwartz (In re Lollipop, Inc.)*, 205 B.R. 682, 687 (Bankr. E.D.N.Y., 1997) citing to *Young v. Paramount Communications. Inc. (In re Wingspread Corp.)*, 178 Bankr. 938, 945 (Bankr. S.D.N.Y.), aff'd, 186 Bankr. 803 (S.D.N.Y. 1995). To establish a predicate creditor, "the creditor need not have reduced his claim to a lien or judgment." *9281 Shore Rd. Owners Corp. v. Seminole Realty Corp. (In re 9281 Shore Rd. Owners Corp.),* 187 B. R. 837, 852 (Bankr. E.D.N.Y. 1995).  The Opposition is simply wrong in claiming a judgment creditor must exist for all debtors.

7.      The Motion established that on January 30, 2017**,** Bank of America ("BOFA") advanced $130,000,000 to the Debtors pursuant to the Credit Agreement. (Dkt. No. 38, ASOF 51) The Credit Agreement was executed by all of the Debtors. (Dkt. No. 38, ASOF 52) BOFA is the largest creditor in the bankruptcy case with an outstanding claims in the amount of $158,200,710.89. (Dkt. No. 38, JSOF 19) As the Court is aware, substantially all of the Debtors assets were sold in 2018 for $29,100,000. See *Stipulated Order (I) Authorizing Continued Use of Cash Collateral Through October 26, 2018 and (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§361 And 363*, Case No. 18-71748-ast, Dkt. No. 546, ¶¶ K & O) The elaborate fraud perpetrated by Parmar and Petrozza has left in excess of $100M in unsecured debt.  Defendants' argument is frivolous.

**B.     Defendants Make No Effort To Rebut The Undisputed Facts And Case Law Establishing The Funds In The IOLA Account Were The Debtor's Property, Or An Account Which The Debtor Maintained A Legal Or Equitable Interest**

8.     The Motion set forth three (3) separate and <u>independent basis</u> to support the assertion that the Robinson Brog IOLA account were the Debtor's funds.  (Motion, p. 13, A(i)-(iii)). Defendants concede that monies held in the IOLA Account "remain funds of the client whose money is being held there", ergo, the law firm Robinson Brog is not the "initial transferee". (Opp., Dkt. No. 45, p. 13, §27) However, the Opposition asserts, without evidentiary support, that the Transfer was made from a non-debtor account. (Opp., Dkt. No. 45, p. 14, §28) <u>Neither of the two exhibits</u> attached to the Opposition create a material fact to prevent the granting of summary judgment.  The Court's June 26, 2018, Order to Compel Robinson Brog to produce all IOLA Account records and take the deposition of a Robinson Brog partner was issued after Robinson Brog redacted and produced selected IOLA records.  DLA Piper compelled the production so the Trustee could gain a full accounting without allowing Robinson Brog to limit the production.  Similarly, the selected portions of the testimony of Roger Raimond, the partner at Robinson Brog, as quoted in the Opposition, does not even reference the issue of Debtor vs. non-Debtor funds.  The Opposition attempts to create "doubt" but presents no evidence admissible evidence of non-debtor funds. See *Babitt v. Schwartz (In re Lollipop, Inc.),* 205 B.R. 682, 686 (Bankr. E.D.N.Y., 1997) citing to *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986) (It is insufficient for the non-movant to oppose a summary judgment motion by raising a "metaphysical doubt" concerning a material fact); See *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849, 116 L. Ed. 2d 117, 112 S. Ct. (noting that "conjecture or surmise" will not defeat a summary judgment motion).

      i.     <u>At All Pertinent Times, The Monies in the IOLA Account Were Reflected in Communications, Financial Records and Audited Returns As An Asset and Debt of the Estate.</u>[4]

9.     The IOLA Account and the cash therein were reflected in the Debtor CHT's

balance sheet and in its audited financial records for the year ended December 31, 2016.  The

IOLA Account cash balance again was reported in the Debtors' financials and tax returns.  See

*Floyd v. Option Mortgage Corp. (In re Supplement Spot, LLC)*, 409 BR 187, 205 (Bankr. SD TX

2009) (significance that account was listed in the debtor's schedules in finding asset was

property of the estate). (Motion, Dkt. No. 37, p. 15)  Once the Motion carried its burden and

evidenced the IOLA Account was reflected in the communications and financial records of the

Debtor consistent with it being treated as the Debtor's property, the Opposition failed to rebut its

burden to identify, earmark or segregate certain funds as property other than the Debtors. See *In

re Southmark,* 49 F.3d 1111, 1118 (5th Cir. 1995) (shifting the burden to the defendant to prove

the "existence of a constructive trust"); *Daly v. Radulesco (In re Carrozzella & Richardson),* 247

B.R. 595, 602 (B.A.P. 2d Cir. 2000) (shifting the burden to the defendant to prove "only legal

title" to the money, rather than control). The hollow argument that non-debtor funds were

involved not only does not raise an issue of fact, but is not supported by admissible evidence.

      ii.     <u>Debtors' Monies were Directly Deposited into IOLA Account To Pay Legitimate and Illegitimate Purposes.</u>

10.    The Motion affirmatively established that millions of dollars of the Debtor, CHT

and Orion, were directly diverted into the IOLA Account. (Motion, Dkt. No. 37, p. 16)  Once a

trustee establishes that a transfer was made from a debtor-owned account over which the debtor

---

[4] The Opposition does not dispute the legal standard set forth in the Motion that the phrase 'all legal or equitable interests of the debtor in property' has been given the broadest possible interpretation."  See *Brown v. Dellinger (In re Brown)*, 734 F.2d 119, 123 (2d Cir. 1984).

normally exercises control the trustee "makes a preliminary showing of an avoidable transfer 'of an interest of the debtor'. *FBI Wind Down Inc. Liquidating Trust v. All Am. Poly Corp. (In re FBI Wind Down, Inc.),* 581 B.R. 116, 130 (Bankr. DE, 2018).  This presumption holds even in cases where the account contains commingled funds. Id.   The Motion establishes Debtor funds into the IOLA Account, and the Debtor exercising control over the IOLA Account to pay legitimate and illegitimate debts.

      iii.    The 2017, Proceeds From the Go-Private Transaction Were Funded in Part by the Debtors Borrowing $130,000,000 Which Were Deposited into IOLA Account.

11.    While the Opposition makes no effort to trace the origin of the Transfer, the Trustee does. (Motion, Dkt. No. 37, p. 17) $46,000,000 from the Go-Private Transaction, were deposited into the Robinson Brog IOLA Account under a book caption titled "Constellation Health/CHT Closing."  (Dkt. No. 38, JSOF 18) BOFA funded the Go-Private Transaction as secured by an interest in all the Debtors' property. (Dkt. No. 38, JSOF 18, 19) The Transfer was made out of the IOLA Account under the book entry "Constellation Health/CHT Closing."  (Aff. of J. Nolan, Dkt. No. 39, Ex. 3, p. 3)  Not only was the IOLA reflected in the Debtors' records as an asset of the Debtor, but the funds appearing under the book entry "Constellation Health/CHT Closing" was as a result of the loan obtained by the Debtor.

12.    The Motion established that the IOLA Account consisted of an interest of the Debtor in property from 3 independent sources. The Opposition failed to produce specific evidence to raises a genuine issue of fact on any basis raised.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Plaintiff has met his burden.

**C.**     **The Opposition Desperately Attempts to Throw Out All Evidence Attached to the Affidavits of Sartison, Wong and Lazzara Without Identifying To The Court The Document and the Indicia of Unreliability**

13.     According to the Opposition, the rampant allegations of fraud in the case cause all documents in the case to be suspect. (Opp., Dkt. No. 45, §22)  However, the Opposition takes issue with only seven (7) of the Plaintiff's Additional Separate Statement of Facts; ASOF 37, 38, 39, 53, 55, 56, and 59. (Opp., Dkt. No. 45, §16)  The generalized statements do not withstand stand scrutiny.[5]

i.     Sartison Affidavit (Dkt. No. 41):

14.     The Opposition asserts that the M&T Bank records attached to the affidavit of Ms. Sartison cannot be considered as they lack authenticity (Opp., Dkt. No. 45, §15) Yet, Defendants do not dispute they paid Sunshine Star, LLC. (Dkt. No. 28, JSOF 25) Regardless of the claim, the bank records were produced in response to a duly issued subpoena by the Trustee. (See Reply Aff. of J. Nolan, Ex. 1) The objection is without validity.

ii.     Wong Affidavit (Dkt. No. 40):

15.     The Opposition asserts that Ms. Wong cannot lay a foundation or authenticate various records found within the Debtors' business records since (a) she was not an employee of the Debtor, and (b) there is an *indicia of unreliability* with the documents attached to her affidavit as "this case is replete with evidence of fraud".  (Opp., Dkt. No. 45, §20)  If true, every case involving a bankrupt estate involving fraudulent conveyances would not be pursued.

16.     Rule 803(6) favors the admission of evidence rather than its exclusion if it has any probative value at all." *United States v. Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010). In fact,

---

[5] There are ample basis to grant summary judgment from the thirty-five (35) facts stipulated to by the parties as set forth in Docket No. 38.

business records of entities engaged in fraud are commonly admitted into evidence. See, e.g., id. at 575-76 & n.6 (finding fraudulent activity did not preclude admissibility under business records exception); *Official Comm. Of Unsecured Creditors of Enron Corp. v. Martin (In re Enron Creditors Recovery Corp.)*, 376 B.R. 442, 454-58 (Bankr. S.D.N.Y. 2007) (admitting debtor's records under business records exception even though Enron was engaged in fraudulent financial transactions); *In re Adelphia Communs. Corp.,* No. 02-41729, 2006 Bankr. LEXIS 223, 2006 WL 346418, at *1 (Bankr. S.D.N.Y. Feb. 6, 2006) (admitting debtors' books and records as business records under Rule 803 even though principals engaged in bank fraud, securities fraud, and conspiracy through debtor). "Residual doubts on the question [of trustworthiness] would go to the weight of the evidence, not its admissibility." *United States v. Reyes*, 157 F.3d 949, 953 (2d Cir. 1998). See *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 2021 U.S. Dist. LEXIS 55824,*22 (rejecting defendants' wholesale attack on the books and records of a debtor in a fraudulent conveyance action as lacking trustworthiness because the records were permeated with fraud). Further, the business records attached to the Affidavit of Ms. Wong can be corroborated from multiple sources.  The bank records attached as Exhibits A, B & C, are for transactions which are corroborated as being received on the IOLA Account. (See Wells Fargo IOLA Acct Report, Dkt. No. 39; Aff. of J. Nolan, Ex. 3)  Exhibit D bears the time and date stamp of the State of Delaware, Secretary of State, Department of Corporations which is self-authenticating.  Exhibit E, dated November 17, 2016, is entirely consistent with Exhibit D, all located within the business records of the Debtors.   Defendants make a general objection that Ms. Wong cannot lay a foundation for the exhibits to her declaration that were located within the business records of the Debtor as she was not there when the document was created.  The objection is without merit.

17.    <u>First</u>, the Federal Rules do not require she be an employee. The foundational requirement found in FRE 803(6) dictates that offered records be authenticated by testimony from a custodian or "other qualified witness" from the business.  Rule 803(6) incorporates the phrase 'other qualified witness' which is broadly interpreted to require only that the witness understand the record-keeping system." *Id.* (quoting *United States v. Ray*, 930 F.2d 1368, 1370 (9th Cir. 1991)).  It would be hard to imagine demanding an employee be present since a trustee in bankruptcy steps in after the company has been closed.  <u>Second</u>, subsection (6) of FRE 803, does not require the business custodian to certify he or she has first-hand knowledge of the facts set forth in the records being authenticated.  *Hudson v. Martingale Invs., LLC (In re Hudson),* 2014 Bankr. LEXIS 153, \*12 (9th Cir. BAP 2014); See *Berezovskaya v. Deutsche Bank Nat'l Trust Co.*, 2014 U.S. Dist. LEXIS 127532, Ft note 13 (EDNY, 2014) citing to *United States v. Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010); *JPMorgan Chase Bank, N.A. v. Yuen*, No. 11 CV 9192, 2013 U.S. Dist. LEXIS 81055, 2013 WL 2473013, at \*5-6 (S.D.N.Y. June 3, 2013) (noting that "[t]o establish a proper foundation for a document offered into evidence as a business record, the custodian or other qualified witness 'need not have personal knowledge' of the creation of the document,' ... or even identify a person who does") (citing *United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000); *Ret. Plan of Unite Here Nat'l Ret. Fund v. Kombassan Holding A.S.*, 629 F.3d 282, 289 (2d Cir. 2010)).   Here, Ms. Wong states she was present at the Debtors pre-petition and post-petition and personally conducted an investigation of the financial condition and business operations of CHT.  She was granted access to the records of the Debtors including, bank statements, accounts payable, accounts receivables, vendor files, customer files, financial systems and email communications of the Debtors' employees and was personally familiar with them.   The correspondence and emails attached to her affidavit *(Exhibits G, H, I, J, M, N)* were located within the business records of the Debtors as regularly maintained in its

business.  Nothing contained within the emails is inconsistent with the facts before the Court to

raise an indicia of unreliability.   Defendants claim they asked for the monies on May 24, 2017

and the emails evidence the Transfer being made on May 25, 2017, entirely consistent. (See

Exs. M & N; Dkt. No. 38, JSOF 22).  *Exhibits K & L,* the bank documents, namely the Credit

Agreement dated January 30, 2017, among BOFA and the Debtors as Borrowers, the pledge,

note and guaranties not only were located within the business records of the Debtors, but have

been regularly before this Court in First Day motions, cash collateral motions, and the Plan and

Disclosure Statement.  (See Dkt. No. 644, Case No. 18-71748-ast, p. 27)  The Opposition does

not assert the BOFA documents to carry any indicia of unreliability.

iii.    <u>Frank Lazzara Affidavit (Dkt. No. 42):</u>

18.    The Opposition makes the same generalized objections to the Affidavit of Frank

("Aff. of F. Lazzara) as the Affidavit of Ms. Wong does.  The Aff. of F. Lazzara attaches

seven (7) exhibits.  No expert testimony is necessary or offered.  The witness offers reliable

testimony regarding the collection, maintenance and production of each exhibit.

19.     Mr. Lazzara was a Managing Director with FTI and led the forensic

investigations team that acquired the Debtor's books, records and electronic communications,

pre-petition and was a part of the interim management team that occupied the Debtor's offices,

assisting with the conduct of the day-to-day management of the Debtor's financial affairs.  Mr.

Lazzara sets forth how they collected the Debtor's electronically stored information ("ESI") from

servers maintained by CHT. (Aff. of F. Lazzara, Dkt. No. 42, §2)  They located the Office 365

mailboxes of the executives and "he was personally familiar with the Debtor's books and records

and the historical communications that were committed to email". (Aff. of F. Lazzara, Dkt.

No. 42, §2)  *Exhibit 1* and *Exhibit 3* are emails discovered by FTI in the business records of the

Debtor.  *Exhibit 1* is an email dated July 28, 2017, addressed to Parmar and Zaharis, the Debtors'

executives, attaching the IOLA Account dated July 27, 2017.  Both the email and the ledger are

consistent, i.e. they accurately reference the attachment.  *Exhibit 3*, an email referencing a

$688,000 payment from December 2016 and is corroborated on the Robinson Brog IOLA

Account produced by Robinson Brog in response to the Court Order. See *Saks International, Inc.

v. M/V "Export Champion*", 817 F.2d 1011, 1013 (2d Cir. 1987) ("The principal precondition to

admission of documents as business records pursuant to Fed. R. Evid. 803(6) is that the records

have sufficient indicia of trustworthiness to be considered reliable.")

20.     *Exhibits 2 & 7*, the Consolidated Financial Statements of the Debtor for two time

frames 2013-2014, and 2015-2106, as prepared for the Board of Directors of the Debtor by an

Independent Auditor. Both documents are supported with cover letters outlining detailed

explanations concerning their preparation. [6] The documents are reliable and offered merely to

reflect the recordation by the Debtor's auditors of the IOLA Account in the Debtor's audited

financial statements as an asset of the Debtor.  Mr. Lazzara does not offer expert testimony, but

merely notes the location of the entries in a multi-page financial record.  *Exhibit 1, 2, 3 and 7* are

trustworthy on their face and reliable for the purpose presented.

21.     *Exhibit 4* is the Robinson Brog billing memorandum for 2016, as referenced in the

e-mail dated December 22, 2016, and which requested payment in the approximate amount of

$688,000 from the IOLA Account. (Aff. of F. Lazzara, Dkt. No. 43, Ex. 4).  Further

corroborating the email and billing invoices, is the recordation in the IOLA Account <u>on that</u>

---

[6] A statement not specifically covered by Rule 803 or 804 but having *equivalent circumstantial guarantees of trustworthiness*, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

same day, December 22, 2016, of a payment to Robinson Brog of $697,392.29 out of the IOLA Account.  As noted, the invoices included the fees for the Go-Private Transaction demonstrating the Debtors' right to use funds to pay its own creditors. *FBI Wind Down Inc. Liquidating Trust v. All Am. Poly Corp. (In re FBI Wind Down, Inc.),* 581 B.R. 116, 130 (Bankr. DE, 2018) (Debtor's use of fund is dispositive of ownership). (Motion, Dkt. No. 37, p. 16)

22.     *Exhibit 5* is the year-end balance reported in the IOLA Account, and *Exhibit 6* is the year-end balance reported in the Debtor's general ledger.  Defendants do not dispute the IOLA Account was being forwarded by Robinson Brog to the Debtor. The emails independently corroborate this fact. Defendants do not dispute the Debtor maintained a general ledger. The consolidated financial statements corroborate this fact.

**D.**     **The Opposition Admits The Defendants Were the "Initial Transferee"**

23.     "'[J]udicial admissions are formal admissions in pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact.'" *Perez-Mejia v. Holder*, 641 F.3d 1143, 1151  (9th Cir. 2011) *quoting Am. Title Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224, 226 (9th Cir. 1988) (internal quotation marks and citation omitted). For purposes of summary judgment, the courts have treated representations of counsel in a brief as admissions even though not contained in an affidavit.  *United States v. One Heckler-Koch Rifle,* 629 F.2d 1250, 1253 (7th Cir. 1980); 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure*, § 2723, pp. 64-66 (1983).

24.     In the present case, Defendants admit that: "There are really three transfers taking place.  The first transfer is the transfer of the Funds at Parmar's direction from the CHT Closing Account to the Abruzzi bank account." (Emphasis Added) (Opp., Dkt. No. 45, p. 23, §54). Not that it could be reasonably disputed, but Defendants admit they are the "initial transferee".  The subsequent claim that Defendants were a "mere conduit" does not meet the stringent legal test.

**E.**    **The Claim That Defendants Were Intended to Be A "Mere Conduit" For the Second Payment To Sunshine Star, LLC Is A Poor Explanation, Not A Defense**

25.    According to the Opposition, Defendants were the mere "conduit" for making a payment thirty-five (35) days later to Sunshine Star, LLC.  (Opp., Dkt. No. 45, p. 19) The argument fails since the Transfer was <u>intended</u> to benefit Defendants, personally benefitted Defendants, and Defendants exercised dominion and control over the funds.  What Defendants did 35 days later does not alter the undisputed fact that by purpose and design, Defendants were the "initial transferee" and/or for whose benefit the Transfer was made.[7]

26.    Other courts have followed the lead of the Seventh Circuit in *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890, 893 (7th Cir. 1988), and have adopted a dominion or control test to determine who is an "initial transferee". *See Security First Nat'l Bank v. Brunson (In re Coutee)*, 984 F.2d 138, 140 (5th Cir. 1993) (collecting cases). The *Bonded* approach is that "the minimum requirement of status as a 'transferee' is dominion over the money or other asset, the right to put the money to one's own purposes." 838 F.2d at 893. *Malloy v. Citizens Bank (In re First Sec. Mortgage Co.)*, 33 F.3d 42, 43-44 (10th Cir. 1994).

27.    In *Finley, Kumble*, the Second Circuit Court adopted the reasoning of the Seventh Circuit in the Bonded Financial case, noting that the "logic" of Bonded Financial had been widely accepted.  See *Finley, Kumble*, 130 F.3d 52, 57–58 , citing *Malloy v. Citizens Bank (In re First Sec. Mortgage Co.)*, 33 F.3d 42, 44 (10th Cir. 1994); *In re Finley, Kumble*, 130 F.3d 52, 59 (2nd Cir. 1997) involved a debtor law firm who had purchased malpractice insurance through its

---

[7] Section 550(a) defines the party with whom a trustee may seek to recover property that is fraudulently transferred or the value or proceeds of such property. Section § 550(a)(1) provides that either an "initial transferee" or the "entity for whose benefit such transfer was made" is liable for the avoided transfer. 11 U.S.C. § 550(a)(1).  The statutory structure holds either group subject to strict liability.  *In re Finley Kumble*, 130 F.3d 52, 57 (2nd Cir. 1997); See *In re M. Blackburn Mitchell, Inc.*, 164 B.R. 117, 125 (Bankr. N.D. Cal. 1994) (Even innocent initial transferee is liable for the transfer)

insurance broker.  The broker forwarded the debtor's premium payments directly to the insurer.  The Second Circuit noted that the broker, upon receipt of the funds, did not have the right to put them to its own use but was obligated to transmit them to the insurer. *Id*.  Notable findings by the Second Circuit in *Finley*, the allegations did not suggest that the funds transferred were for the broker's benefit, funds were <u>not</u> diverted into the broker's account, the "broker had no discretion or authority to do anything else but transmit the monies, "the transfer of premium funds was an ordinary or routine financial transaction for an agency". See *In re Finley, supra*, 58-59.  Unlike *In re Finley*, the Transfer before this Court is anything but routine.  The undisputed facts here; the Transfer involved an undocumented handshake loan (Dkt. No. 38, JSOF 27), where Defendants asked for $200,000 and received $250,000 (Dkt. No. 38, JSOF 24).  The monies were sent to Defendants by purpose and design to personally benefit Defendants who needed the money (Dkt. No. 38, JSOF 22, 27, 30; See Dkt. No. 40, See Ex. M, email from Parmar) The Transfer was controlled and deposited on May 25, 2017 to the bank account of Defendant Abruzzi's Investments, LLC.  (See Dkt. No. 40; Ex. N, Ehren–Abruzzi 000019; Dkt. No. 47, Petrozza Dec., §7) and Defendant Petrozza used the funds to lease a property. (Dkt. No. 47, Petrozza Dec., §8).

28.     In *In re 360networks (USA), Inc*, 338 B.R. 194, (Bkrtcy. S.D.N.Y. 2005), the court rejected defendant as a "mere conduit" where the record established defendant benefitted even though being reimbursed for sums advanced to employees. *Id*. at 202. The same facts are before this Court.  Where a transferee may use the funds freely, it is not a "mere conduit." *Golden v. The Guardian (In re Lenox Healthcare, Inc.)*, 343 B.R. 96, 104 (Bankr. D. Del. 2006) citing to *Official Comm. of Unsecured Creditors v. U.S. Relocation Servs. (In re 360Networks (USA) Inc.)*, 338 B.R. 194, 202 (Bankr. S.D.N.Y. 2005); *Official Comm. of Unsecured Creditors v. Guardian Ins. 401 (In re Parcel Consultants, Inc.)*, 287 B.R. 41, 46 (Bankr. D.N.J. 2002)

(finding insurance company which administered 401k plan for debtor was mere conduit for plan funds); *Richardson v. United States, I.R.S. (In re Anton Noll, Inc.),* 277 B.R. 875, 880-81 (B.A.P. 1st Cir. 2002) (holding that defendant gained dominion and control upon delivery of a check payable to "cash" because the check became negotiable upon the defendant's receipt); See also *Bonded,* 838 F.2d at 893  (stating that a mere conduit holds funds "only for the purpose of fulfilling an instruction to make the funds available to someone else").

29.    The side agreement between Parmar and Petrozza, to send a payment to Sunshine Star, LLC for no documented reason does not retroactively immunize the Transfer. (Dkt. No. 38, JSOF 23)  Nor is it accurate that Defendants "returned the Transfer". (Opp., Dkt. No. 45, p. 19). They did not.  Rather, the facts clearly evidence Defendants deposited the Transfer into his investment account and used the monies to "lease another property".  (Aff. of Petrozza, Dkt. No. 47, §8; Depo. of Petrozza, p. 197-198; Aff. of J. Nolan).  When Petrozza had sufficient funds he claims, "I told Parmar on the phone I could pay it back now". (Depo. of Petrozza, p. 198, attached to Reply Aff. of J. Nolan, Ex. 2).  On June 28, 2017, Defendants took new funds from his Abruzzi Investment account, transferred the funds to Mr. Petrozza's checking account ending in #1763, the same checking account that he received the Transfer, and new funds were sent to Sunshine Star, LLC. (Dkt. No. 38, JSOF 24; see Ex. B to Dec. of Basich, Dkt. no. 48, email dated June 28, 2017 @ 1:04 pm).

30.    The Opposition is simply wrong that a defendant who exercises dominion and control over monies and puts them in his account for his own use can thereafter claim as a legal defense that he transferred the funds later to a third party.  See *State Farm Mut. Auto. Ins. Co. v. Grafman*, 2017 U.S. Dist. LEXIS 154290, *17 (Bankr. EDNY 2017) (Ft. note 2 discussing the law in the Second Circuit and case law rejecting the "I transferred it to someone else weeks later" defense.)  See *Lyman Commerce Sols., Inc. v. Lung*, 2015 U.S. Dist. LEXIS 51447, 2015

WL 1808693, *31 (S.D.N.Y. Apr. 20, 2015) (rejecting defendant's explanation that liability may be avoided by simply transferring funds down the line to a corporate insider or third party and granting summary judgment against defendant).

31.     Defendants' reliance on *Jalbert v. Gryaznova (In re BICOM NY, LLC),* 619 B.R. 795 (Bankr. S.D. NY, 2020) is misplaced. In *Jalbert*, the defendant Ms. Gryaznova maintained a joint account with a resident of the United States.  It was undisputed that she never used the funds, did not know of the transfers from the account, and the transfers *were never intended* to go to her. *Id* at 797. "No real world transfer of funds to Ms. Gryaznova was intended, and none was accomplished". Id at 799.  "Ms. Gryaznova did not endorse, participate in, or know about the use of her account".  *Id.*  In the present case, Petrozza expressly facilitated the Transfer and used the monies.

**F.**     **The Law Places The Burden On The Initial Transferee Who Has The Best Opportunity To Uncover The Irregularity In the Conveyance**

32.     As the "initial transferee", Defendants' were in the best position to avoid the present dispute.   The Opposition claims Defendants "had no say in where the money went". (Opp., Dkt. No. 45, p. 23, §54).  The claim is disingenuous.

33.     "Congress allocated the burden of inquiry and risk on the "initial transferee" the entity for whose benefit the transfer was made. The initial transferee is the best monitor; subsequent transferees usually do not know where the assets came from and would be ineffectual monitors if they did." *Richardson v. United States, I.R.S. (In re Anton Noll, Inc.),* 277 B.R. 875, 882 (B.A.P. 1st Cir. 2002) Defendants asked for the loan, had bank statements to evidence where it came from, and the ability to return it directly to Parmar or the Debtor. The instructions from Parmar indicating monies should be sent to Sunshine Star, LLC was clearly within his purview to question, or better yet, to reject.  This power clearly rested with Defendants.

**G.**    **Even Under a Scenario As Defendants Claim Where They Are A "Subsequent Transferee" under 11 USC §550(a)(2), Defendants Did Not Take For Value and In Good Faith**

34.    The Opposition contends that if the Defendants are "subsequent transferees", they can establish they took the Transfer for "value" and "in good faith".  (Opp., Dkt. No. 45, pp. 25-27)  The argument fails as the undisputed facts establish Defendants were insiders or shareholders and nothing in the Opposition rebuts the *per se* rule under New York law, that an insider payment is not made in good faith nor for value.

i.    Good Faith

35.    The concept of "good faith" as historically used in fraudulent conveyance law informs the construction of the phrase in Sections 548(c) as well as 550(b)(1). *Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Secs. LLC),* 12 F.4th 171, 187 (2d Cir. 2021) Under the normal rule of statutory construction that words repeated in different parts of the same statute generally have the same meaning, "good faith" as utilized in 11 U.S.C § 548(c) and § 550(b)(1) are viewed consistently. *Id* at 186, citing *to Law v. Siegel*, 571 U.S. 415, 422, 134 S. Ct. 1188, 188 L. Ed. 2d 146 (2014).  New York courts have long recognized that where the transferee is an officer, director, or major shareholder of the transferor, good faith is lacking as a matter of law. *Id.*; see *also Sharp Int'l Corp. v. State St. Bank & Trust Co.*, 403 F.3d 43, 54 (2d Cir. 2005); *Farm Stores, Inc. v. Sch. Feeding Corp.,* 102 A.D.2d 249, 477 N.Y.S.2d 374 (2d Dep't 1984). Section 548(c) requires both value and good faith and in the absence of either, the defense fails. *Berman v. Pavano (In re Michael S. Goldberg, LLC)*, 2020 Bankr. LEXIS 2314, 22 (Bankr. Conn. 2020).  When preferences are given to a debtor corporation's shareholders, officers, or directors, such transfers are generally deemed not to be for fair consideration and *per se* violations of the good faith requirement. *Id.* (citing *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 634 (2d Cir. 1995)).  An insider payment is not in good faith, regardless of whether or not it was

paid on account of an antecedent debt." *Am. Media, Inc. v. Bainbridge & Knight Labs., LLC*, 135 A.D.3d 477, 478, 22 N.Y.S.3d 437 (1st Dept 2016).

36.     Defendant Abruzzi Investment, LLC filed multiple claims identifying itself as a shareholder and a controlling member of the Debtors.  (Dkt. No. 38, JSOF 6, 7, 35).  It is also an undisputed fact that Defendant Petrozza met with Parmar and the Board of Directors in November 2016 and approved the Go-Private Transaction so they could all make a lot of money. (Dkt. No. 38, JSOF 14).  Defendant Petrozza testified under oath that he was present, signed the Unanimous Consent of All Managers to approve the merger of the Debtor into the Go-Private Transaction including the Prepetition Credit Agreement encumbering all the Debtors assets. (See Reply Aff. of J. Nolan, Ex. 2; Aff. of F. Lazzara, Dkt. No. 42, §10)  Under 11 U.S.C. § 101, the term "*insider*" includes: if the debtor is a corporation "(iii) person in control of the debtor; " 11 U.S.C. § 101(31)(B)(iii)  No disputed fact exists that Defendants were shareholders or an insider who approved the transaction that ultimately resulted in money deposited to the IOLA account and being disbursed directly to Defendants. The Transfer was a *per se* violation of the good faith requirement enumerated under the *Farm Stores, Inc.,* decision.

37.     It is Defendants' burden to establish good faith under § 550(b)(1).  *Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Secs. LLC)*, 12 F.4th 171, 191(2nd Cir. 2021) ("because taking a transfer in good faith under § 550(b) is an exception to the general rule permitting the trustee to recover the transfer under § 550(a), it is an affirmative defense). Defendants have not sustained their burden. The Second Circuit discussed the element of "good faith" in a fraudulent conveyance case at length in *Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Secs. LLC)*, 12 F.4th 171, 189(2nd Cir. 2021):

"we expressed that "[a] transferee does not act in good faith when he has sufficient knowledge to place him on inquiry notice of the debtor's possible insolvency." *Banner v. Kassow*, 104 F.3d 352 (2d Cir. 1996) (unpublished opinion) (quoting *In re Sherman*, 67 F.3d at 1355).

38.      The Opposition concedes that under §550(b)(1), Defendants are held to the status of "inquiry notice". (Opp., Dkt. No. 45, §64)  However, the Second Circuit, looks at what the defendant knew, should have known, and what a diligent inquiry would uncover. *Id.* at 191-192. If the transferee had information that put it on inquiry notice that the transferor was insolvent or that the transfer might be made with a fraudulent purpose", good faith is lacking. Id. citing to *Marshall,* 740 F.3d at 91 n.11 (2d Cir. 2014)  Here, Petrozza claims he was receiving the Transfer from Constellation Healthcare or Parmar, "I wasn't really certain". (Reply Aff. of J. Nolan; see Ex. 2, Petrozza Depo., pp. 200-201)  Defendants recorded it as "Loan Constellation Paul". (Reply Aff. of J. Nolan; see Ex. 2, Depo. of Petrozza, Ex. 20)  Defendant Petrozza admits he suspected Parmar was having financial issues and could not pay his bills in January 2017, just weeks before the Transfer. (Dkt. No. 38, JSOF 29)  As for the Debtors' financial condition, Petrozza knew his $4MM investment was in jeopardy so he and Parmar formed Aquila Alpha in 2015, and he (Parmar) funded it for $3.5MM, "so if things didn't go right, I would have something that I would be able to get my initial investment back…".  ". (Reply Aff. of J. Nolan, Petrozza Depo., Ex. 2, pp. 103-106)  Defendants' knowledge of the Debtor and Parmar's financial troubles was so tangible, they orchestrated the Aquila Alpha scheme.

39.      Similarly, "good faith" fails as Defendants knew, or could have known, they were sending monies to a sham third party corporation.   Petrozza received the email with wire instructions that clearly identified, "Sunshine Star, LLC", not Parmar or Constellation as the recipient of his payment.  (Dkt. No. 38, JSOF 25; See June 28, 2017, 1:04 pm email, Ex. B to Aff. of Basich, Dkt. No. 48)  If Defendants performed even a rudimentary corporate search, he

would have learned Sunshine Star, LLC was incorporated on June 12, 2017, only two weeks before he wired the funds.  (See Reply Aff. of J. Nolan, Ex. 3) However, he willingly or blindly aided Parmar.  As he stated so aptly in his declaration, he was a willing participant to Parmar's machinations; "If Parmar told me I had to burn the money in the street to pay him back I would have done that too."(See Aff. of Petrozza, Dkt. No. 47, §13)

ii.    Value

40.    Section 550(b)(1) offers a defense to any subsequent transferee provided "a transferee that takes for value, including satisfaction or securing of a present or antecedent debt,…"  The undisputed facts confirm this was a loan and Defendants' gave nothing in exchange for the Transfer. (Dkt. No. 38, JSOF 22)  Defendants admit they did nothing to earn the Transfer. (Dkt. No. 38, JSOF, 26)   However, the Opposition asserts it gave value to Parmar and/or the Debtor in the form of an unsecured enforceable oral promise to pay the amount back at a later date.  (Opp., Dkt. No. 45, §66)  As the argument goes, the Defendants would have been liable to the Debtors for breach of an oral contract.  What enforceable agreement?

41.    "[F]or a contract to be valid, the agreement between the parties must be definite and explicit so their intention may be ascertained to a reasonable degree of certainty." *Candid Prods., Inc. v. Int'l Skating Union*, 530 F. Supp. 1330, 1333 (S.D.N.Y. 1982). "A court cannot enforce a contract unless it is able to determine what in fact the parties have agreed to." *Dreyfuss v. eTelecare Global Solutions—US, Inc*., No. 08 Civ. 1115 (RJS), 2008 U.S. Dist. LEXIS 96945, 2008 WL 4974864, at *4 (S.D.N.Y. Nov. 19, 2008) (quoting *166 Mamaroneck Ave. Corp. v. 151 E. Post Rd. Corp.*, 78 N.Y.2d 88, 91, 575 N.E.2d 104, 571 N.Y.S.2d 686 (1991), aff'd sub nom. *Dreyfuss v. Etelecare Global Solutions—U.S. Inc.,* 349 Fed. Appx. 551 (2d Cir. 2009). "[I]f an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract." *Id.*  To claim an enforceable contract, the Opposition relies on phone text from

Petrozza to Parmar where he needs to borrow $200,000.  (Dkt. No. 38, JSOF 22)  However, the

Transfer was for $250,000. Petrozza could not explain the discrepancy. (Dkt. No. 38, JSOF 22)

Earlier, Petrozza and Parmar exchanged $200,000 in another handshake loan.  (Dkt. No. 38,

JSOF 23) Yet, Petrozza could not explain that transfer either. (Dkt. No. 38, JSOF 23) Parmar and

Petrozza had numerous "handshake loans" between them.  (Dkt. No. 38, JSOF 27)  In 2015 or

2016, they exchanged large sums of money paying one another's credit cards:

> "I had no liquid in the marina. And I needed to come up with $180,000.  I didn't
> even ask Tomer. And the next day he [Parmar] shows up, and he just gives me
> a check for $180,000. There's no paperwork.  It was just a handshake." (Reply
> Aff. of J. Nolan, Petrozza Depo., pp. 76-77)

42.     The Opposition could have attached admissible evidence such as leases, emails,

receipts but instead the Court is left to guess and fill in the blanks.

**H.     The Creation Of Fake Acquisitions, Corporations, And Corporate Documents
Designed To Misstate Assets And Divert Funds Of The Estate Away From
Legitimate Creditors Is A Text Book Case Of An Intentional Fraudulent
Conveyance**

43.     The Opposition does not cite to a single piece of admissible evidence to rebut the

undisputed facts evidencing the fraudulent acquisition of companies, the creation of fake

companies and the altering of documents to enter into the Go-Private Transaction and divert

funds of the Debtor.    The Opposition does not dispute that the Transfer in question was a direct

result of the Go-Private Transaction which depleted the assets of the estate.  Instead, the

Opposition responds that summary judgment is "exceedingly rare" where intent is at issue.

i.     Fraudulent Intent Established By Bad Acts

44.     Evidence of a specific intent to defraud is evident from the falsification of

documents, making false statements in documents, or back-dating documents. See *United States*

*v. Maciejewski*, 70 F. Supp. 2d 129, 134 (Bankr. N.D.N.Y, 1999).  A "strong inference" of fraud

may be established by alleging facts showing either (1) a "motive and opportunity to commit the

fraud"; or (2) "strong circumstantial evidence of conscious misbehavior or recklessness."

*Employees' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*, 794 F.3d 297, 306 (2d Cir. 2015) (securities law); *see also Adelphia Recovery Trust v. Bank of Am., N.A.*, 624 F. Supp. 2d 292, 308 (S.D.N.Y. 2009) (applying "motive and opportunity" test to the pleading of a § 548 claim). In 2015 and 2016, the Opposition concedes that numerous fake acquisitions took place by the Debtor at Parmar's behest acquiring shell companies which had no business, employees or assets and generated no new revenue. (Dkt. No. 38: JSOF 11-13; ASOF 43)  In November 2016, Defendant Petrozza met with Parmar and other managers of the board to approve the corporate documents associated with the Go-Private Transaction. (Dkt. No. 38, JSOF 14) The Go-Private Transaction involved the merger and acquisition of shares of the Debtors and the sale of the controlling interest to CC Capital (referred to as CHT Holdco, LLC).  To finance the merger, the Debtor took on massive debt by obtaining financing from BOFA for $130 million (with a total commitment of up to $150 million).  (Dkt. No. 38, ASOF 51)  In November and December 2016, Parmar created fake companies to receive the fabricated equity from the Synthetic Transactions. (Dkt. No. 38: JSOF 16; ASOF 44-50)  One of the fictitious entities created on November 17, 2016, to receive monies was Lexington Landmark Services, LLC as owned by the Defendant Petrozza. (Dkt. No. 38, JSOF 15)  Neither Lexington, Axis Medical Services, LLC, nor Pulsar Advanced Care, LLC, were legitimate businesses.  (Dkt. No. 38: JSOF 16, 17; ASOF 45, 49)  As set forth in the Motion, fake employer identification numbers were obtained from the IRS.  (Dkt. No. 38, JSOF 17; Motion, Dkt. No. 37, pp. 19-20)  The definition of "fraudulent transfer" under § 548, is "an act which has the effect of improperly placing assets beyond the reach of creditors"). *Id*. at 194, citing to *See* 5 Collier on Bankruptcy P. 548.04(1) at 548-4 (Lawrence P. King, et al. eds., 15th ed. rev. vol. 2001)  *See, In re Refco Secs. Litig. v. Pf Saleco LLC*, 2010 U.S. Dist. LEXIS 164632, *65 (S.D.N.Y, 2010) (the intent of Section 548(a)(1) and fraudulent

conveyance law is to prevent a debtor from "manipulating his affairs in order to shortchange his creditors and pocket the difference").  This is a text book case of Parmar and his buddies self-dealing.

45.     Further, Defendants participated and profited from the bad acts.  The IOLA Account that received the Go-Private transactions, is the same account the funds were paid to Defendants on May 25, 2017. [8] (Aff of J Nolan, Dkt. No. 39, Ex. 3, p. 3) "Actual fraudulent intent" under NYDCL § 278(2) has been construed such that it is satisfied if a "transferee participated or acquiesced in the transferor's fraudulent design." 13 Romualdo P. Eclavea, Carmody-Wait 2d New York Practice with Forms §§ 85-29 & 85-30 (2002) (emphasis added); *Berlenbach v. Bischoff*, 137 Misc. 719, 244 N.Y.S. 369, 371 (N.Y.Sup.Ct. Spec. Term 1930). There is no dispute that Defendants participated in the Go-Private transaction.  On these facts, the Opposition raises no issue of material fact to prevent summary judgment.

ii.     Fraudulent Intent Established Under Badges of Fraud

46.     The purpose of 11 USC §548, is to "set aside transactions that 'unfairly or improperly deplete a debtor's assets so that the assets may be made available to creditors. *Geltzer v. Xavarian High Sch. (in re Akanmu)*, 502 B.R. 124, 130 (Bankr. E.D.N.Y. 2013) quoting *Togut v. RBC Dain Correspondent Servs. (In re S.W.Bach Co.,)*, 435 B.R. 866, 875 (Bankr. S.D.N.Y. 2010).  Under the NYDCL § 276, the inquiry focuses on the circumstances or badges of fraud that suggest a conveyance was made with fraudulent intent, viz., with the purpose of placing a debtor's assets out of the reach of creditors.  See *Tronox Inc. v. Kerr McGee Corp., (In re Tronox*

---

[8]  A claim for fraudulent transfer may be alleged on collapsing a series of transactions where the transactions, taken as a whole, diminish the value of the debtor's estate and are marked by either a transfer made by the debtor for less than fair consideration or made by the debtor with fraudulent intent, and the party from whom the recovery is sought had actual of constructive knowledge of the entire scheme that renders the transfer fraudulent.  *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs.)*, 379 B.R. 5, 34 (Bankr. E.D.N.Y. 2007).  See Dkt. No. 38, JSOF 14. (Defendant Petrozza met with Parmar and the Board of Directors and approved the Go-Private Transaction so they could all make a gazillion dollars.)

*Inc.)* 503 B.R. 239, 282-283 (S.D.N.Y, 2013)[9]

        iii.    <u>The Lack Or Inadequacy Of Consideration</u>

47.     The Opposition claims that a "promise to repay" is consideration under 11 U.S.C § 548(a) and NYDCL §276.  The single case cited in the Opposition is not a fraudulent conveyance claim under either of the statutory provisions.  To the contrary, the law under these corresponding statutes is clear:  "In determining value, the Court makes a two-fold inquiry: *whether the debtor received any value* at all in exchange for the transfer, i.e. any realizable commercial value as a result of the transaction, and second whether that value was in fact reasonably equivalent. See *Devon Mobile Communs. Liquidating Trust v. Adelphia Communs. Corp. (In re Adelphia Communs. Corp.)*, No. 02-41729 (CGM), 2006 Bankr. LEXIS 4600, 2006 WL 687153, at \*11 (Bankr. S.D.N.Y. Mar. 6, 2006); *Togut v. RBC Dain Correspondent Servs. (In re S.W. Bach & Co.)*, 435 B.R. 866, 876, (Bankr.  S.D.N.Y. 2010) 2010 Bankr. LEXIS 2469, \*24-25, 53 Bankr. Ct. Dec. 148.   It is not disputed by Defendants that the $250,000 Transfer was made without consideration to the Debtor.  (Dkt. No. 38, JSOF 26, 28)  The Debtors' books and records evidence no antecedent debt satisfied concurrently by the Transfer. (ASOF 57, 58, 60)  See *William Iselin & Co., Inc. v. Boardwalk Regency Corp.*, 703 F. Supp. 1084, 1088 (S.D.N.Y. 1989) ("under this <u>section [276]</u>, an intent to defraud is assumed where the conveyance is made without consideration.")

---

[9] "Inadequacy of consideration, secret or hurried transactions not in the usual mode of doing business, and the use of dummies or fictitious parties are common examples of "badges of fraud." As was said in the Bentley case, : "No effort to hinder or delay creditors is more severely condemned by the law than an attempt by a debtor to place his property where he can still enjoy it and at the same time require his creditors to remain unsatisfied." *Gafco, Inc. v. H. D. S. Mercantile Corp.*, 47 Misc. 2d 661, 664, 263 N.Y.S. 2d 109 (NY Sup. Ct 1965).

iv.     The Family, Friendship or Close Associate Relationship between the Parties

48.     The Opposition claims Parmar and Petrozza's close personal friendships is irrelevant.  Case law recognizes only a "close familial relationship".  (Opp., Dkt. No. 45, §78)  The assertion is wrong.  See *Bruno Mach. Corp. v. Troy Die Cutting Co. (In re Bruno Mach. Corp.)*, 435 B.R. 819, 833-34 (Bankr. NDNY 2010) (In light of these facts, the court concludes the element met as the closeness of that relationship is underscored by the longtime friendship between the heads of the two companies.  Chorbajian and Bruno were close personal friends) Id. at 834.  It is undisputed before the Court, in 2015 and 2016, Petrozza thought of Mr. Parmar as a very close friend who socialized at Mr. Parmar's residence. (See Dkt. No. 38, JSOF 4)  The second elements is met.

v.     The Retention Of Possession, Benefit Or Use Of The Property In Question

49.     The Opposition claims that though Defendants deposited the Transfer in their bank account, they really did not retain the funds "as that deal fell through". (Opp., Dkt. No. 45, §79)  The Opposition misstates the facts as Petrozza swears under penalty of perjury that he used the funds: "Unfortunately, the lease of the Florida property fell through but I was able to lease another property instead." (Aff. of Pertozza, Dkt. No. 47, §8) "When the funds were no longer needed, I advised Basich to return the funds…". (Aff. of Pertozza, Dkt. No.  47, §9)  The third element is established.

vi.     The Financial Condition Of The Party Sought To Be Charged Both Before And After The Transaction In Question

50.     The Opposition claims that though Defendants had the same financial condition before and after the Transfer. (Opp., Dkt. No. 45, §80)  Once again, the Opposition misstates the facts.  It is not disputed, Petrozza claims that at the time of the Transfer he was struggling for cash and with no liquidity.  (Dkt. No. 38, JSOF 30) Parmar similarly could not pay his bills.

(Dkt. No. 38, JSOF 29) The Debtor was struggling for cash borrowing 130MM from BOFA on January 31, 2017. (Dkt. No. 38; ASOF 51) The motive was present for the creation of the Transfer, a transaction which was clearly outside the ordinary course of business of the Debtor and within the control of Parmar (Dkt. No. 38: JSOF 26; ASOF 57, 58, 60) The Transfer resulted in Debtors' funds being transferred beyond the reach of legitimate creditors of the Debtor. (Dkt. No. 38: JSOF 28;ASOF 60) The Motion established this badge of fraud as well.

      vii.   <u>The Existence Or Cumulative Effect Of A Pattern Or Series Of Transactions Or Course Of Conduct After The Incurring Of Debt, Onset Of Financial Difficulties, Or Pendency Or Threat Of Suits By Creditors; And The General Chronology Of The Events And Transactions Under Inquiry.</u>

51.    The Opposition assets the loan is a single transaction (Opp., Dkt. No. 45, §81), when earlier in the Opposition Defendants claim it was really three transactions. (Opp., Dkt. No. 45, §54) As the Court is aware, and as memorialized in the IOLA Account, the FBI stepped in on March 15, 2017, and seized $20,100,356.70 from the IOLA account. (Aff. of J. Nolan, Dkt. No. 39, Ex. 3) The Transfer occurred on May 25, 2017, two months later. (Dkt. No. 38, ASOF 53, 55) The Transfer was preceded by a desperate email from Parmar to take the funds from any account and move them to his personal friend who moved monies 35 days later to Sunshine Star, LLC. Sunshine Star, LLC took the funds and promptly closed the bank account. (Dkt. No. 38, ASOF 59) The facts suggest a series of transactions deliberately designed to obfuscate.

52.    Where certain "badges of fraud" are present, an actual intent to hinder, delay or defraud either present or future creditors under section 276 of the NYDCL **is presumed.** *Geltzer v. Artists Mktg. Corp. (In re Cassandra Group)*, 338 B.R. 583, 598 (Bankr. S.D.N.Y. 2006) (emphasis added). The undisputed facts establish each and all of the badges of fraud.

I.     **NYDCL § 273-a, Expressly Prohibits the Transfer of Monies to Third Parties  For No Consideration To The Estate When Lawsuits and Judgments Against the Debtors Are Pending**

53.     The Opposition contends that judgments against Orion Healthcorp., Inc., and Constellation Healthcare Technologies, Inc., each which they admit remain unsatisfied as of the petition date and were pending prior to the Transfer, is insufficient to invoke NYDCL §273-a. The Opposition claims that Plaintiff must put forth a judgment or lawsuit against each of the 22 separate creditors.  (Opp., Dkt. No. 45, §31)  The Opposition cites to no legal authority to support its position.

54.     To prevail on a claim under NYDCL §273-a, a plaintiff must establish that (1) the conveyance was made without fair consideration; (2) the conveyor was, at the time of the conveyance, "a defendant in an action for money damages" or "a judgment in such an action has been docketed against him"; and (3) the conveyor has "failed to satisfy the judgment." NYDCL § 273-a. See *Grace v. Bank Leumi Trust Co.,* 443 F.3d 180, 188-89 (2d Cir. 2006); The purpose of § 273-a is to provide a remedy for a creditor who has brought an action for money damages against a party who, after being named a defendant in that action, conveys assets to a third party for less than fair consideration leaving the ultimate judgment unpaid.  *Lyman Commerce Solutions, Inc. v. Lung*, 2015 U.S. Dist. LEXIS 51447, 18 (S.D.N.Y, 2015) citing to NYDCL § 273-a (McKinney 2002).  It is an undisputed fact, that the Debtors Constellation Healthcare Technologies, Inc. and Orion Healthcorp. Inc. transferred millions of dollars directly from each respective debtor bank account to the IOLA Account.[10] (Dkt. No. 38, ASOF 36-39) Once a trustee establishes that a transfer was made from a debtor-owned account over which the debtor

---

[10] Constellation Healthcare Technologies, Inc. was the holding company for Orion Healthcorp, Inc. which owned and operated the remaining Debtors.  See Case No. 8-18-71748-ast, Dkt. No. 2; Dec. of T. Drogelin in Support of Chapter 11 Petitions and First Day Motions, Ex. A, Corporate Organizational Chart.

normally exercises control, the trustee "makes a preliminary showing of an avoidable transfer 'of an interest of the debtor'. *FBI Wind Down Inc. Liquidating Trust v. All Am. Poly Corp. (In re FBI Wind Down, Inc.),* 581 B.R. 116, 130 (Bankr. DE, 2018).  This presumption holds even in cases where the account contains commingled funds. *Id.*  It is an undisputed fact that a judgment existed against the Debtor Orion Healthcorp. prior to the Transfer. (Dkt. No. 38, JSOF 31) It is an undisputed fact that a lawsuit was filed, against the Debtors, Constellation Healthcare Technologies, Inc. and Physicians Practice Plus, LLC prior to the Transfer which judgment was entered on November 30, 2017. (Dkt. No. 38, JSOF 32,33)  Clearly, the funds transferred to the Defendants for no consideration on May 25, 2017, could have been paid to satisfy the lawsuits/judgments owed by Orion Healthcorp. Inc., Constellation Healthcare Technologies, Inc. Instead, their legitimate claims went unpaid while Defendants, with no colorable claim for receiving funds, were paid.

**II.**

**<u>CONCLUSION</u>**

55.    For the reasons submitted in the Motion and herein, the Motion is ripe for

determination without further delay.

Dated:  March 29, 2021                      Respectfully submitted,

PACHULSKI STANG ZIEHL & JONES LLP

*/s/Jeffrey P. Nolan*
Ilan D. Scharf, Esq.
Jeffrey P. Nolan, Esq. *(admitted pro hac vice)*
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, New York 10017
Telephone:     (212) 561-7700
Facsimile:     (212) 561-7777

Counsel for Plaintiff, Howard M. Ehrenberg in his
capacity as the Liquidating Trustee of Orion
Healthcorp, Inc., *et al.*