1    UNITED STATES BANKRUPTCY COURT

2    EASTERN DISTRICT OF NEW YORK

3    Case No. 8-18-71748-ast

4    - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6    ORION HEALTHCORP, INC., ET AL.

7             Debtor.

8    - - - - - - - - - - - - - - - - - - - - - - - - - x

9    Adv. Case No. 8-18-08048-ast

10   - - - - - - - - - - - - - - - - - - - - - - - - - x

11   ORION HEALTHCORP, INC. ET AL,

12                Plaintiffs,

13          v.

14   MAX EDWARD ROYDE ET AL,

15                Defendants.

16   - - - - - - - - - - - - - - - - - - - - - - - - - x

17   Adv. Case No. 8-18-08053-ast

18   - - - - - - - - - - - - - - - - - - - - - - - - - x

19   ORION HEALTHCORP, INC. ET AL,

20                Plaintiffs,

21          v.

22   PARMAR ET AL,

23                Defendants.

24   - - - - - - - - - - - - - - - - - - - - - - - - - x

25

Page 2

1    - - - - - - - - - - - - - - - - - - - - - - - - - - x

2    Adv. Case No. 8-20-08049-ast

3    - - - - - - - - - - - - - - - - - - - - - - - - - - x

4    HOWARD M. EHRENBERG in his capacity as LIQUIDATING TRUSTEE

5    OF ORION HEALTHCORP, INC., ET AL.,

6                      Plaintiffs,

7            v.

8    ARVIND WALIA, ET AL,

9                      Defendants.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - x

11   Adv. Case No. 8-20-08052-ast

12   - - - - - - - - - - - - - - - - - - - - - - - - - - x

13   HOWARD M. EHRENBERG in his capacity as LIQUIDATING TRUSTEE

14   OF ORION HEALTHCORP, INC., et al.,

15                     Plaintiffs,

16           v.

17   ABRUZZI INVESTMENTS, LLC,

18                     Defendants.

19   - - - - - - - - - - - - - - - - - - - - - - - - - - x

20                     United States Bankruptcy Court

21                     290 Federal Plaza

22                     Central Islip, New York 11722

23                     May 25, 2022

24

25

1  B E F O R E :

2  HON. ALAN S. TRUST

3  U.S. BANKRUPTCY JUDGE

4  ECRO:  UNKNOWN

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   8-18-08048-ast - Orion HealthCorp, Inc. et al v. Max Edward

2   Royde et al

3   HEARING re Status Hearing

4   [1] Complaint by Orion HealthCorp, Inc., Constellation

5   Healthcare Technologies, Inc., NEMS Acquisition, LLC,

6   Northeast Medical Solutions, LLC, NEMS West Virginia, LLC,

7   Physicians Practice Plus, LLC, Physicians Practice Plus

8   Holdings, LLC, Medical Billing Services, Inc., Rand Medical

9   Billing, Inc., RMI Physician Services Corporation, Western

10  Skies Practice Management, Inc., Integrated Physician

11  Solutions, Inc., NYNM Acquisition, LLC, NorthStar FHA, LLC,

12  NorthStar First Health, LLC, Vachette Business Services,

13  LTD., MDRX Medical Billing, LLC, Vega Medical Professionals,

14  LLC, Allegiance Consulting Associates, LLC, Allegiance

15  Billing & Consulting, LLC, Phoenix Health, LLC against

16  Capita IRG Trustees (Nominees) Limited, CHT Holdco LLC, Blue

17  Mountain Healthcare LLC, PBPP Partners LLC, Axis Medical

18  Services LLC, Vega Advanced Care LLC, Forest Nominees

19  Limited GC1 ACCT, AAKB Investments Limited, Pulsar Advance

20  Care LLC, Platform Securities Nominees Limited KKCLT ACCT,

21  Lexington Landmark Services LLC, Mymsmd LLC, PPSR Partners

22  LLC, Max Edward Royde, PBPP LLB, UBS Private Banking

23  Nominees LTD Mainpool ACCT, Abn Amro Global Nominees Limited

24  573 Main ACCT, Alliance Trust Savings Nominees LTD Cdigro

25  ACCT, The Bank of New York (Nominees) Limited, The Bank of

1   New York (Nominees) Limited SFTIF ACCT, Barclayshare

2   Nominees Limited, David Beardsall, Beaufort Nominees

3   Limited, Beaufort Nominees Limited SSLNOMSACCT, BNY (OCS)

4   Nominees Limited HIT ACCT, Brewin Nominees Limited Gross

5   ACCT, CFS Portfolio Management Limited, CGWL Nominees

6   Limited GC1 ACCT, Chase Nominees Limited, Chase Nominees

7   Limited Exdepaif ACCT, David Falcon Butler Cole, Credit

8   Suisse Client Nominees (UK) Limited D6m5pb ACCT, FERLIM

9   Nominees Limited ISA ACCT, FERLIM Nominees Limited Pooled

10  ACCT, FITEL Nominees Limited SDPR ACCT, Goldman Sachs

11  International Creptemp ACT, Harewood Nominees Limited

12  4121550 ACCT, Hsbc Client Holdings Nominee (UK), HSBC Global

13  Custody Nominee (UK) Limited 630372 ACCT, HSBC Global

14  Custody Nominee (UK) Limited 667656 ACCT, HSBC Global

15  Custody Nominee (UK) Limited 944287 ACT, HSCB Global Custody

16  Nominee (UK) Limited 982409 ACCT, Huntress (CI) Nominees

17  Limited KGCLT ACCT, Investor Nominees Limited, Investor

18  Nominees Limited WRAP ACCT, Investor Nominees Limited

19  Nominee ACCT, James Capel (Nominees) Limited PC ACCT, Jim

20  Nominees Limited ISA ACCT, Jim Nominees Limited Jarvis ACCT,

21  Jim Nominees Limited Jarvisnt ACCT, Johnston Asset

22  Management Ltd, John Joseph Johnston, Karin Johnston, J.P.

23  Morgan Securities Plc Jpcrepon Acct, Kbc Securities Nv

24  Client Acct, Lawshare Nominees Limited Isa Acct, Lawshare

25  Nominees Limited Sipp Acct, Lawshare Nominees Limited Undoc,

1   Lawshare Nominees Limited Dealing, Paul Lines, Lynchwood

2   Nominees Limited 2006420 Acct, Merrill Lynch International

3   Main Acct, Morgan Stanley Client Securities Nominees

4   Limited, Morgan Stanley Client Securities Nominees Limited

5   Seg Acct, Nomura Pb Nominees Limited Pbnoms Acct, Nortrust

6   Nominees Limited, Nortrust Nominees Limited Tds Acct,

7   Nortrust Nominees Limited Lua01 Acct, Nortrust Nominees Ltd

8   Thd05 Acct, N.Y. Nominees Limited, N.Y. Nominees Limited

9   Bccag Acct, Peel Hunt Holdings Limited Pmprinc Acct,

10  Pershing Nominees Limited Ccclt Acct, Pershing Nominees

11  Limited Elisa Acct, Pershing Nominees Limited Imclt Acct,

12  Pershing Nominees Limited Jiclt Acct, Pershing Nominees

13  Limited Perny Acct, Pershing Nominees Limited Rkclt Acct,

14  Pershing Nominees Limited Rkisa Acct, Pershing Nominees

15  Limited Tmclt Acct, Pershing Nominees Limited Wrclt Acct,

16  Pershing Nominees Limited Pqideal Acct, Platform Securities

17  Nominees Limited Kkisa Acct, Platform Securities Nominees

18  Limited Ashisa Acct, Platform Securities Nominees Limited

19  Ashnom Acct, Platform Securities Nominees Limited Ashpen

20  Acct, Platform Securities Nominees Limited Ashtru Acct,

21  Rathbone Nominees Limited, Redmayne (Nominees) Limited

22  P89813x Acct, Redmayne (Nominees) Limited Rg2461r Acct, Rock

23  (Nominees) Limited Isa Acct, Rock (Nominees) Limited Cshnet

24  Acct, Rock (Nominees) Limited Taxfull Acct, Rock (Nominees)

25  Limited Fastrade Acct, Securities Services Nominees Limited

1   2140036 Acct, Share Nominees Ltd, Skandinaviska Enskilda

2   Banken Ab (Publ) 2035260 Acct, Smith & Williamson Nominees

3   Limited Isa Acct, State Street Nominees Limited G007 Acct,

4   State Street Nominees Limited Om01 Acct, State Street

5   Nominees Limited Om02 Acct, State Street Nominees Limited

6   Oq51 Acct, Stifel Nicolaus Europe Limited Nnideal Acct, Svs

7   Securities (Nominees) Ltd Onl Acct, Td Direct Investing

8   Nominees (Europe) Limited Usisa15 Acct, Td Direct Investing

9   Nominees (Europe) Limited Usnom15 Acct, Td Direct Investing

10  Nominees (Europe) Limited Usnom30 Acct, Td Direct Investing

11  Nominees (Europe) Limited Ussip00 Acct, Transact Nominees

12  Limited Integra1 Acct, Victoire Nominees Limited 2193900

13  Acct, Vidacos Nominees Limited 2154 Acct, Vidacos Nominees

14  Limited Igukclt Acct, W B Nominees Limited Isamax Acct, W B

15  Nominees Limited Treaty Acct, Wealth Nominees Limited Wrap

16  Acct, W H Ireland Nominees Limited Isa Acct, The United

17  States of America, Department of Treasury, Internal Revenue

18  Service. Fee Amount $350. Nature(s) of Suit: (13 (Recovery

19  of money/property - 548 fraudulent transfer)), (14 (Recovery

20  of money/property - other)), (72 (Injunctive relief -

21  other)) [1]

22  Private Comment RECEIVED AND RESPONDED JOSEPH ORBACH

23

24

25

```
 1    8-18-08053-ast - Orion HealthCorp, Inc. et al v. Parmar et
 2    al
 3    HEARING re Status Hearing
 4    [1] Complaint by Orion HealthCorp, Inc., Constellation
 5    Healthcare Technologies, Inc., NEMS Acquisition, LLC,
 6    Northeast Medical Solutions, LLC, NEMS West Virginia, LLC,
 7    Physicians Practice Plus, LLC, Physicians Practice Plus
 8    Holdings, LLC, Medical Billing Services, Inc., Rand Medical
 9    Billing, Inc., RMI Physician Services Corporation, Western
10    Skies Practice Management, Inc., Integrated Physician
11    Solutions, Inc., NYNM Acquisition, LLC, NorthStar FHA, LLC,
12    NorthStar First Health, LLC, Vachette Business Services,
13    LTD., MDRX Medical Billing, LLC, Vega Medical Professionals,
14    LLC, Allegiance Consulting Associates, LLC, Allegiance
15    Billing & Consulting, LLC, Phoenix Health, LLC against
16    Parmjit Singh Parmar, Ravi Chivukula, Sotiros Zaharis, Naya
17    Constellation Health, LLC, Alpha Cepheus, LLC, Constellation
18    Health Investment, LLC, First United Health, LLC, Taira no
19    Kiyomori LLC, Blue Mountain Healthcare, LLC, Destra Targeted
20    Income Unit Investment Trust, on behalf of unitholders, a
21    Delaware Statutory Trust, Constellation Health Group, LLC,
22    Constellation Health, LLC, United States Of America, Young
23    Conaway Stargatt & Taylor, LLP (in its capacity as Escrow
24    Agent). Fee Amount $350. Nature(s) of Suit: (11 (Recovery of
25    money/property - 542 turnover of property)), (02 (Other
```

1    (e.g. other actions that would have been brought in state

2    court if unrelated to bankruptcy))), (13 (Recovery of

3    money/property - 548 fraudulent transfer)), (72 (Injunctive

4    relief - other)), (91 (Declaratory judgment)).

5

6    Private Comment RECEIVED AND RESPONDED JOSEPH ORBACH

7

8    8-20-08049-ast - Ehrenberg v. Arvind Walia et al

9    HEARING re Initial Pre-Trial Conference

10    [1] Complaint by Howard M. Ehrenberg in his capacity as

11    Liquidating Trustee of Orion HealthCorp, Inc., et al against

12    Arvind Walia, Niknim Management Inc.. Nature(s) of Suit: (12

13    (Recovery of money/property - 547 preference)), (13

14    (Recovery of money/property - 548 fraudulent transfer)), (14

15    (Recovery of money/property - other)).

16    Private Comment 8/5/21 Appearance 8/5/21 Jeffrey Nolan and

17    Ilan Scharf Lisa Asai Canty

18

19    8-20-08052-ast - Howard M. Ehrenberg in his capacity as

20    Liquidating v. Abruzzi Investments, LLC

21    HEARING re Pre-Trial Conference

22    [1] Complaint by Howard M. Ehrenberg in his capacity as

23    Liquidating Trustee of Orion HealthCorp, Inc., et al against

24    Abruzzi Investments, LLC, John Petrozza. Nature(s) of Suit:

25    (13 (Recovery of money/property - 548 fraudulent transfer))

1    HEARING re [69] Motion to Strike /Preclude Documents and

2    Testimony Filed by Anthony F Giuliano on behalf of Abruzzi

3    Investments, LLC.

4

5    HEARING re [51] Motion to Strike / Plaintiffs Motion to

6    Strike Defendants (I) Motion for Summary Judgment; and (II)

7    Motions to Strike and for Default Judgment. Filed by Jeffrey

8    P Nolan on behalf of Howard M. Ehrenberg in his capacity as

9    Liquidating Trustee of Orion HealthCorp, Inc., et al

10    (related document(s)45).

11

12    HEARING re [37] Motion For Summary Judgment / Notice and

13    Plaintiffs Motion For Summary Judgment, or in the

14    Alternative, Summary Adjudication as Against Defendants

15    Abruzzi Investments, LLC and John Petrozza. Filed by Jeffrey

16    P Nolan on behalf of Howard M. Ehrenberg in his capacity as

17    Liquidating Trustee of Orion HealthCorp, Inc., et al

18

19    Transcribed by:  Rita Weltsch

20

21

22

23

24

25

1    A P P E A R A N C E S :

2

3    PACHULSKI STANG ZIEHL & JONES LLP

4        Attorneys for Plaintiff

5        780 Third Avenue, 34th Floor

6        New York, NY 10017

7

8    BY:  JEFFREY P. NOLAN

9

10   GIULIANO LAW, P.C.

11       Attorney for the Defendant Abruzzi Investments, LLC

12       445 Broadhollow Road, Suite 25

13       Melville, NY 11754

14

15   BY:  ANTHONY F. GIULIANO

16

17

18

19

20

21

22

23

24

25

```
 1                   P R O C E E D I N G S
 2              THE COURT:  I think the only matter we have left
 3     is 20-08052.
 4              MR. NOLAN:  That's correct, Your Honor.
 5              THE COURT:  Mr. Nolan, if you want to disconnect
 6     and log back in with the video or if you just want to stay
 7     with the audio, that's fine with the Court.
 8              MR. NOLAN:  Your Honor, I'm going to be happy that
 9     I'm in front of you on the phone.
10              THE COURT:  All right.  So, what I'm going to do
11     is this.  I've got multiple motions on.  We've got the
12     general pretrial conference, but I think I know what that
13     looks like, then a summary judgment motion, and competing
14     motions to strike.
15              I'm going to start with the Plaintiff.  I'm going
16     to let you each argue for 20 minutes whatever it is that
17     you're going to want to argue, including hopefully,
18     responding to my questions when we get to my questions, so
19     there's got some parameters on this.  And I'll start with
20     the Plaintiff.
21              First, we'll take appearances.
22              MR. NOLAN:  Thank you, Your Honor.  Jeff Nolan
23     appearing on behalf of the Plaintiff, Howard Ehrenberg as
24     the Liquidating Trustee.
25              MR. GIULIANO:  Good afternoon, Your Honor.
```

1    Anthony Giuliano appearing on behalf of the Defendants.

2              THE COURT:  All right.  Mr. Nolan.

3              MR. NOLAN:  Yes, Your Honor, thank you.

4              Your Honor, this is just some background.  So,

5    this matter is a dispute over $250,000, a transfer that the

6    Trustee alleges was a fraudulent conveyance, both

7    intentional fraudulent conveyance, as well as constructive

8    fraudulent conveyance.  I thought it might be smart to just

9    of start big picture here based on where we've been and

10   where we're going.

11             As the Court may recall, we started off Act I in

12   this Parmar play was when Mr. Parmar diverted approximately

13   $6 million from the Debtor, CHT, to purchase the condo at 2

14   River Park in Battery Park, and he moved into it with his

15   girlfriend.  In that case, he claimed that the transfer was

16   a legitimate debt that was owed to him as an insider or

17   officer of the Debtor and, you know, the Court found

18   otherwise.

19             Act II was the adversary I had in front of the

20   Court with the neighbor, Mr. Howard Shore.  Mr. Parmar

21   diverted $160,000 from the Debtor's bank account at Orion to

22   pay back a personal loan that he had taken from Mr. Shore.

23   In the process of that adversary in litigating it, we found

24   evidence of Mr. Parmar creating fake vendor agreements,

25   backdating documents all to cover the diversion or improper

1    use of the Debtor's funds to pay a personal debt, and he did

2    this to try to make it appear like it's a legitimate

3    business debt.

4            Act III, Your Honor, is the adversary that's

5    before you.  In front of the Court is Mr. Petrozza and his

6    investment company, which is admitted Niknim Management --

7    I'm sorry, not Niknim Management -- Abruzzi Investments.

8    Act III involves Mr. -- what is clearly, and it's an

9    undisputed fact that this was not a legitimate business

10   transaction, so I think we're one step further than we were

11   in the Shore case.

12           What's in front of the Court now is Mr. Parmar

13   diverting $250,000 from the Debtor's IOLA account at

14   Robinson Brog to pay his friend, his investment advisor,

15   his, you know, business associate, and there's no issue in

16   front of the Court that this was an illegitimate business

17   purposes -- illegitimate transaction; it didn't have a

18   legitimate business purpose.

19           Now, the wrinkle that's in front of the Court in

20   this matter, Your Honor, is twofold as raised by Mr.

21   Petrozza's counsel who raised primarily two issues.  He

22   actually quite, you know, significantly raises a lot of

23   issues.  I think there's no question that what is in front

24   of the Court has about 20 pleadings and the parties have

25   gone through great extent on both sides to show the

Page 15

1    arguments and the authorities.  But the arguments that are

2    raised to deny the Trustee's motion for summary judgment is

3    that the IOLA account was not the Debtor's funds, and as

4    well as this wrinkle that even though the Defendants admit

5    that the received the $250,000, what they did with it

6    thereafter somehow can transmute the original transaction

7    that they received as the initial transferee.

8         The Trustee's position is it doesn't change

9    anything.  If the fact pattern is in front of us, which is

10   not disputed, that these funds were illegitimate business

11   purpose, not recorded in the Debtor's books and records,

12   which are all undisputed facts, then the amount of money is

13   clawed back into the estate.  And we just simply don't

14   believe that the explanation that's proffered by Mr.

15   Petrozza is a legitimate legal defense; I mean, it may be an

16   explanation as to what happened.  I don't believe the Court

17   has to weigh into it one way or the other because as a

18   matter of law, that explanation is insufficient.

19         THE COURT:  Mr. Nolan, walk through the transfers

20   that result in $250,000 being transferred to the Defendants.

21   Right.  So, I want to understand it there, the initial

22   transferee or not.

23         MR. NOLAN:  Sure, Your Honor.

24         THE COURT:  And I don't need all of the background

25   of the money getting into the Robinson Brog IOLA account

1    because I think you all have stipulated to much of that.  I

2    mean how the money gets out of the IOLA account and finds

3    its way to Abruzzi.

4            MR. NOLAN:  Yes, Your Honor.  So, I believe the

5    stipulated facts are that Mr. Petrozza -- the Defendant, Mr.

6    Petrozza, stated he needed $200,000 for a loan to rent his

7    house, rent a house in Florida.  And he made a text --

8    there's a text message attached to the opposition at 8:39

9    p.m. on the -- on May 24th that he needs this money, and at

10   the same moment that night Mr. Parmar sends an email to

11   Robinson Brog and says, hey, wire $250,000 to Mr. Petrozza.

12   And that $250,000, it's an undisputed fact, ends up in the

13   Abruzzi Investments' checking account; that's the undisputed

14   fact.

15           THE COURT:  But how does it get there, what are

16   the steps that the money gets into the Abruzzi account;

17   where'd it come from?

18           MR. NOLAN:  It came from the Robinson Brog IOLA

19   account.

20           THE COURT:  Directly?

21           MR. NOLAN:  Directly.

22           THE COURT:  Okay.

23           MR. NOLAN:  So, there's no issue from the

24   Plaintiff's perspective there.  I mean, the transaction, Mr.

25   Abruzzi says he needed -- it's an admitted fact -- he wanted

1   the loan, he testified that he needed the money.  Why -- he

2   said he needed $200,000, but he received $250,000.  And

3   also, Your Honor, there is the emails from Mr. Parmar to

4   Robinson Brog and to the attention of Mitchell Greene that

5   says, hey, wire this money to my friend, Mr. Petrozza, and

6   the response comes back, well, what account.  And Mr. Parmar

7   says it doesn't matter, send it from any account.

8           So, the Defendants received the money.  I think

9   that's pretty clear.  And the Joint Statement of Facts, Your

10  Honor, identify exactly when he received the money.  I think

11  the additional statement of facts tried to give the Court a

12  little color as to what exactly happened, meaning it as Mr.

13  Parmar who emailed Mr. Greene, the attorney, and that Mr.

14  Greene then transferred -- instructed Robinson Brog to

15  transfer the money.

16          THE COURT:  Because there are stipulated facts

17  that include a transfer via Wingman Health Corp., and then

18  there's a reference to Abruzzi wiring $250,000 to Sunshine

19  Star, and I'm trying to uncloud the issue.  That's why I

20  asked, how did the money directly get from the Debtors to

21  Abruzzi, and the statement is directly from Robinson Brog

22  IOLA account following the text message and emails.  So, I'm

23  just wondering --

24          MR. NOLAN:  Yes, Your Honor.

25          THE COURT:  So, I'm just wondering what

1    significance, if any, the Wingman Health, and the Sunshine

2    Star have to do with this.

3            MR. NOLAN:  Your Honor, Wingman Health only -- I

4    don't believe Wingman Health directly is -- well, I know

5    it's not directly relevant to this transfer in question.  We

6    had questions probing about Wingman Health because we were

7    trying to establish that there was a history of Mr. Parmar

8    and Mr. Petrozza sending money back and forth between each

9    other.  And that there's also this factual issue that Mr.

10    Petrozza's explanation is that he needed the money to rent a

11    house in Florida and he asked for $200,000; that's an

12    undisputed fact, Your Honor, that's at No. 23 -- Joint

13    Statement of Fact No. 23.  That's a reference to Wingman

14    Health, but that doesn't -- that was from 2015, Your Honor.

15    The transfer in question is in 2017.

16            So, Joint Statement of Fact No. 24 is the

17    immediate answer to your question, which says on June 28th -

18    - I'm sorry, Your Honor, I misspoke, and I can see the

19    Court's basis for the confusion.

20            Joint Statement 24 is the subsequent transaction

21    where Mr. Petrozza and Abruzzi transfer the $250,000 to

22    Sunshine Star.  Mr. Petrozza's explanation --

23            THE COURT:  The stipulation says on June 28, 2017,

24    250 was liquidated from an investment account of Abruzzi and

25    forwarded to Defendant's checking account, but Abruzzi is

1     one of the Defendants and Mr. Petrozza is the other.

2              MR. NOLAN:  Right.  So, Joint Statement of Fact 24

3     and 25 reference the return.  So, there's an initial payment

4     that's made from the Debtor to the Mr. -- to Defendants, Mr.

5     Petrozza, and Abruzzi, and then there's the Defendant's

6     explanation that they simply returned the money to the

7     Debtor.  I call that the return transfer; that happened on

8     June 28th and June 29th, 2017.  Those two Joint Statement of

9     Facts reference Mr. Petrozza's explanation that, hey, even

10    though I got the Debtor's money, I returned it back to the

11    Debtor.  He did not return it to the Debtor, Your Honor; he

12    returned it to Sunshine Star.  His explanation is, well, I

13    was told by Mr. Parmar to return the money to Sunshine Star.

14    I simply followed the directions of Mr. Parmar.  That's the

15    same thing as returning the money to the Debtor.

16              So, it's an undisputed fact that Mr. Petrozza and

17    Abruzzi returned the $250,000 that they received to a third

18    party, Sunshine Star.

19              THE COURT:  All right.  And so, the date of the

20    transfer out of the IOLA account to Abruzzi and/or Petrozza

21    is what date?

22              MR. NOLAN:  May 24th -- so, May 24th, 2017.  So,

23    additional Statement of Fact 53 references the --

24              THE COURT:  That's not a stipulated fact.

25              MR. NOLAN:  No, Your Honor, that's Plaintiff's

1    additional Statement of Fact 53, and Additional Statement 55

2    shows that it was received at the Abruzzi account on May

3    25th, 2017, which is the next business day.

4            THE COURT:  Okay.  So, the parties were not able

5    to stipulate to those facts in Paragraphs 53, 54, and 55?

6            MR. NOLAN:  Your Honor, there are bank state --

7    well, you're going to have to ask.  I think it's not a

8    disputed fact that on May 25th, 2017, the Defendant received

9    the monies, the $250,000.  I mean, the Defendant did submit

10   to the Court in their opposition the IOLA account from

11   Robinson Brog.  It shows the $250,000 leaving the IOLA

12   account and it being received by Abruzzi Investments, LLC.

13           THE COURT:  In an Abruzzi account, but not in a

14   Petrozza account.

15           MR. NOLAN:  Well, Your Honor, the -- at the very

16   beginning of the Joint Statement of Facts -- that's correct.

17   The parties stipulated that Abruzzi Investments, LLC has no

18   employees, officers, or directors, but is managed by Mr. --

19   Defendant, Mr. Petrozza, solely for the purpose of investing

20   his monies.  And his testimony was that once he got the

21   money into the Abruzzi Investments account, he used it to go

22   rent a property, a house in Florida.

23           THE COURT:  Doesn't that make him a subsequent

24   transferee?  Isn't Abruzzi the initial transferee and

25   Petrozza is the subsequent transferee?

1          MR. GIULIANO:  Your Honor, can I jump in for a

2   second just to clarify that?

3          THE COURT:  Not yet.  I'll come to you in a

4   minute.

5          MR. GIULIANO:  All right, no problem.  Thank you.

6          MR. NOLAN:  Your Honor, so we briefed the issue of

7   initial transferee -- so, yes, I would agree with the Court

8   that the facts evidence that the money went into the

9   Defendant Abruzzi Investments, LLC's bank account.

10          THE COURT:  All right.

11          MR. NOLAN:  And the facts also evidence that

12   thereafter, Mr. Petrozza, you know, utilized that account to

13   rent the house.

14          THE COURT:  All right.

15          MR. NOLAN:  So, I would agree with the Court then.

16   Then I guess that would make -- if you don't believe that

17   Abruzzi Investments and Mr. Petrozza are one in the same,

18   that at least from connecting the dots, yes, the initial

19   recipient of the funds was Abruzzi Investments, LLC.

20          THE COURT:  All right.

21          MR. NOLAN:  Your Honor, there's other evidence as

22   well.  I mean, there's --

23          THE COURT:  We've been down the antecedent debt no

24   consideration issue.  That's all in the papers and we've

25   seen it in other adversaries including Aquila with which Mr.

1    Giuliano is familiar.  I'm just trying to get through to the

2    basic -- baseline, you know.  The Trustee claims that the

3    Debtors owned several million dollars in the Robinson Brog

4    IOLA account.  On request $250,000 was transferred out to

5    the Abruzzi entity.  Mr. Petrozza then uses that money for

6    his own benefit.  Trustee says no consideration, no

7    antecedent debt, give us back the 250.

8            MR. NOLAN:  Yes, Your Honor.

9            THE COURT:  All right.  Let me let Mr. Giuliano

10   then address the issues, then I am going to come back.  I

11   did say 20 minutes, but I am going to come back to you for

12   the balance of your time, Mr. Nolan, because I know there

13   are issues about the M&T bank subpoena that Mr. Giuliano may

14   want to raise, and then I'll come to you for a response on

15   that.

16           MR. NOLAN:  Okay, Your Honor.  Thank you.

17           THE COURT:  Thank you.  All right, Mr. Giuliano.

18           MR. GIULIANO:  Thank you, Your Honor.  I too will

19   start with a big picture, or if it's not a big picture, what

20   it really is is a simplified picture of the facts in this

21   case.

22           Because one of the difficulties we have here is

23   there are many Debtors, and one of the issues that I raised

24   is the Plaintiff cannot identify which Debtor, if any

25   Debtor, these funds came from, and that's germane because

Page 23

1    there are no triggering creditors for many of the Debtors in

2    this case that would empower the Trustee to bring this

3    action.  So, the Trustee shows as an exhibit, oh look, this

4    Debtor had a judgment, this Debtor was in a lawsuit, but at

5    no time does the Trustee says and it's either that Debtor or

6    the other Debtor that the money was transferred from.

7              And in fact, Judge, when we talk about the

8    Robinson Brog account, the only evidence that we have with

9    respect to where that money came from identifies the funds

10   that were taken out -- or I should say identifies the IOLA

11   subaccount as a non-Debtor account.  So, we have a situation

12   where facially the document says this is a non-Debtor

13   account; that's the Robinson Brog -- Robinson Brog produced,

14   I believe to the Court as well, a spreadsheet.  And on the

15   spreadsheet, it says here's all the accounts, these two are

16   not Debtor accounts, and one of those two accounts is the

17   account that the $250,000 came from.  The $250,000 does go

18   into an Abruzzi account.

19             Where Plaintiff is wrong is that the whole -- the

20   Defendant Petrozza --

21             THE COURT:  Mr. Giuliano, one second.  Are you

22   saying that under my order, Robinson Brog turned over to the

23   estate funds that did not belong to one of the Chapter 11

24   Debtors?

25             MR. GIULIANO:  No, Your Honor.  What I'm saying is

1  I think Your Honor compelled them to produce an unredacted

2  document that shows the Robinson Brog accounts and the

3  subaccounts in the IOLA, and that when that was produced, it

4  said here's all of the accounts, these two are non-Debtor

5  accounts.  Now, I honestly don't know what happened to the

6  funds after that.  I don't know if they're with Robinson

7  Brog, they're with the estate.  Honestly, I don't know.

8  What I do know is that exhibit says here's a breakdown;

9  these two are non-Debtor accounts, the rest are Debtor

10  accounts.  It's one of the exhibits that I produced.

11         THE COURT:  All right.  So, you're essentially

12  arguing, is this a tracing issue that your client is saying

13  we don't -- the Trustee hasn't proven that the IOLA transfer

14  by -- your client isn't saying the IOLA transfer didn't

15  happen; you're not saying the money didn't go out or the

16  money wasn't received, the $250,000.

17         You're -- if I hear you correctly, you're saying

18  on summary judgment the Trustee hasn't proven that the money

19  came from an entitlement of one of the bankruptcy Debtors;

20  that the IOLA account was not established for one or more of

21  the bankruptcy Debtors or didn't possess funds belonging to

22  one or more of the bankruptcy Debtors.

23         MR. GIULIANO:  That's right, Judge.  But

24  additionally, it's -- the Plaintiff has not established

25  which Debtor's funds were transferred if at all.  I'm

1    arguing that facially, it shows that it's not the Debtor's

2    funds based upon these exhibits.  But there are -- most of

3    the Debtors in this case do not have a triggering creditor

4    for purposes of the Trustee being able to set aside this

5    particular transaction which happened quite a few years ago.

6            So, I'm saying that even if the Court says, well,

7    it is our Debtor's money maybe, one of the Debtors' money,

8    my second argument is that, but it's not a Debtor with a

9    triggering creditor.  This case was never substantively

10   consolidated, so it matters whose money is involved in this

11   transfer and it matters because some of -- the Trustee would

12   lack the capacity to sue because there are -- some of the

13   Debtors don't have triggering creditors.  So, that's that

14   part of the argument.

15           THE COURT:  Is that true as to CHT, Constellation

16   Healthcare Technologies?

17           MR. GIULIANO:  Your Honor, I don't know which of

18   the two -- let me take a look.

19           Mr. Nolan, if you know, you can just please let me

20   know.

21           MR. NOLAN:  Is the question --

22           THE COURT:  The additional facts on which there's

23   no stipulation is that multiple millions of dollars went out

24   of Debtor, Constellation Healthcare Technologies, Inc., to

25   Robinson Brog.  At year-end 2016, the IOLA balance that's

1    reflected on the Constellation Healthcare Technologies

2    ledger was $7.2 million, $7.255 million, which is virtually

3    the same as the amount in the IOLA account and that's

4    several months before the transfer to Abruzzi.  And I

5    believe there's also a non-stipulated material fact as to

6    the existence of the liability judgment against CHT before

7    the transfer.

8              Mr. Nolan?

9              MR. NOLAN:  Correct, Your Honor.  So, Your Honor,

10   the Plaintiff's position is we can show monies being sent

11   from the Debtor's bank account at Orion directly into the

12   Robinson Brog IOLA account.  We can show funds -- and this

13   is for the millions of dollars.  We can show funds being

14   sent from CHT into the Debtor -- into the Robinson Brog IOLA

15   account for millions of dollars.  And both -- at the time of

16   those -- at the time of the transfer, there existed a

17   judgment against Orion, and there also existed a lawsuit

18   that ended up being a judgment against CHT and Physicians

19   Practice Plus, and both of those judgments were unsatisfied

20   at the time of the filing of the petition.

21             So, we prove -- we can prove to the Court that the

22   Debtor's monies were going into this IOLA account, but our

23   motion also sets forth five or six other separate factually

24   and legally significant reasons why the monies that are in

25   the IOLA account are the Debtor's funds.  They're the

1    Debtor's funds, not only because the Debtor's monies can be

2    directly traced into the IOLA account, but they're also the

3    Debtor's funds because the Debtor reported those in their

4    financials as being the Debtor's cash funds.

5           The Debtor communicated with Robinson Brog and

6    always treated the funds in the IOLA account as their -- as

7    the Debtor's monies.  The Debtor controlled the distribution

8    of funds paying illegitimate and legitimate debts out of the

9    IOLA account, and control is a significant legal element to

10   prove property of a Debtor.

11          The IOLA account was recorded as an asset of the

12   Debtor on the general ledger of the Debtor.  In all of the

13   historical treatment of the IOLA account between the Debtor

14   and Robinson Brog and for third parties where it's an asset

15   of the estate.  And we cited to the Court legal authority

16   that says that where an account is listed in a debtor's

17   records, it's a proper finding that an asset was property of

18   the estate.  The last --

19          THE COURT:  I think the question Mr. Giuliano is

20   raising is which Debtor or Debtors?

21          MR. GIULIANO:  Right.

22          THE COURT:  Is it CHT, is it Orion, is it the

23   Phoenix practice; which Debtor reported the IOLA funds as

24   its property at year-end 2016, or were there multiple

25   Debtors claiming different pieces of it?

1          MR. NOLAN:  Correct.  And remember, Your Honor --

2    Your Honor may recall this -- well, let me just -- if the

3    Court would be so permitted.  There's one other piece of

4    fact I'd like to put on the table about this.

5          I don't agree that there are subaccounts in the

6    IOLA account, and that -- I mean, what is really is they're

7    just ledger entries at Robinson Brog.  But if you look at

8    the Robinson Brog IOLA account and the entry where the

9    $250,000 went to Abruzzi Investments -- and I raised this in

10   the reply brief -- you can see that the source of those

11   funds was the go-private transaction, at least from a

12   perspective of making a ledger entry in the IOLA account.

13         Now, the Defendant doesn't dispute that the law

14   firm can't control this account; that the Debtor controlled

15   the account.  And that deposit that happens in the end of

16   2017, where it's reflected as February 3rd, 2017, that is

17   $46 million, Your Honor, that come in as a result of the go-

18   private transaction.

19         That go-private transaction was a result of the

20   Debtor signing the credit agreement with Bank of America.

21   It was (indiscernible) by and signed by all of the Debtors.

22   All of the Debtors signed the credit agreement and said that

23   each Debtor was personally or was independently liable for

24   that loan.  As a result of that credit agreement, 64 million

25   of that money gets peeled off by Mr. Parmar and gets

1    transferred into the Robinson Brog IOLA account underneath

2    this book entry Constellation Health/CHT closing.

3            Now, Mr. Giuliano says, well, gee, Plaintiff has

4    to tell us which Debtor those funds came from.  And my

5    response to that is -- and my response in the motion, Your

6    Honor, was that's not what the state of the law is.  The

7    state of the law is that once the summary judgment motion

8    proves that the money that went into the account came from a

9    Debtor's source -- and I've proven that it's come from CHT,

10   from Orion, and now I've proven from the go-private

11   transaction that this was an obligation of all the Debtors

12   to get the money from Bank of America.  Once that's

13   established, the burden shifts to the Defendant to prove or

14   to trace that the money belongs to somebody else.  And

15   that's In re FBI Winddown, Inc., 581 B.R. 116 at 130.

16           So, I don't -- we would not agree with Defendant's

17   assertion that we have to show that it was one particular

18   Debtor.  Because think about why this Robinson Brog IOLA

19   account was created.  It was a slush fund that Mr. Parmar

20   was moving money to, and we have proven in this motion

21   exactly where the money came from.  And the standard for

22   proving that a property interest of the Debtor is just that

23   the Debtor has an interest in the property, either equitable

24   or legal.  And once we proved that the Debtor has an

25   equitable right or a legal right to the property in the IOLA

1    account, then it's considered to be property of the estate,

2    and I think we've sufficiently satisfied that.

3            Now, the one piece of evidence that's submitted by

4    the Defendant is attached to the sur-reply, and it's a

5    letter from Miriam Harris, who says that in 2018, that Mr.

6    Simpson told her that one of Mr. Parmar's clients said that

7    the money in the IOLA account was theirs.  But that's the

8    only piece of evidence that's in front of this Court that

9    the money in the IOLA account belongs to somebody else.

10   It's a letter from four years ago between two lawyers where

11   one lawyer says, hey, somebody told me that they believe

12   that that money in the IOLA account is theirs --

13           THE COURT:  What was the amount of the credit

14   facility, the Bank of America incident to the January 2017

15   go-private transaction?

16           MR. NOLAN:  $130 million, which is a -- it's a

17   stipulated fact between the parties, Your Honor, and it's

18   Stipulated Fact 19.  And it's an Additional Statement of

19   Fact -- excuse me, Your Honor, let me just find this

20   Additional Statement of Fact.

21           THE COURT:  Mr. Giuliano, if the go-private was

22   January 2017 to which the Debtors bound themselves to a

23   credit facility of over $150 million, the $250,000 was

24   transferred to Abruzzi four months later.  Why are we

25   fishing for a triggering creditor?  There's a $150 million

1   credit facility.

2          MR. GIULIANO:  Your Honor, I don't know that --

3   again, what I believe is the case is that facially, absent

4   proof -- and that's the key, that's the key to a lot of

5   what's going on here -- I know that I have is a document

6   produced in response to a request from Plaintiff that shows

7   various subaccounts.

8          THE COURT:  Oh, I'm not -- you're not answering

9   what I asked.

10          MR. GIULIANO:  Oh, I'm sorry.  I'm sorry, Judge.

11          THE COURT:  The Debtors, as defined by all the

12   Debtors that filed for Chapter 11, committed themselves,

13   some, or all, to $130 million-ish credit facility in January

14   of 2017.  Do I have that timeline wrong, Mr. Nolan?

15          MR. NOLAN:  That's correct, Your Honor, January

16   2017.

17          THE COURT:  And then four months later, $250,000

18   is transferred out from an IOLA account to Abruzzi

19   Investments.  So, there's your triggering creditor.  Why are

20   we talking about creditors who remain unpaid?

21          MR. GIULIANO:  Your Honor, can a secured creditor

22   be a triggering creditor?  I don't believe they can.  And at

23   that moment in time, they were a secured creditor.  So, at

24   the -- I'm sorry, Judge.  I believe a triggering creditor

25   has to be an unsecured creditor, and they were not an

1       unsecured creditor at the time of the transfer.

2               But -- and again, Your Honor, it becomes a

3       confusion because of that.  Mr. Nolan keeps saying the

4       estate and the Debtor.  Now if they wanted to say that these

5       are really just one entity, they should have substantively

6       consolidated, but they didn't.  So, now we're stuck with a

7       situation where there is a secured creditor maybe that

8       existed or there's a creditor that existed that's a secured

9       creditor that's not a triggering creditor, so we get back to

10      the problem of who's the creditor that is harmed by that

11      transfer.

12              And Judge, that's just the tip of the iceberg

13      because I really want to focus.  It's a very simple argument

14      with respect to what happened here.  My client -- well, one

15      of the Defendants, Mr. Petrozza, asked Mr. Parmar for funds

16      so that he could rent a house in Florida.  Mr. Parmar said,

17      all right, I'll wire you the funds, send me wiring

18      instructions.  Wiring instructions were sent and the funds

19      went into Abruzzi Investments.  The house fell through.  The

20      funds didn't go anywhere.  So --

21              THE COURT:  What difference does that make?  Did

22      he give the money back?

23              MR. GIULIANO:  Well, my argument is he gave the

24      money back.

25              THE COURT:  To the source that sent it to him?

1          MR. GIULIANO:  To -- at the direction of the

2     Debtor.  In other words --

3          THE COURT:  Yeah.  What difference does that make?

4     For fraudulent transfer purposes, this is that same -- you

5     know, I went into Starbucks, put $10 down, went down the

6     street and took a pizza out of Pizza Hut.  Well, I put $10

7     down and I got a pizza, yeah, but you didn't pay Pizza Hut

8     for it.

9          So, if he receives $250,000 from Constellation

10    Healthcare Technologies for no apparent reason other than he

11    asked Mr. Parmar for money, and then the Debtor says -- and

12    then Mr. Parmar says, well, now pay it back to this other

13    entity and he does that, that's not a defense on an initial

14    fraudulent transfer.

15         MR. GIULIANO:  Judge, I don't agree that the facts

16    should be said that way.  Here's what I think happened.  Mr.

17    Petrozza said I'll give you the money back and Mr. Parmar

18    said, all right, send it here.  Now, if that is to be

19    concluded as a fraudulent conveyance, that would lead to

20    preposterous results entirely because you would never be

21    able to pay or even have the ability to pay any creditor

22    unless you went there and identified that that's the exact

23    address that those funds should go to.

24         Remember, these are wiring instructions.  So, Mr.

25    Parmar says, hey, I want to pay you back and he says, all

1    right, I'll send your secretary wiring instructions.  They

2    send the wiring instructions and Mr. Petrozza has it wired

3    back.  I can't -- and there is no case that you can show

4    that I have seen where it was this transaction like this,

5    where the Defendant is saying I want to pay you back, tell

6    me what to do with this money.

7              Now, if you said that to me, Judge, can I borrow

8    $10 and I said, yeah, and then I said, Judge, I want to pay

9    you and you said, okay, mail it here, and that mail happened

10   to not be your mailbox.

11             THE COURT:  Well, it's not mail it here.  It's

12   like saying, well, I got a bill from American Express and I

13   sent $50 bucks to Mastercard, why is American Express mad at

14   me.

15             MR. GIULIANO:  No.  I think it's --

16             THE COURT:  Because you didn't pay the person that

17   you got the money from.

18             MR. GIULIANO:  Right.  But I think here I said I

19   called American Express in your analogy and said, I want to

20   pay you, where do I send the money, and they said send it

21   here.  It has to be different.  It cannot be that that's a

22   fraudulent conveyance, Judge, it can't be.

23             And that's -- now, I am not getting into arguments

24   because I don't believe that they have evidence in

25   admissible form, they do not have -- and that goes to my

1    motion to preclude, which I'll raise and for which I can

2    sort of fold into that.

3              THE COURT:  Yeah, let me get to that real quick.

4    Because on M&T, which is a big part or some part of your

5    motion to strike, your papers, your pleadings, your signed

6    pleadings say strike any evidence they got from M&T because,

7    one, we didn't get the subpoena and, two, we didn't get the

8    records.  Whether or not your client was entitled to the

9    records, you can argue about.  But the Plaintiff says, yeah,

10   here's where we served your prior counsel with the subpoena

11   and, yeah, here's where we served your prior counsel with

12   the records.  So, what is the M&T about?

13             MR. GIULIANO:  Judge, I don't see that argument.

14   I didn't even realize that's an argument made by anybody.

15             THE COURT:  Mr. Nolan.

16             MR. GIULIANO:  In fact, I don't see a response to

17   that motion.

18             THE COURT:  Mr. Nolan.

19             MR. NOLAN:  Yes, Your Honor.  I filed it.  I

20   produced to -- attached to my second declaration the

21   subpoena.  Unfortunately, you know, Mr. Petrozza was between

22   switching lawyers.  Mr. Giuliano came on I believe in

23   November and the prior lawyer, you know, dropped in November

24   and the subpoena was served in September, so it was all

25   served on counsel of record at the time.  And I even

1    produced it to Mr. Giuliano in the document production.

2            Your Honor, so that's my response on that issue.

3            But if I may just kind of finish the Court's

4    thoughts on one thing.  I addressed in my papers at Docket

5    No. 56, Page 15, Paragraph 30 that there is no defense that

6    -- I called it the, "I transferred it someone else weeks

7    later" defense.  That's not a legally cognizable defense in

8    New York or anywhere in the United States, that I passed the

9    funds downstream and I'm relieved of my obligations for

10    receiving the funds.

11            And Mr. Giuliano says, well, I haven't found a

12    single case or seen a single case that deals with this.

13    Your Honor, the proper way to say that is there's not a case

14    that supports the Defendant's position that you can transfer

15    downstream and use that as a cognizable defense.  That's why

16    I originally said, look, that's an explanation but it's not

17    a legal defense.

18            And then on the issue of whether or not BofA is a

19    secured creditor or unsecured creditor, plenty of parties

20    start out thinking that they're a secured or make a claim as

21    a secured creditor.  At the end of the day, if they don't

22    have assets to support it, they're an unsecured creditor.

23    And we know, because we stipulated to it, a fact, that BofA

24    is owed $158 million right now.  There's not enough money in

25    this estate to pay secured creditors right now.

1          So, I think sometimes, and I understand why the

2    Defendant is pressing so hard on so many different

3    arguments, but at the end of the day, the evidence that this

4    money that came out of the IOLA account was somebody else's,

5    there's only a letter.  There's a single letter in 2018 that

6    says somebody claims that the money in the IOLA account is

7    theirs, and I don't think that's admissible evidence.  But

8    we went out of our way and spent a lot of time to show all

9    the different arguments why the Debtor does have a right, an

10   equitable and a legal right, to the monies that came out of

11   the IOLA account.

12         And Joint Statement of Fact No. 18 is exactly what

13   the Court said.  It's a stipulated fact that on January

14   30th, 2017, approximately 46 million that resulted from the

15   go-private transaction was transferred into the Debtor's

16   IOLA account at the firm of Robinson Brog and listed under a

17   caption that reads, "Constellation Health/CHT closing."  And

18   that's where the money came from: $250,000 came out of that

19   account, it's on the Debtor's books and records, and it goes

20   to Mr. Petrozza in Abruzzi Investments for an obligation

21   that doesn't appear on the Debtor's books and records.

22         Now I think that the Court can dismiss a lot of

23   these arguments that, you know, Mr. Petrozza was a victim

24   and that he had good faith in transferring it to Sunshine

25   Star because he has to prove good faith and he has to prove

1    that he gave value, and under 548(c), he's got to prove that

2    he gave value to the Debtor.  And he didn't give it to the

3    Debtor; he gave it to Sunshine Star.

4           He's also an insider, Your Honor.  He's the

5    largest shareholder.  He filed a proof of claim saying he's

6    a 49 percent shareholder of the Debtors, which makes him an

7    insider.  And it's Black letter law in New York that you

8    cannot receive a transfer in good faith if you're an

9    officer, director, or major shareholder of a Debtor, and

10   that was part of the Court's rejection of Mr. Parmar's

11   argument for the 2 River Terrace property is that he got the

12   money and he was an insider.  American Media v. Bainbridge,

13   135 A.D.3d 477, and there's just a plethora of authorities

14   that say if you're an insider, you can't take a transaction

15   in good faith, even if you gave value.  Even if he

16   legitimately gave value back to the Debtor or to some other

17   third party, he could not have taken it in good faith.

18           I don't know how the Defendant can respond to

19   that.  They didn't in their papers.  Instead, they went in a

20   lot of different other directions, but I just think that's a

21   fact that even if we had a trial and took up three days in

22   front of Your Honor, at the end of the day, the undisputed

23   facts are he's a major shareholder, he's an insider.

24           And even more compelling than that is the Joint

25   Statement of Fact that says that Mr. Petrozza was the one

1    who approved the go-private transaction.  Joint Statement of

2    Fact No. 14.  "In November 2016, as part of the go-private

3    transaction, Defendant Petrozza met with Parmar and the

4    board of directors and approved the go-private transaction

5    so they could all make a gazillion dollars."

6              So, the facts in front of the Court are that Mr.

7    Petrozza and Mr. Parmar approved the go-private transaction;

8    they load up the Debtor with $160 million worth of debt.

9    And then three months after the transaction, the go-private

10   transaction in January of 2017, in May of 2017, the

11   Defendants get $250,0900 of it.  That's a tough fact, Your

12   Honor.

13             THE COURT:  Mr. Giuliano, other than you haven't

14   read a case that says -- did you cite any authority for the

15   proposition that following the direction of the potentially

16   co-insider of the Debtors to send the money to entity X

17   instead of entity A is somehow a defense to a fraudulent

18   transfer; any case law in the brief on that?

19             MR. GIULIANO:  Your Honor, there is case law in

20   the brief that establishes a few things: one is that under

21   simple contract law, if I am directed to send money back by

22   a party, I have in fact repaid that party.  So, what you

23   have here -- remember, unless you impute actual fraud which

24   you -- on my client, which I do not believe to be done on

25   summary judgment in the first instance, what you have is a

Page 40

1   party who at the direction of the lender paid -- transferred

2   funds in order to repay debt.

3           THE COURT:  Are you disputing that Mr. Petrozza

4   was the majority shareholder in at least the parent company

5   at the time he received the 250 or Abruzzi received the 250

6   and then he sent it on or back or otherwise to Sunshine

7   Star?

8           MR. GIULIANO:  Your Honor, he was a share --

9           THE COURT:  This isn't like somebody walking by on

10  the street.  This was a guy who was apparently inside while

11  all the action was going on.

12          MR. GIULIANO:  Well, I don't believe that that's

13  the case, Judge, because he was on the outside hoping -- in

14  an entity that was looking to purchase the -- I believe it

15  was to Orion for the -- he was involved in an outside

16  entity, not one of the Debtors.

17          THE COURT:  What was he a 49 percent shareholder

18  of?

19          MR. GIULIANO:  He was a 49 percent shareholder --

20  let me see if I can get the name of that entity, but it's

21  not one of the Debtors.

22          MR. NOLAN:  Joint Separate Statement of Fact No. 7

23  says exactly who he was a 40 percent member interest of,

24  which was Constellation Healthcare Technologies, Inc.

25          THE COURT:  That's kind of the mothership, isn't

1    it?

2              MR. NOLAN:  It is.

3              MR. GIULIANO:  There are -- well, hold on a

4    second, Judge.  I want to just -- I don't know if the --

5    Constellation Healthcare Technologies, Inc. is -- there are

6    similar-named entities.  Is that the exact name of the

7    (indiscernible), because what happened is there was an

8    entity that was supposed to make a purchase.  So, he was not

9    -- and, in fact, Judge, I think they objected to his claim

10   saying you don't own an interest in -- you're not an equity

11   holder in one of the Debtors; you're an equity holder in a

12   non-Debtor that wanted to purchase an interest in the

13   Debtor.  And I believe that's the basis for part of their

14   complaint and part of their objection to claim in the

15   complaint.

16             I don't have the -- and, Your Honor, I know it's

17   in the papers, but I don't have the name of that entity

18   somewhere, but it's not the Debtor directly.  It was an

19   entity that was supposed to be a part of or buy one of the

20   Debtor entities.

21             THE COURT:  All right.  But again, on your

22   client's defense of I paid it back and I didn't know any

23   better would seem to be tempered by the extent to which he

24   would be found after a trial on the merits to have been an

25   insider in this go-private transaction in the series of --

1    some of which are just alleged -- or agreed to have been

2    sham transactions.

3              So, if there's a fact issue on that and, you know,

4    Mr. Petrozza wants to come testify about what he knew and

5    when he knew it, we can do all that.  But I have to ferret

6    through the record to see if I even have a fact issue

7    because again, the purpose of a trial over summary judgment

8    is to ascertain the veracity of facts to which there's a

9    genuine dispute.

10              MR. GIULIANO:  That's right, Judge.

11              THE COURT:  And so, I have to ascertain what facts

12    are actually in genuine dispute.  And if one of them, if

13    there is a genuine dispute on the sort of innocent payor

14    defense, then I suppose Mr. Petrozza can come in and testify

15    about what he knew and what he did, and when he knew it and

16    when he did it.  But that would seem to be, at most, limited

17    to this innocent payor defense, that somehow if he received

18    -- if Abruzzi received a fraudulent transfer from

19    Constellation Healthcare Technologies, Inc. when his, at

20    least as alleged partner in the business said, well pay it

21    to the other entity and he does that, that that somehow

22    makes him a good -- well, I'm not even sure what the label

23    would be because your defense isn't good faith transferee;

24    you're just saying we paid the money back and therefore

25    there's no fraudulent transfer.

1          MR. GIULIANO:  That is one of the defenses, that's

2     right, Judge.  I also -- bear in mind that there --

3          THE COURT:  But there's no consideration defense.

4     I mean, I don't think anywhere in the papers is your client,

5     either of your clients saying we were owed money by one or

6     more of the Debtors at the time they gave us the $250,000

7     and here's the evidence of the antecedent debt.

8          MR. GIULIANO:  No, Your Honor, I do believe that's

9     in there as well.  I think the -- one of the Debtors owed my

10    client $300,000.  In addition, my client had conveyed, I

11    think the number is four point -- there is a sum of money

12    that was transferred initially, this was before that -- I

13    think it was four -- over $4 million by Abruzzi or Petrozza

14    to an IOLA account that was being held at Robinson Brog.

15         THE COURT:  So, in the summary judgment record,

16    there's a note or other evidence of obligation owed, because

17    an equity investment doesn't count.  So, is there somewhere

18    in the summary judgment record the note or other instrument

19    executed by one or more of the Debtors under which they were

20    contractually obligated to repay the sum of $4 million or

21    some other amount or any other amount to Abruzzi

22    Investments?

23         MR. GIULIANO:  No, there's no note; there is just

24    evidence of the transfer from Abruzzi to one of the Debtors.

25    I believe in the record, there is --

1          THE COURT:  In support of what?

2          MR. GIULIANO:  As evidence that there were

3     transfer -- that there were significant funds that were

4     transferred to the -- to one of the Debtors by the Defendant

5     -- I think it was Abruzzi that transferred it.  And in

6     addition, an additional 300,000 was also transferred --

7          THE COURT:  Other than as equity investments,

8     because equity investments don't count for antecedent debt.

9          MR. GIULIANO:  Right.  But again, my recollection,

10    Judge, is that the entity -- that it wouldn't have been

11    equity investment.  It wasn't funds -- they weren't getting

12    an interest in the Debtor, and I clarify that.  I just --

13    it's not in front -- I'm trying to find it in the initial

14    motion.  But if you bear with me a second, Judge, I can try

15    and find it.

16          But the monies -- that's another thing, Judge,

17    just so you know.  The money was meant for this transaction,

18    which was not to purchase an equity interest in the Debtor,

19    but that money ended up in one of the Robinson Brog

20    accounts.  So, he -- and I'm just trying to find it, Judge.

21    I apologize.  There is actual dollars -- I'm sorry, Judge,

22    bear with me a second if I can find it.

23          THE COURT:  Well, Stipulated Fact 35 is that

24    Defendant Petrozza asserts he was at investor at the time of

25    the go-private transaction as he wanted to grow his

1    investment of 4 million to 16 to 24 million, so you all

2    agreed on the word investor.

3            MR. GIULIANO:  No.  I -- what I agreed on was that

4    he thought he was and that's why I agreed to it.  He thought

5    that's what was happening, but it didn't in fact happen.

6            MR. NOLAN:  Well, Joint Statement of Fact --

7            MR. GIULIANO:  Your Honor, I guess --

8            MR. NOLAN:  -- 6, 7, and 14 -- sorry about that,

9    Anthony.  Joint Statement of Facts, I don't think Anthony

10   and I will disagree that Joint Statement of Facts 6, 7, and

11   14 all show that Mr. Abruzzi filed a proof of claim in the

12   case saying that they're a controlling shareholder in

13   Constellation Healthcare Technologies, Inc. and --

14           MR. GIULIANO:  Right.  And I don't think anybody

15   would deny either that you objected to that that that's not

16   a true statement.

17           THE COURT:  Hang on though.  But the filing of a

18   proof of claim is still prima facie validity of the claim

19   itself as long as the claim form is properly filled out and

20   executed, and I'm not hearing anybody saying it wasn't

21   properly filled out, executed, and filed.  There may be an

22   objection to it by the Trustee, but the claimant doesn't get

23   to say I never said that.

24           MR. GIULIANO:  No, Judge.  I think it's, again, I

25   mean, this is sort of going in a deeper direction.  But I

1  think he -- what was important was what he thought and what

2  reality is.  Now, if it doesn't matter what reality is and

3  only what he thought, okay.

4          THE COURT:  What he thought was he was a 49

5  percent owner of Constellation Healthcare Technologies at a

6  time --

7          MR. GIULIANO:  And he wasn't I think.

8          THE COURT:  -- at a time when he received $250,000

9  from an IOLA account in which Constellation Healthcare

10  Technologies had a legal interest, then later repaid it

11  back, he says, because Mr. Parmar said to, to a different

12  entity other than the one in which he paid it saying, yeah,

13  I didn't know any better, how was I supposed to know.

14          MR. GIULIANO:  Judge, I'll go one step further.

15  He doesn't even know what it got it transferred to; it went

16  to his assistant.  He said, send my assistant the wiring

17  instructions and I'll mail -- and I'll wire it back.  And

18  then I produced the emails between the bank and Parmar and

19  my client's assistant that says, okay, send me the wiring

20  instructions.  Okay, here's the wiring instructions, and

21  then off it went at the behest of those who -- of Mr. Parmar

22  to wherever that was, all right.

23          So, the case law, when you read the case law about

24  the initial transferee -- and, Judge, I have another

25  argument in there that if Robinson Brog was so intertwined

Page 47

1    in these bad acts that they could be deemed to be the

2    initial transferee, and there's case law on that.  But I

3    just want to skip it for now and say that --

4              THE COURT:  I think the Second Circuit has sort of

5    closed that loop as a recipient as opposed to a transferee.

6    But --

7              MR. GIULIANO:  Right.  Certainly, the -- well, it

8    depends.  And, Judge, that's why I think that they've closed

9    that loop insofar as you can make a distinction between a

10   recipient and initial transferee, and you're supposed to do

11   that.  And that's what I'm saying the Court should do here.

12   He's just a recipient.  And the case that I cite to this In

13   re BICOM NY, LLC, which is in the District Court of the

14   Southern District of New York, it's 20-cv-8022, breaks out

15   that analysis in great detail and basically says, yeah, we

16   know this person got the money and it went into their joint

17   bank account, and then it went out of the joint bank

18   account, and it went to -- for some fraudulent means.  But

19   that person wasn't -- the joint owner wasn't aware that it

20   was going somewhere improper and had no real knowledge of

21   it.  And the District Court said you can't say that that

22   person's an initial transferee.

23              That money just sat in my client's account, in

24   Abruzzi Investments' account until it wasn't -- and it

25   wasn't needed and then he said I want to pay you back.  Now

1    again, if you want -- I think it would take a lot more than

2    summary judgment to say you have to establish that he knew

3    that there was some sort of premeditation or collusion

4    between the two of them, saying all right, I'm going to --

5    you send it to me and I'll forward it on to wherever this

6    went, but the facts don't show that.  And it clearly shows

7    that the wiring instructions were never part of anything

8    that Mr. Petrozza got.  It just -- he just said I want to

9    pay you back, tell me where to pay it, and he did it.

10              THE COURT:  All right.

11              MR. GIULIANO:  And really, Judge, I mean, you

12   know, obviously, you'll have the papers to read, but I just

13   -- to me, there's something fundamentally different.  And

14   even when you get into the case law, when they find that the

15   person who was holding the account was holding the account,

16   you know, on behalf of the Debtor, it was always with the

17   intention of converting the funds or hiding it from

18   creditors.  That's what you're going to find in the case

19   law, except this case where I cited that says, well, that's

20   not the case here, they didn't know and it wasn't

21   intentional and you shouldn't be held liable when all you

22   did was follow instructions given to you.

23              But anyway, thank you, Judge.

24              THE COURT:  Thank you both.

25              MR. NOLAN:  Your Honor?

1          THE COURT:  Mr. Nolan?

2          MR. NOLAN:  Your Honor, may I just make one

3    comment here?

4          So, I -- the way I understand the last 15 minutes

5    is kind of like he was reasonable in what he did, the

6    Defendant was reasonable in what he did, which is really a

7    good faith argument.  I don't think we -- you have to wade

8    into that issue of what he did transferring it downstream

9    because New York law says clearly that you cannot take the

10   transfer or do anything with the transfer in good faith if

11   you're an officer, director, or a major shareholder of a

12   Debtor corporation.

13         The case law in both the federal case law and the

14   state case law -- American Media v. Bainbridge, In re

15   Sharpe, a Second Circuit case, Your Honor, 403 F.3d 43, if

16   the transferee is an officer, director, or major

17   shareholder, preferences to shareholders are not deemed as

18   fair consideration and good faith.  They're just not.

19         So, that's why I thought summary judgment was so

20   appropriate because his explanation as a matter of law won't

21   work based on the undisputed facts.  Now, we --

22         THE COURT:  Yeah.  This is not a good faith

23   transferee argument.  It's kind of dressing itself up that

24   way, but it's not a good faith transferee argument.  He's

25   arguing satisfaction or payment, because the transferor

1    doesn't get to assert good faith transferor status; that's

2    not really what we're talking about, we're only talking

3    about transferee.

4         And so, there is no further transferee, I suppose,

5    unless the Trustee had sued Sunshine as a secondary

6    transferee of the alleged fraudulent transfers.  This is

7    really just going to a payment defense.  He's saying I paid

8    it back --

9         MR. NOLAN:  Okay.

10        THE COURT:  -- and we've sort of killed why Mr.

11   Petrozza or Abruzzi thinks they paid it back.

12        MR. NOLAN:  Right.

13        THE COURT:  But it's not a good faith transferee

14   defense because that would have to be --

15        MR. NOLAN:  Right, but that --

16        THE COURT:  Right?  That would have to be measured

17   under the circumstances upon which the funds were received,

18   not what happened three days, three months, or three years

19   later.

20        MR. NOLAN:  Right.  But, Your Honor, which -- I

21   appreciate that.  But under 11 U.S.C. 548, which is the

22   federal statute, and I cited this in my papers, you know, 11

23   U.S.C. 548(a)(1)(A), which is an intentional fraudulent

24   transfer, which we haven't talked about, that also focuses

25   on the transferor's intent, not Mr. Petrozza and Abruzzi

1    Investments.  It's what Mr. Parmar and the Debtor was, and

2    all of the Joint Statement of Facts show this Court that

3    this was a fraudulent transfer by Mr. Parmar.

4            And so, I do believe -- and I won't argue my

5    papers again -- I did cite the Bayou Accredited Funds case,

6    Your Honor, 396 B.R. 810, and that says that the policy

7    reason behind 11 U.S.C. 548 is not a punitive measure to

8    punish the transferee, but it's an equitable provision that

9    places the transferee in the same position as other

10   similarly situated creditors who did not receive a

11   fraudulent conveyance.

12           So, Mr. Petrozza got $250,000 of the Debtor's

13   money, and 548 says, you measure the value that's given to

14   the Debtor, what the Debtor received back.  And so, I

15   understand the argument that, hey, I paid it back to

16   somebody else and that subsequent payment, you know,

17   relieves me of the obligation.  But 548, the federal

18   statute, says that's not enough, it should be clawed back

19   into the estate, and he should have a claim in the

20   bankruptcy case.

21           And so, what could Defendant do?  Well, the

22   Defendant could come back, I guess after that if the Court

23   believes that we've established an intentional fraudulent

24   conveyance because Mr. Parmar falsified all of these

25   documents.  And even Mr. Petrozza said in his deposition, I

1    didn't sign those documents, I didn't create Lexington

2    Landmark, I didn't get that money.

3            The best that the Defendant could do is he could

4    show up at trial with Your Honor and he could say, Your

5    Honor, I can prove 548(c), that I took the transfers in good

6    faith and for value -- he has to prove them both -- and we

7    would be right back to the same argument which he can't take

8    it in good faith or give it back in good faith because he's

9    an insider.

10            MR. GIULIANO:  But if he's an insider, and that's,

11    right -- there's the dispute.  And even if that were the

12    case --

13            THE COURT:  I'm sorry, gentlemen.  Again, this is

14    not the "I paid it back later" defense, is not a 548 good

15    faith transferee defense; it's got nothing to do with the

16    circumstances under which the transfer was received, which

17    is what 548 is measuring.  This is some other payment or

18    satisfaction defense.

19            And so, yeah, theoretically, it's possible if Mr.

20    Petrozza on instructions from Mr. Parmar paid the money back

21    to an entity that was not owed the money at the time he made

22    the transfer or made the wire, and he did so at the

23    instruction of Mr. Parmar, it may be that he's got to pay

24    the money back to the estate and he can go sue Mr. Parmar;

25    that is equally operable as well.

1    I'm going to take it that you all have had some

2    meaningful if not fruitful settlement discussions.  Because

3    again, at the top of the hearing, it was this $250,000

4    transfer and we're thousands and thousands of dollars into

5    this litigation that I'm assuming at this point either side

6    or both sides is about to have more involved in the

7    litigation than the amount in controversy.

8            MR. GIULIANO:  I will say that, Judge, we did try

9    mediation and it did not work.  Maybe Jeff and I could

10   revisit that, not a formal mediation but have a

11   conversation.  We were pretty far apart, but time -- we

12   would move forward a bit and maybe we won't be so far apart.

13           THE COURT:  You mean you all had a settlement

14   conference, not a mediation.

15           MR. GIULIANO:  No, mediation, Judge.

16           MR. NOLAN:  Your Honor, we went to mediation.

17   Yeah, I mean, certainly when there's a dollar amount like

18   this, I think both of us recognize that, you know, we try to

19   settle it first before we, you know, put something like this

20   in front of the Court, but it was unsuccessful.  And

21   unfortunately, that's -- I guess sometimes you can't control

22   the outcome on some of those things like that.

23           THE COURT:  All right.  All right, fair enough.

24   So, then I'll mark the matters submitted.  We'll notify you

25   all -- I'm intending to do this as a ruling conference.

1   It's factually intense enough that I don't know that a

2   written opinion is really going to add much to the art, so

3   we'll notify you all of a date and time for a ruling

4   conference on this.

5           And again, I would recommend that you all renew

6   those settlement discussions.  Obviously, Mr. Giuliano, if

7   it goes wrong for the Defendants and, you know, you all both

8   know this, but the only time that I get into attorney's fees

9   shifting is if I find an actual fraudulent transfer, both as

10  the transferor and the transferee.  I don't think there's

11  much disagreement about that.  But even if I found an actual

12  fraudulent transfer by the transferor, unless I found it was

13  also fraudulently received by the transferee, I don't think

14  attorney's fees are available until then unless one of you

15  disagrees about that.  But if I were to get to that point,

16  then attorney's fees are on the table for the Liquidating

17  Trustee.

18          MR. GIULIANO:  Understood, Judge.

19          THE COURT:  All right.  Then I'll mark these

20  matters as submitted.  Again, we'll notify you when we're

21  ready for a ruling conference.

22          MR. NOLAN:  And, Judge, if we come to some sort of

23  meeting of the minds, we will notify you as quickly as

24  possible.

25          THE COURT:  I would think the iron is hot, so if

1   you all are going to settle, I would think in the next three

2   days is a lot more meaningful than three months from now.

3             MR. NOLAN:  Agreed.

4             MR. GIULIANO:  Thank you, Judge.

5             THE COURT:  Thank you both.

6             MR. GIULIANO:  Thank you.  Have a good day.

7             MR. NOLAN:  And I apologize for that snafu with

8   the phone call.

9             THE COURT:  And --

10            MR. GIULIANO:  You know, Jeff, at some point we

11  could hear you, but you didn't realize we could hear you

12  through the computer.

13            MR. NOLAN:  Oh, no.

14            MR. GIULIANO:  No, no, nothing bad was said.

15            MR. NOLAN:  Remember, I'm still a New Yorker at

16  heart.  We tend to speak with whatever's on our lapel.  So -

17  -

18            THE COURT:  Understood.  Thank you, both.

19            MR. GIULIANO:  Thank you, Judge.

20            MR. NOLAN:  Thank you, Judge.  Bye-bye.

21            THE COURT:  Ms. Mills, anything else on this

22  calendar?

23            MR. NOLAN:  I don't believe so, Your Honor.

24            CLERK:  That's it for the day, Judge.

25            THE COURT:  All right.  Then the Court will be in

1    recess, and we'll go off the record.  Thank you, all.

2              (Whereupon these proceedings were concluded.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 57

1                 C E R T I F I C A T I O N

2

3        I, Rita Weltsch, certified that the foregoing

4   transcript is a true and accurate record of the proceedings.

5   *R. Weltsch*

6

7

8   Rita Weltsch

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  March 1, 2024

| & | | | |
|---|---|---|---|

**&** & 4:15 7:2 8:15 8:23 11:3

**0**

**02** 8:25

**1**

**1** 4:4 7:21 8:4 9:10,22 50:23 57:25
**10** 33:5,6 34:8
**10017** 11:6
**11** 8:24 23:23 31:12 50:21,22 51:7
**11501** 57:23
**116** 29:15
**11722** 2:22
**11754** 11:13
**12** 9:12
**12151** 57:6
**13** 7:18 9:2,13 9:25
**130** 29:15 30:16 31:13
**135** 38:13
**14** 7:19 9:14 39:2 45:8,11
**15** 36:5 49:4
**150** 30:23,25
**158** 36:24
**16** 45:1
**160** 39:8
**160,000** 13:21
**18** 37:12
**19** 30:18

**2**

**2** 13:13 38:11
**20** 12:16 14:24 22:11 47:14
**20-08052** 12:3
**200,000** 16:6 17:2 18:11
**2006420** 6:2
**2015** 18:14
**2016** 25:25 27:24 39:2
**2017** 18:15,23 19:8,22 20:3,8 28:16,16 30:14 30:22 31:14,16 37:14 39:10,10
**2018** 30:5 37:5
**2022** 2:23
**2024** 57:25
**2035260** 7:2
**2140036** 7:1
**2154** 7:13
**2193900** 7:12
**23** 18:12,13
**24** 18:16,20 19:2 45:1
**24th** 16:9 19:22,22
**25** 2:23 11:12 19:3
**250** 18:24 22:7 40:5,5
**250,000** 13:5 14:13 15:5,20 16:11,12 17:2 17:18 18:21 19:17 20:9,11

22:4 23:17,17 24:16 28:9 30:23 31:17 33:9 37:18 43:6 46:8 51:12 53:3
**250,0900** 39:11
**25th** 20:3,8
**28** 18:23
**28th** 18:17 19:8
**290** 2:21
**29th** 19:8

**3**

**30** 36:5
**300** 57:22
**300,000** 43:10 44:6
**30th** 37:14
**330** 57:21
**34th** 11:5
**35** 44:23
**350** 7:18 8:24
**37** 10:12
**396** 51:6
**3rd** 28:16

**4**

**4** 43:13,20 45:1
**40** 40:23
**403** 49:15
**4121550** 5:12
**43** 49:15
**445** 11:12
**45** 10:10
**46** 28:17 37:14

**477** 38:13
**49** 38:6 40:17 40:19 46:4

**5**

**50** 34:13
**51** 10:5
**53** 19:23 20:1,5
**54** 20:5
**542** 8:25
**547** 9:13
**548** 7:19 9:3,14 9:25 38:1 50:21,23 51:7 51:13,17 52:5 52:14,17
**55** 20:1,5
**56** 36:5
**573** 4:24
**581** 29:15

**6**

**6** 13:13 45:8,10
**630372** 5:13
**64** 28:24
**667656** 5:14
**69** 10:1

**7**

**7** 40:22 45:8,10
**7.2** 26:2
**7.255** 26:2
**72** 7:20 9:3
**780** 11:5

**8**

**8-18-08048** 1:9 4:1

**8-18-08053**
1:17 8:1
**8-18-71748** 1:3
**8-20-08049** 2:2
9:8
**8-20-08052**
2:11 9:19
**8/5/21** 9:16,16
**8022** 47:14
**810** 51:6

**9**

**91** 9:4
**944287** 5:15
**982409** 5:16

**a**

**a.d.3d** 38:13
**aakb** 4:19
**ab** 7:2
**ability** 33:21
**able** 20:4 25:4
33:21
**abn** 4:23
**abruzzi** 2:17
9:20,24 10:2
10:15 11:11
14:7 16:3,13
16:16,25 17:18
17:21 18:21,24
18:25 19:5,17
19:20 20:2,12
20:13,17,21,24
21:9,17,19
22:5 23:18
26:4 28:9
30:24 31:18
32:19 37:20

40:5 42:18
43:13,21,24
44:5 45:11
47:24 50:11,25
**absent** 31:3
**account** 13:21
14:13 15:3,25
16:2,13,16,19
17:6,7,22
18:24,25 19:20
20:2,10,12,13
20:14,21 21:9
21:12 22:4
23:8,11,13,17
23:18 24:20
26:3,11,12,15
26:22,25 27:2
27:6,9,11,13
27:16 28:6,8
28:12,14,15
29:1,8,19 30:1
30:7,9,12
31:18 37:4,6
37:11,16,19
43:14 46:9
47:17,18,23,24
48:15,15
**accounts** 23:15
23:16,16 24:2
24:4,5,9,10
44:20
**accredited**
51:5
**acct** 4:19,20,23
4:24,25 5:1,4,5
5:6,7,8,9,10,10
5:12,13,14,16

5:17,18,19,19
5:20,20,21,23
5:24,24,25 6:2
6:3,5,5,6,7,8,9
6:9,10,11,11
6:12,13,13,14
6:15,15,16,17
6:18,19,20,20
6:22,22,23,24
6:24,25 7:1,2,3
7:3,4,5,6,6,7,8
7:9,10,11,12
7:13,13,14,14
7:15,16,16
**accurate** 57:4
**acquisition** 4:5
4:11 8:5,11
**act** 5:11,15
13:11,19 14:4
14:8
**action** 23:3
40:11
**actions** 9:1
**acts** 47:1
**actual** 39:23
44:21 54:9,11
**actually** 14:22
42:12
**add** 54:2
**addition** 43:10
44:6
**additional**
17:11 19:23
20:1,1 25:22
30:18,20 44:6
**additionally**
24:24

**address** 22:10
33:23
**addressed** 36:4
**adjudication**
10:14
**admissible**
34:25 37:7
**admit** 15:4
**admitted** 14:6
16:25
**adv** 1:9,17 2:2
2:11
**advance** 4:19
**advanced** 4:18
**adversaries**
21:25
**adversary**
13:19,23 14:4
**advisor** 14:14
**afternoon**
12:25
**agent** 8:24
**ago** 25:5 30:10
**agree** 21:7,15
28:5 29:16
33:15
**agreed** 42:1
45:2,3,4 55:3
**agreement**
28:20,22,24
**agreements**
13:24
**al** 1:6,11,14,19
1:22 2:5,8,14
4:1,2 8:1,2 9:8
9:11,23 10:9
10:17

alan  3:2
alleged  42:1,20
  50:6
alleges  13:6
allegiance  4:14
  4:14 8:14,14
alliance  4:24
alpha  8:17
alternative
  10:14
america  7:17
  8:22 28:20
  29:12 30:14
american
  34:12,13,19
  38:12 49:14
amount  7:18
  8:24 15:12
  26:3 30:13
  43:21,21 53:7
  53:17
amro  4:23
analogy  34:19
analysis  47:15
answer  18:17
answering  31:8
antecedent
  21:23 22:7
  43:7 44:8
anthony  10:2
  11:15 13:1
  45:9,9
anybody  35:14
  45:14,20
anyway  48:23
apart  53:11,12

apologize
  44:21 55:7
apparent  33:10
apparently
  40:10
appear  14:2
  37:21
appearance
  9:16
appearances
  12:21
appearing
  12:23 13:1
appreciate
  50:21
appropriate
  49:20
approved  39:1
  39:4,7
approximately
  13:12 37:14
aquila  21:25
argue  12:16,17
  35:9 51:4
arguing  24:12
  25:1 49:25
argument  25:8
  25:14 32:13,23
  35:13,14 38:11
  46:25 49:7,23
  49:24 51:15
  52:7
arguments
  15:1,1 34:23
  37:3,9,23
art  54:2

arvind  2:8 9:8
  9:12
asai  9:17
ascertain  42:8
  42:11
ashisa  6:18
ashnom  6:19
ashpen  6:19
ashtru  6:20
aside  25:4
asked  17:20
  18:11 31:9
  32:15 33:11
assert  50:1
assertion  29:17
asserts  44:24
asset  5:21
  27:11,14,17
assets  36:22
assistant  46:16
  46:16,19
associate  14:15
associates  4:14
  8:14
assuming  53:5
ast  1:3,9,17 2:2
  2:11 4:1 8:1
  9:8,19
attached  16:8
  30:4 35:20
attention  17:4
attorney  11:11
  17:13
attorney's  54:8
  54:14,16
attorneys  11:4

audio  12:7
authorities
  15:1 38:13
authority
  27:15 39:14
available  54:14
avenue  11:5
aware  47:19
axis  4:17

b

b  3:1 7:14,14
b.r.  29:15 51:6
back  12:6
  13:22 15:13
  17:6 18:8
  19:10 22:7,10
  22:11 32:9,22
  32:24 33:12,17
  33:25 34:3,5
  38:16 39:21
  40:6 41:22
  42:24 46:11,17
  47:25 48:9
  50:8,11 51:14
  51:15,18,22
  52:7,8,14,20
  52:24
backdating
  13:25
background
  13:4 15:24
bad  47:1 55:14
bainbridge
  38:12 49:14
balance  22:12
  25:25

bank 4:25,25
13:21 20:6
21:9 22:13
26:11 28:20
29:12 30:14
46:18 47:17,17
banken 7:2
banking 4:22
bankruptcy
1:1 2:20 3:3
9:2 24:19,21
24:22 51:20
barclayshare
5:1
based 13:9
25:2 49:21
baseline 22:2
basic 22:2
basically 47:15
basis 18:19
41:13
battery 13:14
bayou 51:5
bccag 6:9
bear 43:2
44:14,22
beardsall 5:2
beaufort 5:2,3
beginning
20:16
behalf 8:20
10:2,8,16
12:23 13:1
48:16
behest 46:21
believe 15:14
15:16 16:4

18:4 21:16
23:14 26:5
30:11 31:3,22
31:24 34:24
35:22 39:24
40:12,14 41:13
43:8,25 51:4
55:23
believes 51:23
belong 23:23
belonging
24:21
belongs 29:14
30:9
benefit 22:6
best 52:3
better 41:23
46:13
bicom 47:13
big 13:9 22:19
22:19 35:4
bill 34:12
billing 4:8,9,13
4:15 8:8,9,13
8:15
bit 53:12
black 38:7
blue 4:16 8:19
bny 5:3
board 39:4
bofa 36:18,23
book 29:2
books 15:11
37:19,21
borrow 34:7
bound 30:22

breakdown
24:8
breaks 47:14
brewin 5:4
brief 28:10
39:18,20
briefed 21:6
bring 23:2
broadhollow
11:12
brog 14:14
15:25 16:11,18
17:4,14,21
20:11 22:3
23:8,13,13,22
24:2,7 25:25
26:12,14 27:5
27:14 28:7,8
29:1,18 37:16
43:14 44:19
46:25
brought 9:1
bucks 34:13
burden 29:13
business 4:12
8:12 14:3,9,15
14:16,18 15:10
20:3 42:20
butler 5:7
buy 41:19
bye 55:20,20

**c**

c 11:1 12:1
38:1 52:5 57:1
57:1
calendar 55:22

call 19:7 55:8
called 34:19
36:6
canty 9:17
capacity 2:4,13
8:23 9:10,19
9:22 10:8,16
25:12
capel 5:19
capita 4:16
caption 37:17
care 4:18,20
case 1:3,9,17
2:2,11 13:15
14:11 22:21
23:2 25:3,9
31:3 34:3
36:12,12,13
39:14,18,19
40:13 45:12
46:23,23 47:2
47:12 48:14,18
48:19,20 49:13
49:13,14,15
51:5,20 52:12
cash 27:4
ccclt 6:10
cdigro 4:24
central 2:22
cepheus 8:17
certainly 47:7
53:17
certified 57:3
cfs 5:5
cgwl 5:5
change 15:8

chapter   23:23
  31:12
chase   5:6,6
checking   16:13
  18:25
chivukula   8:16
cht   4:16 13:13
  25:15 26:6,14
  26:18 27:22
  29:2,9 37:17
ci   5:16
circuit   47:4
  49:15
circumstances
  50:17 52:16
cite   39:14
  47:12 51:5
cited   27:15
  48:19 50:22
claim   36:20
  38:5 41:9,14
  45:11,18,18,19
  51:19
claimant   45:22
claimed   13:15
claiming   27:25
claims   22:2
  37:6
clarify   21:2
  44:12
clawed   15:13
  51:18
clear   17:9
clearly   14:8
  48:6 49:9
clerk   55:24

client   5:8,12,24
  6:3,4 24:12,14
  32:14 35:8
  39:24 43:4,10
  43:10
client's   41:22
  46:19 47:23
clients   30:6
  43:5
closed   47:5,8
closing   29:2
  37:17
cognizable
  36:7,15
cole   5:7
collusion   48:3
color   17:12
come   16:17
  21:3 22:10,11
  22:14 28:17
  29:9 42:4,14
  51:22 54:22
comes   17:6
comment   7:22
  9:6,16 49:3
committed
  31:12
communicated
  27:5
company   14:6
  40:4
compelled   24:1
compelling
  38:24
competing
  12:13

complaint   4:4
  8:4 9:10,22
  41:14,15
computer
  55:12
conaway   8:23
concluded
  33:19 56:2
condo   13:13
conference   9:9
  9:21 12:12
  53:14,25 54:4
  54:21
confusion
  18:19 32:3
connecting
  21:18
consideration
  21:24 22:6
  43:3 49:18
considered
  30:1
consolidated
  25:10 32:6
constellation
  4:4 8:4,17,17
  8:21,22 25:15
  25:24 26:1
  29:2 33:9
  37:17 40:24
  41:5 42:19
  45:13 46:5,9
constructive
  13:7
consulting   4:14
  4:15 8:14,15

contract   39:21
contractually
  43:20
control   27:9
  28:14 53:21
controlled   27:7
  28:14
controlling
  45:12
controversy
  53:7
conversation
  53:11
converting
  48:17
conveyance
  13:6,7,8 33:19
  34:22 51:11,24
conveyed
  43:10
corp   17:17
corporation
  4:9 8:9 49:12
correct   12:4
  20:16 26:9
  28:1 31:15
correctly   24:17
counsel   14:21
  35:10,11,25
count   43:17
  44:8
country   57:21
court   1:1 2:20
  9:2 12:2,5,7,10
  13:2,11,17,20
  14:5,12,16,19
  14:24 15:16,19

15:24 16:15,20
16:22 17:11,16
17:25 18:23
19:19,24 20:4
20:10,13,23
21:3,7,10,14
21:15,20,23
22:9,17 23:14
23:21 24:11
25:6,15,22
26:21 27:15,19
27:22 28:3
30:8,13,21
31:8,11,17
32:21,25 33:3
34:11,16 35:3
35:15,18 37:13
37:22 39:6,13
40:3,9,17,25
41:21 42:11
43:3,15 44:1,7
44:23 45:17
46:4,8 47:4,11
47:13,21 48:10
48:24 49:1,22
50:10,13,16
51:2,22 52:13
53:13,20,23
54:19,25 55:5
55:9,18,21,25
55:25
**court's** 18:19
36:3 38:10
**cover** 13:25
**create** 52:1
**created** 29:19

**creating** 13:24
**credit** 5:7
28:20,22,24
30:13,23 31:1
31:13
**creditor** 25:3,9
30:25 31:19,21
31:22,23,24,25
32:1,7,8,9,9,10
33:21 36:19,19
36:21,22
**creditors** 23:1
25:13 31:20
36:25 48:18
51:10
**creptemp** 5:11
**cshnet** 6:23
**custody** 5:13
5:14,15,15
**cv** 47:14

**d**

**d** 12:1
**d6m5pb** 5:8
**date** 19:19,21
54:3 57:25
**david** 5:2,7
**day** 20:3 36:21
37:3 38:22
55:6,24
**days** 38:21
50:18 55:2
**dealing** 6:1
**deals** 36:12
**debt** 13:16
14:1,3 21:23
22:7 39:8 40:2
43:7 44:8

**debtor** 1:7
13:13,17 19:4
19:7,11,11,15
22:24,25 23:4
23:4,5,6,11,12
23:16 24:4,9,9
25:8,24 26:14
27:3,5,7,10,12
27:12,13,20,23
28:14,20,23
29:4,18,22,23
29:24 32:4
33:2,11 37:9
38:2,3,9,16
39:8 41:12,13
41:18,20 44:12
44:18 48:16
49:12 51:1,14
51:14
**debtor's** 13:21
14:1,13 15:3
15:11 19:10
24:25 25:1,7
26:11,22,25
27:1,1,3,4,7,16
29:9 37:15,19
37:21 51:12
**debtors** 17:20
22:3,23 23:1
23:24 24:19,21
24:22 25:3,7
25:13 27:20,25
28:21,22 29:11
30:22 31:11,12
38:6 39:16
40:16,21 41:11
43:6,9,19,24

44:4
**debts** 27:8
**declaration**
35:20
**declaratory**
9:4
**deemed** 47:1
49:17
**deeper** 45:25
**default** 10:7
**defendant**
11:11 16:5
20:8,9,19 21:9
23:20 28:13
29:13 30:4
34:5 37:2
38:18 39:3
44:4,24 49:6
51:21,22 52:3
**defendant's**
18:25 19:5
29:16 36:14
**defendants**
1:15,23 2:9,18
10:6,14 13:1
15:4,20 17:8
19:1,4 32:15
39:11 54:7
**defense** 15:15
33:13 36:5,7,7
36:15,17 39:17
41:22 42:14,17
42:23 43:3
50:7,14 52:14
52:15,18
**defenses** 43:1

| | | | |
|---|---|---|---|
| **defined** 31:11 | **disagree** 45:10 | **dollars** 22:3 | **ends** 16:12 |
| **delaware** 8:21 | **disagreement** | 25:23 26:13,15 | **enskilda** 7:1 |
| **deny** 15:2 | 54:11 | 39:5 44:21 | **entirely** 33:20 |
| 45:15 | **disagrees** | 53:4 | **entities** 41:6,20 |
| **department** | 54:15 | **dots** 21:18 | **entitled** 35:8 |
| 7:17 | **disconnect** | **downstream** | **entitlement** |
| **depends** 47:8 | 12:5 | 36:9,15 49:8 | 24:19 |
| **deposit** 28:15 | **discussions** | **dressing** 49:23 | **entity** 22:5 |
| **deposition** | 53:2 54:6 | **dropped** 35:23 | 32:5 33:13 |
| 51:25 | **dismiss** 37:22 | | 39:16,17 40:14 |
| **destra** 8:19 | **dispute** 13:5 | **e** | 40:16,20 41:8 |
| **detail** 47:15 | 28:13 42:9,12 | **e** 3:1,1 11:1,1 | 41:17,19 42:21 |
| **difference** | 42:13 52:11 | 12:1,1 57:1 | 44:10 46:12 |
| 32:21 33:3 | **disputed** 15:10 | **e.g.** 9:1 | 52:21 |
| **different** 27:25 | 20:8 | **eastern** 1:2 | **entries** 28:7 |
| 34:21 37:2,9 | **disputing** 40:3 | **ecro** 3:4 | **entry** 28:8,12 |
| 38:20 46:11 | **distinction** | **edward** 1:14 | 29:2 |
| 48:13 | 47:9 | 4:1,22 | **equally** 52:25 |
| **difficulties** | **distribution** | **ehrenberg** 2:4 | **equitable** |
| 22:22 | 27:7 | 2:13 9:8,10,19 | 29:23,25 37:10 |
| **direct** 7:7,8,9 | **district** 1:2 | 9:22 10:8,16 | 51:8 |
| 7:10 | 47:13,14,21 | 12:23 | **equity** 41:10 |
| **directed** 39:21 | **diversion** | **either** 23:5 | 41:11 43:17 |
| **direction** 33:1 | 13:25 | 29:23 43:5 | 44:7,8,11,18 |
| 39:15 40:1 | **diverted** 13:12 | 45:15 53:5 | **escrow** 8:23 |
| 45:25 | 13:21 | **element** 27:9 | **essentially** |
| **directions** | **diverting** 14:13 | **elisa** 6:11 | 24:11 |
| 19:14 38:20 | **docket** 36:4 | **else's** 37:4 | **establish** 18:7 |
| **directly** 16:20 | **document** | **email** 16:10 | 48:2 |
| 16:21 17:20,21 | 10:10 23:12 | **emailed** 17:13 | **established** |
| 18:4,5 26:11 | 24:2 31:5 36:1 | **emails** 17:3,22 | 24:20,24 29:13 |
| 27:2 41:18 | **documents** | 46:18 | 51:23 |
| **director** 38:9 | 10:1 13:25 | **employees** | **establishes** |
| 49:11,16 | 51:25 52:1 | 20:18 | 39:20 |
| **directors** 20:18 | **doesn't** 37:21 | **empower** 23:2 | **estate** 15:13 |
| 39:4 | **dollar** 53:17 | **ended** 26:18 | 23:23 24:7 |
| | | 44:19 | 27:15,18 30:1 |

32:4 36:25
51:19 52:24
et   1:6,11,14,19
1:22 2:5,8,14
4:1,2 8:1,1 9:8
9:11,23 10:9
10:17
europe   7:6,8,9
7:10,11
evidence   13:24
21:8,11,21
23:8 30:3,8
34:24 35:6
37:3,7 43:7,16
43:24 44:2
exact   33:22
41:6
exactly   17:10
17:12 29:21
37:12 40:23
except   48:19
excuse   30:19
exdepaif   5:7
executed   43:19
45:20,21
exhibit   23:3
24:8
exhibits   24:10
25:2
existed   26:16
26:17 32:8,8
existence   26:6
explanation
15:14,16,18
18:10,22 19:6
19:9,12 36:16
49:20

express   34:12
34:13,19
extent   14:25
41:23

**f**

f   3:1 10:2 11:15
57:1
f.3d   49:15
facially   23:12
25:1 31:3
facie   45:18
facility   30:14
30:23 31:1,13
fact   14:9 15:9
16:12,14,25
18:12,13,16
19:2,16,23,24
20:1,8 23:7
26:5 28:4
30:17,18,19,20
35:16 36:23
37:12,13 38:21
38:25 39:2,11
39:22 40:22
41:9 42:3,6
44:23 45:5,6
facts   15:12
16:5 17:9,11
17:16 19:9
20:5,16 21:8
21:11 22:20
25:22 33:15
38:23 39:6
42:8,11 45:9
45:10 48:6
49:21 51:2

factual   18:9
factually   26:23
54:1
fair   49:18
53:23
faith   37:24,25
38:8,15,17
42:23 49:7,10
49:18,22,24
50:1,13 52:6,8
52:8,15
fake   13:24
falcon   5:7
falsified   51:24
familiar   22:1
far   53:11,12
fastrade   6:25
fbi   29:15
february   28:16
federal   2:21
49:13 50:22
51:17
fee   7:18 8:24
fees   54:8,14,16
fell   32:19
ferlim   5:8,9
ferret   42:5
fha   4:11 8:11
filed   10:2,7,15
31:12 35:19
38:5 45:11,21
filing   26:20
45:17
filled   45:19,21
financials   27:4
find   30:19
44:13,15,20,22

48:14,18 54:9
finding   27:17
finds   16:2
fine   12:7
finish   36:3
firm   28:14
37:16
first   4:12 8:12
8:18 12:21
39:25 53:19
fishing   30:25
fitel   5:10
five   26:23
floor   11:5
florida   16:7
18:11 20:22
32:16
focus   32:13
focuses   50:24
fold   35:2
follow   48:22
followed   19:14
following
17:22 39:15
foregoing   57:3
forest   4:18
form   34:25
45:19
formal   53:10
forth   18:8
26:23
forward   48:5
53:12
forwarded
18:25
found   13:17,23
36:11 41:24

54:11,12
**four** 30:10,24
 31:17 43:11,13
**fraud** 39:23
**fraudulent**
 7:19 9:3,14,25
 13:6,7,8 33:4
 33:14,19 34:22
 39:17 42:18,25
 47:18 50:6,23
 51:3,11,23
 54:9,12
**fraudulently**
 54:13
**friend** 14:14
 17:5
**front** 12:9
 13:19 14:5,12
 14:16,19,23
 15:9 30:8
 38:22 39:6
 44:13 53:20
**fruitful** 53:2
**fund** 29:19
**fundamentally**
 48:13
**funds** 14:1
 15:3,10 21:19
 22:25 23:9,23
 24:6,21,25
 25:2 26:12,13
 26:25 27:1,3,4
 27:6,8,23
 28:11 29:4
 32:15,17,18,20
 33:23 36:9,10
 40:2 44:3,11

48:17 50:17
51:5
**further** 14:10
 46:14 50:4

**g**

**g** 12:1
**g007** 7:3
**gazillion** 39:5
**gc1** 4:19 5:6
**gee** 29:3
**general** 12:12
 27:12
**gentlemen**
 52:13
**genuine** 42:9
 42:12,13
**germane** 22:25
**getting** 15:25
 34:23 44:11
**girlfriend**
 13:15
**giuliano** 10:2
 11:10,15 12:25
 13:1 21:1,5
 22:1,9,13,17
 22:18 23:21,25
 24:23 25:17
 27:19,21 29:3
 30:21 31:2,10
 31:21 32:23
 33:1,15 34:15
 34:18 35:13,16
 35:22 36:1,11
 39:13,19 40:8
 40:12,19 41:3
 42:10 43:1,8
 43:23 44:2,9

45:3,7,14,24
46:7,14 47:7
48:11 52:10
53:8,15 54:6
54:18 55:4,6
55:10,14,19
**give** 17:11 22:7
 32:22 33:17
 38:2 52:8
**given** 48:22
 51:13
**global** 4:23
 5:12,13,14,15
**go** 20:21 23:17
 24:15 28:11,17
 28:19 29:10
 30:15,21 32:20
 33:23 37:15
 39:1,2,4,7,9
 41:25 44:25
 46:14 52:24
 56:1
**goes** 34:25
 37:19 54:7
**going** 12:8,10
 12:15,15,17
 13:10 20:7
 22:10,11 26:22
 31:5 40:11
 45:25 47:20
 48:4,18 50:7
 53:1 54:2 55:1
**goldman** 5:10
**good** 12:25
 37:24,25 38:8
 38:15,17 42:22
 42:23 49:7,10

49:18,22,24
50:1,13 52:5,8
52:8,14 55:6
**great** 14:25
 47:15
**greene** 17:4,13
 17:14
**gross** 5:4
**group** 8:21
**grow** 44:25
**guess** 21:16
 45:7 51:22
 53:21
**guy** 40:10

**h**

**h** 7:16
**hang** 45:17
**happen** 24:15
 45:5
**happened**
 15:16 17:12
 19:7 24:5 25:5
 32:14 33:16
 34:9 41:7
 50:18
**happening**
 45:5
**happens** 28:15
**happy** 12:8
**hard** 37:2
**harewood** 5:11
**harmed** 32:10
**harris** 30:5
**health** 4:12,15
 8:12,15,17,18
 8:18,21,22
 17:17 18:1,3,4

18:6,14 29:2
37:17
**healthcare** 4:5
4:17 8:5,19
25:16,24 26:1
33:10 40:24
41:5 42:19
45:13 46:5,9
**healthcorp** 1:6
1:11,19 2:5,14
4:1,4 8:1,4
9:11,23 10:9
10:17
**hear** 24:17
55:11,11
**hearing** 4:3,3
8:3,3 9:9,21
10:1,5,12
45:20 53:3
**heart** 55:16
**held** 43:14
48:21
**hey** 16:11 17:5
19:9 30:11
33:25 51:15
**hiding** 48:17
**historical**
27:13
**history** 18:7
**hit** 5:4
**hold** 41:3
**holdco** 4:16
**holder** 41:11
41:11
**holding** 48:15
48:15

**holdings** 4:8
5:12 6:9 8:8
**hon** 3:2
**honestly** 24:5,7
**honor** 12:4,8
12:22,25 13:3
13:4 14:4,20
15:23 16:4
17:3,10,24
18:3,12,14,18
19:11,25 20:6
20:15 21:1,6
21:21 22:8,16
22:18 23:25
24:1 25:17
26:9,9 28:1,2
28:17 29:6
30:17,19 31:2
31:15,21 32:2
35:19 36:2,13
38:4,22 39:12
39:19 40:8
41:16 43:8
45:7 48:25
49:2,15 50:20
51:6 52:4,5
53:16 55:23
**hopefully**
12:17
**hoping** 40:13
**hot** 54:25
**house** 16:7,7
18:11 20:22
21:13 32:16,19
**howard** 2:4,13
9:10,19,22
10:8,16 12:23

13:20
**hsbc** 5:12,12
5:13,14
**hscb** 5:15
**hunt** 6:9
**huntress** 5:16
**hut** 33:6,7

**i**

**iceberg** 32:12
**identified**
33:22
**identifies** 23:9
23:10
**identify** 17:10
22:24
**igukclt** 7:14
**ii** 10:6 13:19
**iii** 14:4,8
**ilan** 9:17
**illegitimate**
14:16,17 15:10
27:8
**imclt** 6:11
**immediate**
18:17
**important** 46:1
**improper**
13:25 47:20
**impute** 39:23
**incident** 30:14
**include** 17:17
**including**
12:17 21:25
**income** 8:20
**independently**
28:23

**indiscernible**
28:21 41:7
**initial** 9:9 15:7
15:21 19:3
20:24 21:7,18
33:13 44:13
46:24 47:2,10
47:22
**initially** 43:12
**injunctive** 7:20
9:3
**innocent** 42:13
42:17
**inside** 40:10
**insider** 13:16
38:4,7,12,14
38:23 39:16
41:25 52:9,10
**insofar** 47:9
**instance** 39:25
**instructed**
17:14
**instruction**
52:23
**instructions**
32:18,18 33:24
34:1,2 46:17
46:20,20 48:7
48:22 52:20
**instrument**
43:18
**insufficient**
15:18
**integra1** 7:12
**integrated** 4:10
8:10

intending
  53:25
intense  54:1
intent  50:25
intention  48:17
intentional
  13:7 48:21
  50:23 51:23
interest  29:22
  29:23 40:23
  41:10,12 44:12
  44:18 46:10
internal  7:17
international
  5:11 6:2
intertwined
  46:25
investing  7:7,8
  7:9,10 20:19
investment
  8:18,20 14:6
  14:14 18:24
  43:17 44:11
  45:1
investments
  2:17 4:19 9:20
  9:24 10:3,15
  11:11 14:7
  16:13 20:12,17
  20:21 21:9,17
  21:19 28:9
  31:19 32:19
  37:20 43:22
  44:7,8 47:24
  51:1
investor  5:17
  5:17,18 44:24

45:2
involved  25:10
  40:15 53:6
involves  14:8
iola  14:13 15:3
  15:25 16:2,18
  17:22 19:20
  20:10,11 22:4
  23:10 24:3,13
  24:14,20 25:25
  26:3,12,14,22
  26:25 27:2,6,9
  27:11,13,23
  28:6,8,12 29:1
  29:18,25 30:7
  30:9,12 31:18
  37:4,6,11,16
  43:14 46:9
ireland  7:16
irg  4:16
iron  54:25
isa  5:9,20,24
  6:23 7:3,16
isamax  7:14
ish  31:13
islip  2:22
issue  14:15
  16:23 17:19
  18:9 21:6,24
  24:12 36:2,18
  42:3,6 49:8
issues  14:21,23
  22:10,13,23

j

j.p.  5:22
james  5:19

january  30:14
  30:22 31:13,15
  37:13 39:10
jarvis  5:20
jarvisnt  5:21
jeff  12:22 53:9
  55:10
jeffrey  9:16
  10:7,15 11:8
jiclt  6:12
jim  5:19,20,21
john  5:22 9:24
  10:15
johnston  5:21
  5:22,22
joint  17:9
  18:12,16,20
  19:2,8 20:16
  37:12 38:24
  39:1 40:22
  45:6,9,10
  47:16,17,19
  51:2
jones  11:3
joseph  5:22
  7:22 9:6
jpcrepon  5:23
judge  3:3 23:7
  24:23 31:10,24
  32:12 33:15
  34:7,8,22
  35:13 40:13
  41:4,9 42:10
  43:2 44:10,14
  44:16,20,21
  45:24 46:14,24
  47:8 48:11,23

53:8,15 54:18
  54:22 55:4,19
  55:20,24
judgment  9:4
  10:6,7,12,13
  12:13 15:2
  23:4 24:18
  26:6,17,18
  29:7 39:25
  42:7 43:15,18
  48:2 49:19
judgments
  26:19
jump  21:1
june  18:17,23
  19:8,8

k

karin  5:22
kbc  5:23
keeps  32:3
key  31:4,4
kgclt  5:17
killed  50:10
kind  36:3
  40:25 49:5,23
kiyomori  8:19
kkclt  4:20
kkisa  6:17
knew  42:4,5,15
  42:15 48:2
know  12:12
  13:17 14:15,22
  18:4 21:12
  22:2,12 24:5,6
  24:7,8 25:17
  25:19,20 31:2
  31:5 33:5

35:21,23 36:23
37:23 38:18
41:4,16,22
42:3 44:17
46:13,13,15
47:16 48:12,16
48:20 50:22
51:16 53:18,19
54:1,7,8 55:10
**knowledge**
47:20

**l**

**label** 42:22
**lack** 25:12
**landmark** 4:21
52:2
**lapel** 55:16
**largest** 38:5
**law** 11:10
15:18 28:13
29:6,7 38:7
39:18,19,21
46:23,23 47:2
48:14,19 49:9
49:13,13,14,20
**lawshare** 5:24
5:24,25 6:1
**lawsuit** 23:4
26:17
**lawyer** 30:11
35:23
**lawyers** 30:10
35:22
**lead** 33:19
**leaving** 20:11
**ledger** 26:2
27:12 28:7,12

**left** 12:2
**legal** 15:15
27:9,15 29:24
29:25 36:17
37:10 46:10
57:20
**legally** 26:24
36:7
**legitimate**
13:16 14:2,9
14:18 15:15
27:8
**legitimately**
38:16
**lender** 40:1
**letter** 30:5,10
37:5,5 38:7
**lexington** 4:21
52:1
**liability** 26:6
**liable** 28:23
48:21
**limited** 4:16,19
4:19,20,23,25
5:1,2,3,3,4,4,5
5:6,6,7,8,9,9
5:10,11,13,14
5:15,16,17,17
5:18,18,19,20
5:20,21,24,25
5:25 6:1,2,4,4
6:5,6,6,7,8,8,9
6:10,11,11,12
6:13,13,14,15
6:15,16,17,18
6:18,19,20,21
6:21,22,23,23

6:24,25,25 7:3
7:3,4,5,5,6,8,9
7:10,11,12,12
7:13,14,14,15
7:15,16 42:16
**lines** 6:1
**liquidated**
18:24
**liquidating** 2:4
2:13 9:11,20
9:23 10:9,17
12:24 54:16
**lisa** 9:17
**listed** 27:16
37:16
**litigating** 13:23
**litigation** 53:5
53:7
**little** 17:12
**llb** 4:22
**llc** 2:17 4:5,6,6
4:7,8,11,11,12
4:13,14,14,15
4:15,16,17,17
4:18,18,20,21
4:21,22 8:5,6,6
8:7,8,11,11,12
8:13,14,14,15
8:15,17,17,18
8:18,19,19,21
8:22 9:20,24
10:3,15 11:11
20:12,17 21:19
47:13
**llc's** 21:9
**llp** 8:23 11:3

**load** 39:8
**loan** 13:22 16:6
17:1 28:24
**log** 12:6
**long** 45:19
**look** 23:3 25:18
28:7 36:16
**looking** 40:14
**looks** 12:13
**loop** 47:5,9
**lot** 14:22 31:4
37:8,22 38:20
48:1 55:2
**lua01** 6:7
**lynch** 6:2
**lynchwood** 6:1

**m**

**m** 2:4,13 9:10
9:19,22 10:8
10:16
**m&t** 22:13
35:4,6,12
**mad** 34:13
**made** 16:7 19:4
35:14 52:21,22
**mail** 34:9,9,11
46:17
**mailbox** 34:10
**main** 4:24 6:3
**mainpool** 4:23
**major** 38:9,23
49:11,16
**majority** 40:4
**make** 14:2
20:23 21:16
32:21 33:3
36:20 39:5

41:8 47:9 49:2
**makes**  38:6
  42:22
**making**  28:12
**managed**  20:18
**management**
  4:10 5:5,22
  8:10 9:12 14:6
  14:7
**march**  57:25
**mark**  53:24
  54:19
**mastercard**
  34:13
**material**  26:5
**matter**  1:5
  12:2 13:5
  14:20 15:18
  17:7 46:2
  49:20
**matters**  25:10
  25:11 53:24
  54:20
**max**  1:14 4:1
  4:22
**mdrx**  4:13 8:13
**mean**  15:15
  16:2,24 20:9
  21:22 28:6
  43:4 45:25
  48:11 53:13,17
**meaning**  17:12
**meaningful**
  53:2 55:2
**means**  47:18
**meant**  44:17

**measure**  51:7
  51:13
**measured**
  50:16
**measuring**
  52:17
**media**  38:12
  49:14
**mediation**  53:9
  53:10,14,15,16
**medical**  4:6,8,8
  4:13,13,17 8:6
  8:8,8,13,13
**meeting**  54:23
**melville**  11:13
**member**  40:23
**merits**  41:24
**merrill**  6:2
**message**  16:8
  17:22
**met**  39:3
**million**  13:13
  22:3 26:2,2
  28:17,24 30:16
  30:23,25 31:13
  36:24 37:14
  39:8 43:13,20
  45:1,1
**millions**  25:23
  26:13,15
**mills**  55:21
**mind**  43:2
**minds**  54:23
**mineola**  57:23
**minute**  21:4
**minutes**  12:16
  22:11 49:4

**miriam**  30:5
**misspoke**
  18:18
**mitchell**  17:4
**moment**  16:10
  31:23
**money**  7:19,20
  8:25 9:3,13,14
  9:15,25 15:12
  15:25 16:2,9
  16:16 17:1,5,8
  17:10,15,20
  18:8,10 19:6
  19:10,13,15
  20:21 21:8
  22:5 23:6,9
  24:15,16,18
  25:7,7,10
  28:25 29:8,12
  29:14,20,21
  30:7,9,12
  32:22,24 33:11
  33:17 34:6,17
  34:20 36:24
  37:4,6,18
  38:12 39:16,21
  42:24 43:5,11
  44:17,19 47:16
  47:23 51:13
  52:2,20,21,24
**monies**  20:9,20
  26:10,22,24
  27:1,7 37:10
  44:16
**months**  26:4
  30:24 31:17
  39:9 50:18

55:2
**morgan**  5:23
  6:3,4
**mothership**
  40:25
**motion**  10:1,5
  10:5,6,12,13
  12:13 15:2
  26:23 29:5,7
  29:20 35:1,5
  35:17 44:14
**motions**  10:7
  12:11,14
**mountain**  4:17
  8:19
**move**  53:12
**moved**  13:14
**moving**  29:20
**multiple**  12:11
  25:23 27:24
**mymsmd**  4:21

**n**

**n**  11:1 12:1
  57:1
**n.y.**  6:8,8
**name**  40:20
  41:6,17
**named**  41:6
**nature**  7:18
  8:24 9:12,24
**naya**  8:16
**need**  15:24
**needed**  16:6,25
  17:1,2 18:10
  47:25
**needs**  16:9

| | | | |
|---|---|---|---|
| **neighbor** 13:20 | **nominee** 5:12 | **november** | **once** 20:20 |
| **nems** 4:5,6 8:5 | 5:13,14,15,16 | 35:23,23 39:2 | 29:7,12,24 |
| 8:6 | 5:19 | **number** 43:11 | **onl** 7:7 |
| **never** 25:9 | **nominees** 4:16 | **nv** 5:23 | **operable** 52:25 |
| 33:20 45:23 | 4:18,20,23,23 | **ny** 11:6,13 | **opinion** 54:2 |
| 48:7 | 4:24,25 5:1,2,2 | 47:13 57:23 | **opposed** 47:5 |
| **new** 1:2 2:22 | 5:3,4,4,5,6,6,8 | **nynm** 4:11 | **opposition** |
| 4:25 5:1 11:6 | 5:9,9,10,11,16 | 8:11 | 16:8 20:10 |
| 36:8 38:7 | 5:17,18,18,19 | | **oq51** 7:6 |
| 47:14 49:9 | 5:20,20,21,24 | **o** | **orbach** 7:22 |
| 55:15 | 5:25,25 6:1,2,3 | **o** 3:1 12:1 57:1 | 9:6 |
| **nicolaus** 7:6 | 6:4,5,6,6,7,7,8 | **objected** 41:9 | **order** 23:22 |
| **night** 16:10 | 6:8,10,10,11 | 45:15 | 40:2 |
| **niknim** 9:12 | 6:12,12,13,14 | **objection** | **original** 15:6 |
| 14:6,7 | 6:14,15,16,17 | 41:14 45:22 | **originally** |
| **nnideal** 7:6 | 6:17,18,19,20 | **obligated** | 36:16 |
| **nolan** 9:16 | 6:21,21,22,23 | 43:20 | **orion** 1:6,11,19 |
| 10:8,16 11:8 | 6:23,24,24,25 | **obligation** | 2:5,14 4:1,4 |
| 12:4,5,8,22,22 | 7:1,2,3,4,5,5,7 | 29:11 37:20 | 8:1,4 9:11,23 |
| 13:2,3 15:19 | 7:8,9,10,11,11 | 43:16 51:17 | 10:9,17 13:21 |
| 15:23 16:4,18 | 7:12,13,13,14 | **obligations** | 26:11,17 27:22 |
| 16:21,23 17:24 | 7:15,15,16 | 36:9 | 29:10 40:15 |
| 18:3 19:2,22 | **nomura** 6:5 | **obviously** | **outcome** 53:22 |
| 19:25 20:6,15 | **non** 23:11,12 | 48:12 54:6 | **outside** 40:13 |
| 21:6,11,15,21 | 24:4,9 26:5 | **ocs** 5:3 | 40:15 |
| 22:8,12,16 | 41:12 | **officer** 13:17 | **owed** 13:16 |
| 25:19,21 26:8 | **northeast** 4:6 | 38:9 49:11,16 | 36:24 43:5,9 |
| 26:9 28:1 | 8:6 | **officers** 20:18 | 43:16 52:21 |
| 30:16 31:14,15 | **northstar** 4:11 | **oh** 23:3 31:8,10 | **own** 22:6 41:10 |
| 32:3 35:15,18 | 4:12 8:11,12 | 55:13 | **owned** 22:3 |
| 35:19 40:22 | **nortrust** 6:5,6 | **okay** 16:22 | **owner** 46:5 |
| 41:2 45:6,8 | 6:7,7 | 20:4 22:16 | 47:19 |
| 48:25 49:1,2 | **note** 43:16,18 | 34:9 46:3,19 | |
| 50:9,12,15,20 | 43:23 | 46:20 50:9 | **p** |
| 53:16 54:22 | **notice** 10:12 | **old** 57:21 | **p** 10:8,16 11:1 |
| 55:3,7,13,15 | **notify** 53:24 | **om01** 7:4 | 11:1,8 12:1 |
| 55:20,23 | 54:3,20,23 | **om02** 7:5 | **p.c.** 11:10 |

**p.m.** 16:9
**p89813x** 6:22
**pachulski** 11:3
**page** 36:5
**paid** 40:1
41:22 42:24
46:12 50:7,11
51:15 52:14,20
**papers** 21:24
35:5 36:4
38:19 41:17
43:4 48:12
50:22 51:5
**paragraph**
36:5
**paragraphs**
20:5
**parameters**
12:19
**parent** 40:4
**park** 13:14,14
**parmar** 1:22
8:1,16 13:12
13:12,20,24
14:12 16:10
17:3,6,13 18:7
19:13,14 28:25
29:19 32:15,16
33:11,12,17,25
39:3,7 46:11
46:18,21 51:1
51:3,24 52:20
52:23,24
**parmar's** 30:6
38:10
**parmjit** 8:16

**part** 25:14 35:4
35:4 38:10
39:2 41:13,14
41:19 48:7
**particular** 25:5
29:17
**parties** 14:24
20:4,17 27:14
30:17 36:19
**partner** 42:20
**partners** 4:17
4:21
**party** 19:18
38:17 39:22,22
40:1
**passed** 36:8
**pattern** 15:9
**paul** 6:1
**pay** 13:22 14:1
14:14 33:7,12
33:21,21,25
34:5,8,16,20
36:25 42:20
47:25 48:9,9
52:23
**paying** 27:8
**payment** 19:3
49:25 50:7
51:16 52:17
**payor** 42:13,17
**pb** 6:5
**pbnoms** 6:5
**pbpp** 4:17,22
**pc** 5:19
**peel** 6:9
**peeled** 28:25

**percent** 38:6
40:17,19,23
46:5
**permitted** 28:3
**perny** 6:13
**pershing** 6:10
6:10,11,12,12
6:13,14,14,15
6:16
**person** 34:16
47:16,19 48:15
**person's** 47:22
**personal** 13:22
14:1
**personally**
28:23
**perspective**
16:24 28:12
**petition** 26:20
**petrozza** 9:24
10:15 14:5
15:15 16:5,6
16:11 17:5
18:8,21 19:1,5
19:16,20 20:14
20:19,25 21:12
21:17 22:5
23:20 32:15
33:17 34:2
35:21 37:20,23
38:25 39:3,7
40:3 42:4,14
43:13 44:24
48:8 50:11,25
51:12,25 52:20
**petrozza's**
14:21 18:10,22

19:9
**phoenix** 4:15
8:15 27:23
**phone** 12:9
55:8
**physician** 4:9
4:10 8:9,10
**physicians** 4:7
4:7 8:7,7 26:18
**picture** 13:9
22:19,19,20
**piece** 28:3 30:3
30:8
**pieces** 27:25
**pizza** 33:6,6,7
33:7
**places** 51:9
**plaintiff** 11:4
12:15,20,23
22:24 23:19
24:24 29:3
31:6 35:9
**plaintiff's**
16:24 19:25
26:10
**plaintiffs** 1:12
1:20 2:6,15
10:5,13
**platform** 4:20
6:16,17,18,19
6:20
**play** 13:12
**plaza** 2:21
**plc** 5:23
**pleadings**
14:24 35:5,6

| | | | |
|---|---|---|---|
| please 25:19 | pressing 37:2 | properly 45:19 | **q** |
| plenty 36:19 | pretrial 12:12 | 45:21 | question 14:23 |
| plethora 38:13 | pretty 17:9 | property 7:19 | 18:5,15,17 |
| plus 4:7,7 8:7,7 | 53:11 | 7:20 8:25,25 | 25:21 27:19 |
| 26:19 | prima 45:18 | 9:3,13,14,15 | questions |
| pmprinc 6:9 | primarily | 9:25 20:22 | 12:18,18 18:6 |
| point 43:11 | 14:21 | 27:10,17,24 | quick 35:3 |
| 53:5 54:15 | prior 35:10,11 | 29:22,23,25 | quickly 54:23 |
| 55:10 | 35:23 | 30:1 38:11 | quite 14:22 |
| policy 51:6 | private 4:22 | proposition | 25:5 |
| pooled 5:9 | 7:22 9:6,16 | 39:15 | |
| portfolio 5:5 | 28:11,18,19 | prove 26:21,21 | **r** |
| position 15:8 | 29:10 30:15,21 | 27:10 29:13 | r 3:1 11:1 12:1 |
| 26:10 36:14 | 37:15 39:1,2,4 | 37:25,25 38:1 | 57:1 |
| 51:9 | 39:7,9 41:25 | 52:5,6 | raise 22:14 |
| possess 24:21 | 44:25 | proved 29:24 | 35:1 |
| possible 52:19 | probing 18:6 | proven 24:13 | raised 14:20,21 |
| 54:24 | problem 21:5 | 24:18 29:9,10 | 15:2 22:23 |
| potentially | 32:10 | 29:20 | 28:9 |
| 39:15 | proceedings | proves 29:8 | raises 14:22 |
| ppsr 4:21 | 56:2 57:4 | proving 29:22 | raising 27:20 |
| pqideal 6:16 | process 13:23 | provision 51:8 | rand 4:8 8:8 |
| practice 4:7,7 | produce 24:1 | publ 7:2 | rathbone 6:21 |
| 4:10 8:7,7,10 | produced | pulsar 4:19 | ravi 8:16 |
| 26:19 27:23 | 23:13 24:3,10 | punish 51:8 | read 39:14 |
| pre 9:9,21 | 31:6 35:20 | punitive 51:7 | 46:23 48:12 |
| preclude 10:1 | 36:1 46:18 | purchase 13:13 | reads 37:17 |
| 35:1 | production | 40:14 41:8,12 | ready 54:21 |
| preference | 36:1 | 44:18 | real 35:3 47:20 |
| 9:13 | professionals | purpose 14:18 | reality 46:2,2 |
| preferences | 4:13 8:13 | 15:11 20:19 | realize 35:14 |
| 49:17 | proffered | 42:7 | 55:11 |
| premeditation | 15:14 | purposes 14:17 | really 22:20 |
| 48:3 | proof 31:4 38:5 | 25:4 33:4 | 28:6 32:5,13 |
| preposterous | 45:11,18 | put 28:4 33:5,6 | 48:11 49:6 |
| 33:20 | proper 27:17 | 53:19 | 50:2,7 54:2 |
| | 36:13 | | |

**reason** 33:10
51:7
**reasonable**
49:5,6
**reasons** 26:24
**recall** 13:11
28:2
**receive** 38:8
51:10
**received** 7:22
9:6 15:5,7 17:2
17:8,10 19:17
20:2,8,12
24:16 40:5,5
42:17,18 46:8
50:17 51:14
52:16 54:13
**receives** 33:9
**receiving** 36:10
**recess** 56:1
**recipient** 21:19
47:5,10,12
**recognize**
53:18
**recollection**
44:9
**recommend**
54:5
**record** 35:25
42:6 43:15,18
43:25 56:1
57:4
**recorded** 15:11
27:11
**records** 15:11
27:17 35:8,9
35:12 37:19,21

**recovery** 7:18
7:19 8:24 9:2
9:13,14,15,25
**redmayne** 6:21
6:22
**reference**
17:18 18:13
19:3,9
**references**
19:23
**reflected** 26:1
28:16
**rejection** 38:10
**related** 10:10
**relevant** 18:5
**relief** 7:20 9:4
**relieved** 36:9
**relieves** 51:17
**remain** 31:20
**remember**
28:1 33:24
39:23 55:15
**renew** 54:5
**rent** 16:6,7
18:10 20:22
21:13 32:16
**repaid** 39:22
46:10
**repay** 40:2
43:20
**reply** 28:10
30:4
**reported** 27:3
27:23
**request** 22:4
31:6

**respect** 23:9
32:14
**respond** 38:18
**responded**
7:22 9:6
**responding**
12:18
**response** 17:6
22:14 29:5,5
31:6 35:16
36:2
**rest** 24:9
**result** 15:20
28:17,19,24
**resulted** 37:14
**results** 33:20
**return** 19:3,7
19:11,13
**returned** 19:6
19:10,12,17
**returning**
19:15
**revenue** 7:17
**revisit** 53:10
**rg2461r** 6:22
**right** 12:10
13:2 15:21
19:2,19 21:5
21:10,14,20
22:9,17 24:11
24:23 27:21
29:25,25 32:17
33:18 34:1,18
36:24,25 37:9
37:10 41:21
42:10 43:2
44:9 45:14

46:22 47:7
48:4,10 50:12
50:15,16,20
52:7,11 53:23
53:23 54:19
55:25
**rita** 10:19 57:3
57:8
**river** 13:14
38:11
**rkclt** 6:13
**rkisa** 6:14
**rmi** 4:9 8:9
**road** 11:12
57:21
**robinson** 14:14
15:25 16:11,18
17:4,14,21
20:11 22:3
23:8,13,13,22
24:2,6 25:25
26:12,14 27:5
27:14 28:7,8
29:1,18 37:16
43:14 44:19
46:25
**rock** 6:22,23
6:24,24
**royde** 1:14 4:2
4:22
**ruling** 53:25
54:3,21

**s**

**s** 3:2 7:18 8:24
9:12,24 10:10
11:1 12:1

sachs 5:10
sat 47:23
satisfaction
  49:25 52:18
satisfied 30:2
savings 4:24
saying 23:22
  23:25 24:12,14
  24:15,17 25:6
  32:3 34:5,12
  38:5 41:10
  42:24 43:5
  45:12,20 46:12
  47:11 48:4
  50:7
says 16:11,25
  17:5,7 18:17
  18:23 22:6
  23:5,12,15
  24:8 25:6
  27:16 29:3
  30:5,11 33:11
  33:12,25,25
  35:9 36:11
  37:6 38:25
  39:14 40:23
  46:11,19 47:15
  48:19 49:9
  51:6,13,18
scharf 9:17
sdpr 5:10
second 21:2
  23:21 25:8
  35:20 41:4
  44:14,22 47:4
  49:15

secondary 50:5
secretary 34:1
secured 31:21
  31:23 32:7,8
  36:19,20,21,25
securities 4:20
  5:23,23 6:3,4
  6:16,17,18,19
  6:20,25 7:7
see 18:18 28:10
  35:13,16 40:20
  42:6
seem 41:23
  42:16
seen 21:25 34:4
  36:12
seg 6:5
send 17:7
  32:17 33:18
  34:1,2,20,20
  39:16,21 46:16
  46:19 48:5
sending 18:8
sends 16:10
sent 26:10,14
  32:18,25 34:13
  40:6
separate 26:23
  40:22
september
  35:24
series 41:25
served 35:10
  35:11,24,25
service 7:18
services 4:8,9
  4:12,18,21

6:25 8:8,9,12
set 25:4
sets 26:23
settle 53:19
  55:1
settlement 53:2
  53:13 54:6
several 22:3
  26:4
sftif 5:1
sham 42:2
share 7:1 40:8
shareholder
  38:5,6,9,23
  40:4,17,19
  45:12 49:11,17
shareholders
  49:17
sharpe 49:15
shifting 54:9
shifts 29:13
shore 13:20,22
  14:11
show 14:25
  26:10,12,13
  29:17 34:3
  37:8 45:11
  48:6 51:2 52:4
shows 20:2,11
  23:3 24:2 25:1
  31:6 48:6
side 53:5
sides 14:25
  53:6
sign 52:1
signature 57:6

signed 28:21
  28:22 35:5
significance
  18:1
significant
  26:24 27:9
  44:3
significantly
  14:22
signing 28:20
similar 41:6
similarly 51:10
simple 32:13
  39:21
simplified
  22:20
simply 15:13
  19:6,14
simpson 30:6
singh 8:16
single 36:12,12
  37:5
sipp 5:25
situated 51:10
situation 23:11
  32:7
six 26:23
skandinaviska
  7:1
skies 4:10 8:10
skip 47:3
slush 29:19
smart 13:8
smith 7:2
snafu 55:7
solely 20:19

| | | | |
|---|---|---|---|
| **solutions** 4:6 | **started** 13:11 | **strike** 10:1,5,6 | **sunshine** 17:18 |
| 4:11 8:6,11 | **state** 7:3,4,4,5 | 10:7 12:14 | 18:1,22 19:12 |
| 57:20 | 9:1 20:6 29:6,7 | 35:5,6 | 19:13,18 37:24 |
| **somebody** | 49:14 | **stuck** 32:6 | 38:3 40:6 50:5 |
| 29:14 30:9,11 | **stated** 16:6 | **subaccount** | **support** 36:22 |
| 37:4,6 40:9 | **statement** 17:9 | 23:11 | 44:1 |
| 51:16 | 17:11,21 18:13 | **subaccounts** | **supports** 36:14 |
| **sorry** 14:7 | 18:16,20 19:2 | 24:3 28:5 31:7 | **suppose** 42:14 |
| 18:18 31:10,10 | 19:8,23 20:1,1 | **submit** 20:9 | 50:4 |
| 31:24 44:21 | 20:16 30:18,20 | **submitted** 30:3 | **supposed** 41:8 |
| 45:8 52:13 | 37:12 38:25 | 53:24 54:20 | 41:19 46:13 |
| **sort** 35:2 42:13 | 39:1 40:22 | **subpoena** | 47:10 |
| 45:25 47:4 | 45:6,9,10,16 | 22:13 35:7,10 | **sur** 30:4 |
| 48:3 50:10 | 51:2 | 35:21,24 | **sure** 15:23 |
| 54:22 | **states** 1:1 2:20 | **subsequent** | 42:22 |
| **sotiros** 8:16 | 7:17 8:22 36:8 | 18:20 20:23,25 | **svs** 7:6 |
| **source** 28:10 | **status** 4:3 8:3 | 51:16 | **switching** |
| 29:9 32:25 | 50:1 | **substantively** | 35:22 |
| **southern** 47:14 | **statute** 50:22 | 25:9 32:5 | |
| **speak** 55:16 | 51:18 | **sue** 25:12 | **t** |
| **spent** 37:8 | **statutory** 8:21 | 52:24 | **t** 57:1,1 |
| **spreadsheet** | **stay** 12:6 | **sued** 50:5 | **table** 28:4 |
| 23:14,15 | **step** 14:10 | **sufficiently** | 54:16 |
| **sslnomsacct** | 46:14 | 30:2 | **taira** 8:18 |
| 5:3 | **steps** 16:16 | **suisse** 5:8 | **take** 12:21 |
| **standard** 29:21 | **stifel** 7:6 | **suit** 7:18 8:24 | 25:18 38:14 |
| **stang** 11:3 | **stipulate** 20:5 | 9:12,24 | 48:1 49:9 52:7 |
| **stanley** 6:3,4 | **stipulated** 16:1 | **suite** 11:12 | 53:1 |
| **star** 17:19 18:2 | 16:5 17:16 | 57:22 | **taken** 13:22 |
| 18:22 19:12,13 | 19:24 20:17 | **sum** 43:11,20 | 23:10 38:17 |
| 19:18 37:25 | 26:5 30:17,18 | **summary** 10:6 | **talk** 23:7 |
| 38:3 40:7 | 36:23 37:13 | 10:12,13,14 | **talked** 50:24 |
| **starbucks** 33:5 | 44:23 | 12:13 15:2 | **talking** 31:20 |
| **stargatt** 8:23 | **stipulation** | 24:18 29:7 | 50:2,2 |
| **start** 12:15,19 | 18:23 25:23 | 39:25 42:7 | **targeted** 8:19 |
| 13:9 22:19 | **street** 7:3,4,4,5 | 43:15,18 48:2 | **taxfull** 6:24 |
| 36:20 | 33:6 40:10 | 49:19 | **taylor** 8:23 |

**td**   7:7,8,9,10
**tds**   6:6
**technologies**
  4:5 8:5 25:16
  25:24 26:1
  33:10 40:24
  41:5 42:19
  45:13 46:5,10
**tell**   29:4 34:5
  48:9
**tempered**
  41:23
**tend**   55:16
**terrace**   38:11
**testified**   17:1
**testify**   42:4,14
**testimony**   10:2
  20:20
**text**   16:7,8
  17:22
**thank**   12:22
  13:3 21:5
  22:16,17,18
  48:23,24 55:4
  55:5,6,18,19
  55:20 56:1
**thd05**   6:8
**theirs**   30:7,12
  37:7
**theoretically**
  52:19
**thing**   19:15
  36:4 44:16
**things**   39:20
  53:22
**think**   12:2,12
  14:10,23 16:1

17:8,10 20:7
24:1 27:19
29:18 30:2
33:16 34:15,18
37:1,7,22
38:20 41:9
43:4,9,11,13
44:5 45:9,14
45:24 46:1,7
47:4,8 48:1
49:7 53:18
54:10,13,25
55:1
**thinking**   36:20
**thinks**   50:11
**third**   11:5
  19:17 27:14
  38:17
**thought**   13:8
  45:4,4 46:1,3,4
  49:19
**thoughts**   36:4
**thousands**   53:4
  53:4
**three**   38:21
  39:9 50:18,18
  50:18 55:1,2
**time**   22:12
  23:5 26:15,16
  26:20 31:23
  32:1 35:25
  37:8 40:5 43:6
  44:24 46:6,8
  52:21 53:11
  54:3,8
**timeline**   31:14

**tip**   32:12
**tmclt**   6:15
**told**   19:13 30:6
  30:11
**took**   33:6
  38:21 52:5
**top**   53:3
**tough**   39:11
**trace**   29:14
**traced**   27:2
**tracing**   24:12
**transact**   7:11
**transaction**
  14:10,17 15:6
  16:24 18:20
  25:5 28:11,18
  28:19 29:11
  30:15 34:4
  37:15 38:14
  39:1,3,4,7,9,10
  41:25 44:17,25
**transactions**
  42:2
**transcribed**
  10:19
**transcript**   57:4
**transfer**   7:19
  9:3,14,25 13:5
  13:15 17:15,17
  18:5,15,21
  19:7,20 24:13
  24:14 25:11
  26:4,7,16 32:1
  32:11 33:4,14
  36:14 38:8
  39:18 42:18,25
  43:24 44:3

49:10,10 50:24
51:3 52:16,22
53:4 54:9,12
**transferee**   15:7
  15:22 20:24,24
  20:25 21:7
  42:23 46:24
  47:2,5,10,22
  49:16,23,24
  50:3,4,6,13
  51:8,9 52:15
  54:10,13
**transferor**
  49:25 50:1
  54:10,12
**transferor's**
  50:25
**transferred**
  15:20 17:14
  22:4 23:6
  24:25 29:1
  30:24 31:18
  36:6 37:15
  40:1 43:12
  44:4,5,6 46:15
**transferring**
  37:24 49:8
**transfers**   15:19
  50:6 52:5
**transmute**   15:6
**treasury**   7:17
**treated**   27:6
**treatment**
  27:13
**treaty**   7:15
**trial**   9:9,21
  38:21 41:24

42:7 52:4

**tried** 17:11

**triggering** 23:1
25:3,9,13
30:25 31:19,22
31:24 32:9

**true** 25:15
45:16 57:4

**trust** 3:2 4:24
8:20,21

**trustee** 2:4,13
9:11,23 10:9
10:17 12:24
13:6 22:2,6
23:2,3,5 24:13
24:18 25:4,11
45:22 50:5
54:17

**trustee's** 15:2,8

**trustees** 4:16

**try** 14:2 44:14
53:8,18

**trying** 17:19
18:7 22:1
44:13,20

**turned** 23:22

**turnover** 8:25

**two** 14:21 19:8
23:15,16 24:4
24:9 25:18
30:10 35:7
48:4

**twofold** 14:20

**u**

**u.s.** 3:3

**u.s.c.** 50:21,23
51:7

**ubs** 4:22

**uk** 5:8,12,13,14
5:15,16

**uncloud** 17:19

**under** 23:22
37:16 38:1
39:20 43:19
50:17,21 52:16

**underneath**
29:1

**understand**
15:21 37:1
49:4 51:15

**understood**
54:18 55:18

**undisputed**
14:9 15:12
16:12,13 18:12
19:16 38:22
49:21

**undoc** 5:25

**unfortunately**
35:21 53:21

**unit** 8:20

**united** 1:1 2:20
7:16 8:18,22
36:8

**unitholders**
8:20

**unknown** 3:4

**unpaid** 31:20

**unredacted**
24:1

**unrelated** 9:2

**unsatisfied**
26:19

**unsecured**
31:25 32:1
36:19,22

**unsuccessful**
53:20

**use** 14:1 36:15

**used** 20:21

**uses** 22:5

**usisa15** 7:8

**usnom15** 7:9

**usnom30** 7:10

**ussip00** 7:11

**utilized** 21:12

**v**

**v** 1:13,21 2:7
2:16 4:1 8:1
9:8,20 38:12
49:14

**vachette** 4:12
8:12

**validity** 45:18

**value** 38:1,2,15
38:16 51:13
52:6

**various** 31:7

**vega** 4:13,18
8:13

**vendor** 13:24

**veracity** 42:8

**veritext** 57:20

**victim** 37:23

**victoire** 7:12

**vidacos** 7:13
7:13

**video** 12:6

**virginia** 4:6 8:6

**virtually** 26:2

**w**

**w** 7:14,14,16

**wade** 49:7

**walia** 2:8 9:8
9:12

**walk** 15:19

**walking** 40:9

**want** 12:5,6,17
15:21 22:14
32:13 33:25
34:5,8,19 41:4
47:3,25 48:1,8

**wanted** 16:25
32:4 41:12
44:25

**wants** 42:4

**way** 15:17 16:3
33:16 36:13
37:8 49:4,24

**we've** 12:11
13:9 21:23,24
30:2 50:10
51:23

**wealth** 7:15

**weeks** 36:6

**weigh** 15:17

**weltsch** 10:19
57:3,8

**went** 21:8
25:23 28:9
29:8 32:19
33:5,5,22 37:8
38:19 46:15,21
47:16,17,18
48:6 53:16

**west**   4:6 8:6
**western**   4:9 8:9
**whatever's**
   55:16
**where'd**   16:17
**williamson**   7:2
**winddown**
   29:15
**wingman**
   17:17 18:1,3,4
   18:6,13
**wire**   16:11
   17:5 32:17
   46:17 52:22
**wired**   34:2
**wiring**   17:18
   32:17,18 33:24
   34:1,2 46:16
   46:19,20 48:7
**wondering**
   17:23,25
**word**   45:2
**words**   33:2
**work**   49:21
   53:9
**worth**   39:8
**wrap**   5:18 7:15
**wrclt**   6:15
**wrinkle**   14:19
   15:4
**written**   54:2
**wrong**   23:19
   31:14 54:7

**x**

**x**   1:4,8,10,16
   1:18,24 2:1,3
   2:10,12,19

   39:16

**y**

**yeah**   33:3,7
   34:8 35:3,9,11
   46:12 47:15
   49:22 52:19
   53:17
**year**   25:25
   27:24
**years**   25:5
   30:10 50:18
**york**   1:2 2:22
   4:25 5:1 11:6
   36:8 38:7
   47:14 49:9
**yorker**   55:15
**young**   8:22

**z**

**zaharis**   8:16
**ziehl**   11:3